Exhibit 1.1 (34)

**ASBESTOS DISTRIBUTION PROCEDURES**

[NOTE: THESE ASBESTOS DISTRIBUTION PROCEDURES, WHICH ARE IN SUBSTANTIALLY FINAL FORM, ARE SUBJECT TO FINAL AGREEMENT AND APPROVAL OF THE ASBESTOS CLAIMANTS' COMMITTEE AND THE FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE.]

**EXHIBIT 1.1(34)**

# KAISER ALUMINUM & CHEMICAL CORPORATION

# ASBESTOS DISTRIBUTION PROCEDURES

# KAISER ALUMINUM & CHEMICAL CORPORATION

## ASBESTOS DISTRIBUTION PROCEDURES

### TABLE OF CONTENTS

Page

SECTION I — Introduction .................................................................................... 1

    1.1    Purpose ........................................................................................ 1
    1.2    Interpretation ............................................................................. 2

SECTION II — Overview ...................................................................................... 2

    2.1    Asbestos PI Trust Goals ........................................................... 2
    2.2    Coordination with Other Claims 3
          (a)    Dual Claimants .................................................. 3
          (b)    Releases ........................................................... 3
          (c)    Disclosure ........................................................ 4
    2.3    Claims Liquidation Procedures ................................................ 3̶4
    2.4    Application of the Payment Percentage .................................... 5̶6
    2.5    Asbestos PI Trust's Determination of the Maximum Annual
          Payment and Maximum Available Payment ............................ 6̶7
    2.6    Claims Payment Ratio ............................................................... 7̶8
    2.7    Indirect Asbestos PI Trust Claims ........................................... 1̶011

SECTION III — Asbestos Distribution ProceduresTDP Administration ............. 1̶011

    3.1    Asbestos PI Trust Advisory Committee and Future Asbestos Claimants'
          Representative ........................................................................... 1̶011
    3.2    Consent and Consultation Procedures ...................................... 1̶012

SECTION IV — Payment Percentage; Periodic Estimates ................................... 1̶112

    4.1    Uncertainty of Kaiser's Personal Injury
          Asbestos Liabilities .................................................................. 1̶112
    4.2    Computation of Payment Percentage ....................................... 1̶113
    4.3    Applicability of the Payment Percentage ................................. 1̶314

SECTION V — Resolution of Asbestos PI Trust Claims ...................................... 1̶416

| | | | | |
|---|---|---|---|---|
| 5.1 | | Ordering, Processing and Payment of Claims | | ~~14~~16 |
| | (a) | Ordering of Claims | | ~~14~~16 |
| | | (1) | Establishment of the FIFO Processing Queue | ~~14~~16 |
| | | (2) | Effect of Statutes of Limitations and Repose | ~~15~~17 |
| | (b) | Processing of Claims | | ~~17~~18 |
| | (c) | Payment of Claims | | ~~17~~18 |
| 5.2 | | Resolution of Pre-Petition Liquidated Asbestos PI Trust Claims | | ~~18~~20 |
| | (a) | Processing and Payment | | ~~18~~20 |
| | (b) | Marshalling of Security | | ~~20~~21 |
| 5.3 | | Resolution of Unliquidated Asbestos PI Trust Claims | | ~~20~~21 |
| | (a) | Expedited Review Process | | ~~21~~23 |
| | | (1) | In General | ~~21~~23 |
| | | (2) | Claims Processing under Expedited Review | ~~22~~24 |
| | | (3) | Disease Levels, Scheduled Values and Medical/Exposure Criteria | ~~23~~24 |
| | (b) | Individual Review Process | | ~~27~~28 |
| | | (1) | In General | ~~27~~28 |
| | | | (A) Review of Medical/Exposure Criteria | ~~29~~30 |
| | | | (B) Review of Liquidated Value | ~~29~~30 |
| | | (2) | Valuation Factors to be Considered in Individual Review | ~~30~~31 |
| | | (3) | Scheduled, Average and Maximum Values | ~~32~~33 |
| 5.4 | | Categorizing Claims as Extraordinary and/or Exigent Hardship | | 34 |
| | (a) | Extraordinary Claims | | 34 |
| | (b) | Exigent Hardship Claims | | 35 |
| 5.5 | | Secondary Exposure Claims | | ~~34~~35 |
| 5.6 | | Indirect Asbestos PI Trust Claims | | ~~35~~36 |
| 5.7 | | Evidentiary Requirements | | 38 |
| | (a) | Medical Evidence | | 38 |
| | | (1) | In General | 38 |
| | | | (A) Disease Levels I – IV | ~~38~~39 |
| | | | (B) Disease Levels V – VIII | ~~39~~40 |
| | | | (C) Exception to the Exception for Certain Pre-Petition Claims | ~~39~~40 |
| | | (2) | Credibility of Medical Evidence | 40 |
| | (b) | Exposure Evidence | | 41 |
| | | (1) | In General | 41 |
| | | (2) | Significant Occupational Exposure | 42 |
| | | (3) | Kaiser Exposure | 42 |
| 5.8 | | Claims Audit Program | | 43 |
| 5.9 | | Second Disease (Malignancy) Claims | | ~~43~~44 |
| 5.10 | | Arbitration | | 44 |
| | (a) | Establishment of ADR Procedures | | 44 |
| | (b) | Claims Eligible for Arbitration | | 45 |
| | (c) | Limitations on and Payment of Arbitration Awards | | ~~45~~46 |

5.11   Litigation ................................................................................ 46

SECTION VI — Claims Materials ............................................................ 46

6.1   Claims Materials ...................................................................... 46
6.2   Content of Claims Materials .................................................... 47
6.3   Withdrawal or Deferral of Claims ........................................... 47
6.4   Filing Requirements and Fees ................................................. 48

SECTION VII — General Guidelines for Liquidating and Paying Claims ....... 48
7.1   Showing Required .................................................................... 48
7.2   Costs Considered ..................................................................... 48 49
7.3   Discretion to Vary the Order and Amounts of Payments in
        Event of Limited Liquidity ..................................................... 49
7.4   Punitive Damages .................................................................... 50
7.5   Interest .................................................................................... 51
        (a)   In General ..................................................................... 51
        (b)   Unliquidated Asbestos PI Trust Claims ......................... 51
        (c)   Liquidated Pre-Petition Asbestos PI Trust Claims ........ 52
7.6   Suits in the Tort System .......................................................... 52
7.7   Payment of Judgments for Money Damages ............................. 53
7.8   Releases .................................................................................. 54
7.9   Third-Party Services ............................................................... 54
7.10  Asbestos PI Trust Disclosure of Information ............................ 54

SECTION VIII — Miscellaneous ............................................................ 55

8.1   Amendments ........................................................................... 55
8.2   Severability ............................................................................ 55
8.3   Governing Law ....................................................................... 56

## KAISER ALUMINUM & CHEMICAL CORPORATION

### ASBESTOS DISTRIBUTION PROCEDURES

The Asbestos Distribution Procedures (hereinafter referred to as the "Asbestos TDP" for purposes of this document) contained herein provide for resolving all Asbestos Personal Injury Claims (hereinafter referred to "Asbestos PI Claims" for purposes of this document) for which any of the Debtors may have legal responsibility as provided in and required by the Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates dated June 29, 2005 as it may be amended ("Plan") by the Asbestos PI Trust Agreement and by the Funding Vehicle Trust Agreement and the PI Trust Funding Agreement. The Plan and Asbestos PI Trust Agreement establish the Asbestos PI Trust. The Trustees of the Asbestos PI Trust ("Asbestos PI Trustees") shall implement and administer this Asbestos TDP in accordance with the Asbestos PI Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Asbestos PI Trust Agreement.

### SECTION I

### Introduction

**1.1    Purpose.** The Asbestos TDP has been adopted pursuant to the Asbestos PI Trust Agreement. It is designed to provide fair, equitable and substantially similar treatment for all Asbestos PI Claims that may presently exist or may arise in the future in substantially the same manner.

**1.2    Interpretation.** Nothing in this Asbestos TDP shall be deemed to create a substantive right for any claimant.

SECTION II

<u>Overview</u>

**2.1    Asbestos PI Trust Goals.** The goal of the Asbestos PI Trust is to treat all claimants similarly and equitably. The Asbestos TDP further that goal by setting forth procedures for processing and paying Debtors' (hereinafter referred to for purposes of these Asbestos TDP as "Kaiser") several share of the unpaid portion of the liquidated value of Asbestos PI Claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system. To this end, this Asbestos TDP establishes a schedule of eight asbestos-related diseases ("Disease Levels"), seven of which have presumptive medical and exposure requirements ("Medical/Exposure Criteria"), specific liquidated values ("Scheduled Values"), anticipated average values ("Average Values") and caps on their liquidated values ("Maximum Values"). The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values and Maximum Values, which are set forth in Sections 5.3 and 5.4 below, have all been selected and derived with the intention of achieving a fair allocation of the Asbestos PI Trust funds as among claimants suffering from different disease processes in light of the best available information considering the settlement history of Kaiser and the rights claimants would have in the tort system absent the bankruptcy.

- 2 -

**2.2    Coordination with Other Claims.**  The Plan and the Silica PI Trust Agreement establish the Silica PI Trust and Silica Distribution Procedures ("Silica TDP") that provide for resolving all Silica PI Claims for which Debtors have any legal responsibility.  The Plan and the CTPV PI Trust Agreement also establish the CTPV PI Trust and CTPV Distribution Procedures ("CTPV TDP") that specify procedures for resolving all CTPV PI Claims for which the Debtor has any legal responsibility.

**2.2(a) Dual Claimants.**  In the event that a claimant asserts separate claims against the Asbestos PI Trust and one or both of the Silica PI Trust and the CTPV PI Trust, such claimant (a "Dual Claimant") must present credible and reliable evidence of a separate disease that conforms to the medical and exposure standards of the Asbestos TDP in order to recover from the Asbestos PI Trust.  The Asbestos PI Trustees shall establish claims evaluation guidelines that will assure appropriate review and credibility of the medical documentation submitted with any claims seeking compensation from more than one of the Asbestos PI Trust, the Silica PI Trust and the CTPV PI Trust.  The liquidated value of awards for lung cancer claims payable by the Asbestos PI Trust shall be reduced by the amount of the liquidated value of any awards to the claimant for a lung cancer claim payable by the Silica PI Trust or the CTPV PI Trust.

**2.2(b) Releases.**  In the event that a claimant asserts and establishes an Asbestos PI Claim against the Asbestos PI Trust and has previously recovered on a separate Silica PI Claim or CTPV PI Claim against Kaiser or against the Silica PI Trust or CTPV PI Trust, the claimant will be required to disclose the prior claim and provide a copy of the release executed in connection with the prior claim.  The Trust will evaluate the effect of such release on the

Asbestos PI Claim in question to determine the extent to which the Asbestos PI Claim shall be eligible for payment.

**2.2(c)  Disclosure.**  In order to implement the provisions of this Section 2.2 and the corresponding provisions of the Silica PI TDP and CTPV PI TDP, each claimant will be required to disclose to each Trust in connection with the filing of a claim all claims against Kaiser, the Asbestos PI Trust, the Silica PI Trust or the CTPV PI Trust.  Each Trust will provide to the other Trusts the name and social security number of each claimant and the name of the attorney for the claimant so that the Trusts can coordinate claims.  By submission of a claim against any of the Trusts, a claimant consents to the disclosure of such information and all claims materials and supporting evidence and documentation to the other Trust.

**2.3    Claims Liquidation Procedures.**  Asbestos PI Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a) below. The Asbestos PI Trust shall take all reasonable steps to resolve Asbestos PI Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration.  To this end, the Asbestos PI Trust, in its sole discretion, may conduct settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that the claimants' respective positions in the FIFO Processing Queue are maintained and each claim is individually evaluated pursuant to the valuation factors set forth in Section 5.3(b)(2) below. The Asbestos PI Trust shall also make every reasonable effort to resolve each year at least that number of Asbestos PI Claims required to exhaust the Maximum Annual Payment and the Maximum Available Payment for Category A and Category B claims, as those terms are defined below.

The Asbestos PI Trust shall liquidate all Asbestos PI Claims except Foreign Claims (as defined below) that meet the presumptive Medical/Exposure Criteria of Disease Levels I – V, VII and VIII under the Expedited Review Process described in Section 5.3(a) below.  Claims involving Disease Levels I – V, VII and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Asbestos PI Trust's Individual Review Process described in Section 5.3(b) below. In such a case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Asbestos PI Trust can offer the claimant an amount up to the Scheduled Value of that Disease Level if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

Holders of Asbestos PI Claims involving Disease Levels IV - VIII may in addition or alternatively seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Asbestos PI Trust's Individual Review Process.  However, the liquidated value of an Asbestos PI Trust Claim that undergoes the Individual Review Process for valuation purposes may be determined to be less than its Scheduled Value, and in any event shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3) below, unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value specified in that provision for such claims. Level VI (Lung Cancer 2) claims and all Foreign Claims may be liquidated only pursuant to the Asbestos PI Trust's Individual Review Process.

Based upon Kaiser's claims settlement history in light of applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values and Maximum

Values set forth in Section 5.3(b)(3) have been established for each of the Disease Levels that are eligible for Individual Review of their liquidated values, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process shall result in the Average Values also set forth in that provision.

All unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of the claim shall be subject to mandatory pro bono evaluation and mediation and then to binding or non-binding arbitration as set forth in Section 5.10 below, at the election of the claimant, under procedures that are provided in Attachment A hereto. Asbestos PI Claims that are the subject of a dispute with the Asbestos PI Trust that cannot be resolved by non-binding arbitration may enter the tort system as provided in Sections 5.11 and 7.6 below. However, if and when a claimant obtains a judgment in the tort system, the judgment shall be payable (subject to the Payment Percentage, Maximum Available Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.7 below.

**2.4    Application of the Payment Percentage.**    After the liquidated value of an Asbestos PI Claim other than a claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment), as defined in Section 5.3(a)(3) below, is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, or litigation in the tort system, the claimant shall ultimately receive a pro-rata share of that value based on a Payment Percentage described in Section 4.2 below.  The Payment Percentage shall also apply to all Pre-Petition Liquidated Asbestos PI Trust Claims as provided in Section 5.2 below.

An initial Payment Percentage shall be set pursuant to Section 4.2 below after the Asbestos PI Trust is established by the Asbestos PI Trustees, the Asbestos PI Trust Advisory

Committee ("Asbestos PI TAC") and the Legal Representative for Future Asbestos Claimants ("Future Asbestos Claimants' Representative") (who are described in Section 3.1 below). The initial Payment Percentage shall be calculated on the assumption that the Average Values set forth in Section 5.3(b)(3) below shall be achieved with respect to existing present claims and projected future claims involving Disease Levels IV – VIII.

The Payment Percentage may thereafter be adjusted upwards or downwards from time to time by the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative to reflect then-current estimates of the Asbestos PI Trust's assets and its liabilities, as well as the then-estimated value of pending and future claims. If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the Asbestos TDP shall not receive additional payments, except as provided in Section 4.2 below relating to circumstances in which the Asbestos PI Trust has received a substantial recovery of insurance proceeds. Because there is uncertainty in the prediction of both the number and severity of future Asbestos PI Claims, and the amount of the Asbestos PI Trust's assets, no guarantee can be made of any Payment Percentage of an Asbestos PI Claim's liquidated value.

**2.5    Asbestos PI Trust's Determination of the Maximum Annual Payment and Maximum Available Payment.** The Asbestos PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds shall be available to treat all present and future claimants as similarly as possible. In each year, the Asbestos PI Trust shall be empowered to pay out all of the interest earned during the year, together with a portion of its principal, calculated so that the application of Asbestos PI Trust funds over its life shall

correspond with the needs created by the anticipated flow of claims (the "Maximum Annual

Payment"), taking into account the Payment Percentage provisions set forth in Sections 2.3 above

and 4.2 below. The Asbestos PI Trust's distributions to all claimants for that year shall not

exceed the Maximum Annual Payment determined for that year.

In distributing the Maximum Annual Payment, the Asbestos PI Trust shall first allocate

the amount in question to outstanding Pre-Petition Liquidated Asbestos PI Trust Claims (as

defined in Section 5.2) and to liquidated Asbestos PI Claims involving Disease Level I (Cash

Discount Payment), in proportion to the aggregate value of each group of claims. The remaining

portion of the Maximum Annual Payment (the "Maximum Available Payment"), if any, shall

then be allocated and used to satisfy all other liquidated Asbestos PI Claims, subject to the

Claims Payment Ratio set forth in Section 2.6 below. In the event there are insufficient funds in

any year to pay the total number of outstanding Pre-Petition Liquidated Asbestos PI Trust Claims

(as defined in Section 5.2) and/or previously liquidated Disease Level I Claims, the available

funds allocated to that group of claims shall be paid to the maximum extent to claimants in the

particular group based on their place in their respective FIFO Payment Queue. Claims in either

group for which there are insufficient funds shall be carried over to the next year and placed at

the head of their FIFO Payment Queue.

**2.6    Claims Payment Ratio.** Based upon Kaiser's claims settlement history and

analysis of present and future claims, a Claims Payment Ratio has been determined which, as of

the Effective Date, has been set at 70% for Category A claims, which consist of Asbestos PI

Claims involving severe asbestosis and malignancies (Disease Levels IV – VIII) that were

unliquidated as of the Petition Date, and at 30% for Category B claims, which are Asbestos PI

Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were similarly unliquidated as of the Petition Date. The Claims Payment Ratio shall not apply to any Pre-Petition Liquidated Asbestos PI Trust Claims (as defined in Section 5.2) or to any claims for Other Asbestos Disease (Disease Level I - Cash Discount Payment). In each year, after the determination of the Maximum Available Payment described in Section 2.5 above, 70% of that amount shall be available to pay Category A claims and 30% shall be available to pay Category B claims that have been liquidated since the Petition Date.

In the event there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue described in Section 5.1(c) below, which shall be based upon the date of claim liquidation. Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they shall be placed at the head of the FIFO Payment Queue. If there are excess funds in either or both Categories, because there is an insufficient amount of liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, then the excess funds for either or both Categories shall be rolled over and remain dedicated to the respective Category to which they were originally allocated.

The 70%/30% Claims Payment Ratio and its rollover provision shall apply to all Asbestos Trust Voting Claims except Pre-Petition Liquidated Asbestos PI Trust Claims (as defined in Section 5.2) and Other Asbestos Disease claims (Disease Level I – Cash Discount Payment). The term "Asbestos PI Voting Trust Claims" includes (i) Pre-Petition Liquidated Asbestos PI Trust Claims as defined in Section 5.2(a) below; (ii) claims filed against Kaiser in the tort system

or actually submitted to Kaiser pursuant to an administrative settlement agreement prior to the

Petition Date of February 12, 2002; and (iii) all claims filed against another defendant in the tort

system prior to the date the Plan was filed with the Bankruptcy Court (June 29, 2005 (the "Plan

Filing Date")), provided, however, that the holder of a claim described in subsection (i), (ii) or

(iii) above or his or her authorized agent, actually voted to accept or reject the Plan pursuant to

the voting procedures established by the Bankruptcy Court, and provided further that the claim

was subsequently filed with the Asbestos PI Trust pursuant to Section 6.1 below by the Initial

Claims Filing Date defined in Section 5.1(a) below.

     The initial 70%/30% Claims Payment Ratio shall not be amended until the fifth

anniversary of the Effective Date. Thereafter, both the Claims Payment Ratio and its rollover

provision shall be continued absent circumstances, such as a significant change in law or

medicine, necessitating amendment to avoid a manifest injustice. However, the accumulation,

rollover and subsequent delay of claims resulting from the application of the Claims Payment

Ratio, shall not, in and of itself, constitute such circumstances. Nor may an increase in the

numbers of Category B claims beyond those predicted or expected be considered as a factor in

deciding whether to reduce the percentage allocated to Category A claims.

     In considering whether to make any amendments to the Claims Payment Ratio and/or its

rollover provisions, the Asbestos PI Trustees shall consider the reasons for which the Claims

Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to

its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be

any need to make an amendment. In that regard, the Asbestos PI Trustees should keep in mind

the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants.

In any event, no amendment to the Claims Payment Ratio may be made without the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to the consent process set forth in Sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement. However, the Asbestos PI Trustees, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, may offer the option of a reduced Payment Percentage to holders of claims in either Category A or Category B in return for prompter payment (the "Reduced Payment Option").

2.7    **Indirect Asbestos PI Trust Claims.**  As set forth in Section 5.6 below, Indirect Asbestos PI Claims ("Indirect Asbestos PI Trust Claims"), if any, shall be subject to the same categorization, evaluation, and payment provisions of this Asbestos TDP as all other Asbestos PI Claims.

SECTION III

**Asbestos TDP Administration**

3.1    **Asbestos PI Trust Advisory Committee and Future Asbestos Claimants' Representative.**  Pursuant to the Plan and the Asbestos PI Trust Agreement, the Asbestos PI Trust and this Asbestos TDP shall be administered by the Asbestos PI Trustees in consultation with the Asbestos PI TAC, which represents the interests of holders of present Asbestos PI Claims, and the Future Asbestos Claimants' Representative, who represents the interests of holders of Asbestos PI Trust Demands.  The Asbestos PI Trustees shall obtain the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative on any amendments to

- 11 -

these Procedures pursuant to Section 8.1 below, and on such other matters as are otherwise

required below and in Section 2.2(f~~g~~) of the Asbestos PI Trust Agreement.  The Asbestos PI

Trustees shall also consult with the Asbestos PI TAC and the Future Asbestos Claimants'

Representative on such matters as are provided below and in Section 2.2(e~~d~~) of the Asbestos PI

Trust Agreement.  The initial members of the Asbestos PI TAC and the initial Future Asbestos

Claimants' Representative are identified in the Asbestos PI Trust Agreement.

    **3.2**    **Consent and Consultation Procedures.**  In those circumstances in which

consultation or consent is required, the Asbestos PI Trustees shall provide written notice to the

Asbestos PI TAC and the Future Asbestos Claimants' Representative of the specific amendment

or other action that is proposed.  The Asbestos PI Trustees shall not implement such amendment

nor take such action unless and until the parties have engaged in the Consultation Process

described in Sections ~~5.7~~6.7(a) and ~~6.6~~7.7(a), or the Consent Process described in Sections

~~5.7~~6.7(b) and ~~6.6~~7.7(b) of the Asbestos PI Trust Agreement, respectively.

**SECTION IV**

**Payment Percentage; Periodic Estimates**

    **4.1**    **Uncertainty of Kaiser's Personal Injury Asbestos Liabilities.**  As discussed

above, there is inherent uncertainty regarding Kaiser's total asbestos-related tort liabilities, as

well as the total value of the assets available to the Asbestos PI Trust to pay Asbestos PI Claims.

Consequently, there is inherent uncertainty regarding the amounts that holders of Asbestos PI

Claims shall receive.  To seek to ensure substantially equivalent treatment of all Asbestos PI

Claims, the Asbestos PI Trustees must determine from time to time the percentage of full

- 12 -

liquidated value that holders of Asbestos PI Claims shall be likely to receive, *i.e*, the "Payment Percentage" described in Section 2.4 above and Section 4.2 below.

**4.2    Computation of Payment Percentage.**  As provided in Section 2.4 above, the initial Payment Percentage shall be set by the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative after the Asbestos PI Trust is established and sufficient information is available concerning the anticipated assets and liabilities of the Asbestos PI Trust over its lifetime.  The initial Payment Percentage shall thereafter be subject to change pursuant to the terms of this Asbestos TDP and the Asbestos PI Trust Agreement if the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative determine that an adjustment is required.

In any event, no less frequently than once every three years, commencing with the first day of January occurring after the Plan is consummated, the Asbestos PI Trustees shall reconsider the then applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative. The Asbestos PI Trustees shall also reconsider the then applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the Asbestos PI TAC or the Future Asbestos Claimants' Representative.

The Asbestos PI Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of Asbestos PI Claims, the value of the assets then available to the Asbestos PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of

funds to pay a comparable percentage of full value to all holders of Asbestos PI Claims. When making these determinations, the Asbestos PI Trustees shall exercise common sense and flexibly evaluate all relevant factors. The Payment Percentage applicable to Category A or Category B claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.6 above.

**4.3    Applicability of the Payment Percentage.** Except as otherwise provided in Section 5.1(c) below for Asbestos PI Claims involving deceased or incompetent claimants for which approval of the Asbestos PI Trust's offer by a court or through a probate process is required, no holder of any other Asbestos PI Claim, other than an Asbestos PI Claim for Other Asbestos Disease (Disease Level I - Cash Discount Payment), shall receive a payment that exceeds the liquidated value of the claim times the Payment Percentage in effect at the time of payment. Asbestos PI Claims involving Other Asbestos Disease (Disease Level I - Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.3(a)(3) below.

If a redetermination of the Payment Percentage has been proposed in writing by the Asbestos PI Trustees to the Asbestos PI TAC and the Future Asbestos Claimants' Representative but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the

proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

The uncertainty surrounding the amount of the Asbestos PI Trust's future assets is due in significant part to the fact that the estimates of those assets do not take into account the possibility that the Asbestos PI Trust may receive substantial additional funds from successful recoveries of insurance proceeds that have been assigned to the Asbestos PI Trust with respect to which the coverage is presently in dispute or the solvency of the carrier is in doubt. If the Asbestos PI Trust successfully resolves an insurance coverage dispute or otherwise receives a substantial recovery of insurance proceeds, the Asbestos PI Trust shall use those proceeds first to maintain the Payment Percentage then in effect.

However, if the insurance recovery exceeds the amount estimated to be reasonably necessary to maintain the Payment Percentage then in effect, the Asbestos PI Trustees, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, shall adjust the Payment Percentage upward to reflect the increase in available assets, and shall also make supplemental payments to claimants who previously liquidated their claims against the Asbestos PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

SECTION V

**Resolution of Asbestos PI Trust Claims**

**5.1**    **Ordering, Processing and Payment of Claims.**

**5.1(a)  Ordering of Claims.**

**5.1(a)(1)  Establishment of the FIFO Processing Queue.**  The Asbestos PI Trust shall order Asbestos PI Claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the "FIFO Processing Queue").  For all claims filed on or before the date six months after the date that the Asbestos PI Trust first makes available the proof of claim forms and other claims materials required to file a claim with the Asbestos PI Trust  (the "Initial Claims Filing Date"), a claimant's position in the FIFO Processing Queue shall be determined as of the earlier of (i) the date prior to the Petition Date (if any) that the specific claim was either filed against Kaiser in the tort system or was actually submitted to Kaiser pursuant to an administrative settlement agreement; (ii) the date before the Petition Date that a claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with Kaiser; (iii) the date after the Petition Date (if any) but before the Initial Claims Filing Date that the claim was filed against another defendant in the tort system; (iv) the date after the Petition Date (if any) but before the Effective Date that a proof of claim was filed against Kaiser in Kaiser's Chapter 11 case; or (v) the date a ballot was submitted in Kaiser's Chapter 11 case for purposes of voting on the Plan in accordance with the voting procedures adopted by the Bankruptcy Court.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the Asbestos PI Trust. If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease. If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the claimant's birth, with older claimants given priority over younger claimants.

**5.1(a)(2) Effect of Statutes of Limitations and Repose.** To be eligible for a place in the FIFO Processing Queue, a claim must meet either (i) for claims first filed in the tort system against Kaiser prior to the Petition Date, the applicable federal, state and foreign statutes of limitation and repose that were in effect at the time of the filing of the claim in the tort system, or (ii) for claims that were not filed against Kaiser in the tort system prior to the Petition Date, the applicable statute of limitation that was in effect at the time of the filing with the Asbestos PI Trust. However, the running of the relevant statute of limitation shall be tolled as of the earliest of (A) the actual filing of the claim against Kaiser prior to the Petition Date, whether in the tort system or by submission of the claim to Kaiser pursuant to an administrative settlement agreement; (B) the filing of the claim against another defendant in the tort system prior to the Petition Date if the claim was tolled against Kaiser at the time by an agreement or otherwise; (C) the filing of a claim after the Petition Date but prior to the Initial Claims Filing Date against another defendant in the tort system; (D) the date after the Petition Date (if any) but before the Effective Date that a proof of claim was filed against Kaiser in Kaiser's Chapter 11 case; (E) the date a ballot was submitted in Kaiser's Chapter 11 case for purposes of voting on

- 17 -

the Plan in accordance with the voting procedures adopted by the Bankruptcy Court; or (F) the filing of a proof of claim with the requisite supporting documentation with the Asbestos PI Trust after the Initial Claims Payment Date.

If an Asbestos PI Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable statute of limitation at the time of the tolling event, it shall be treated as timely filed if it is actually filed with the Asbestos PI Trust within three (3) years after the Initial Claims Filing Date.  In addition, any claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant statute of limitation or repose, may be filed with the Asbestos PI Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later. However, the processing of any Asbestos PI Claim by the Asbestos PI Trust may be deferred at the election of the claimant pursuant to Section 6.3 below.

**5.1(b)  Processing of Claims.**  As a general practice, the Asbestos PI Trust shall review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the FIFO Processing Queue in the near future.  However, claims that were not filed (i) against Kaiser in the tort system or actually submitted to Kaiser pursuant to an administrative settlement agreement prior to the Petition Date, or (ii) against another defendant in the tort system prior to the Plan Filing Date, shall not be processed until after the Initial Claims Filing Date.

**5.1(c)  Payment of Claims.**  Asbestos PI Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a) below, by the Individual Review Process as provided in Section 5.3(b) below, by arbitration as provided in Section 5.10 below, or by

litigation in the tort system provided in Section 5.11 below, shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"), all such payments being subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio, except as otherwise provided herein.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos PI Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the Asbestos PI Trust has been furnished with evidence that the settlement offer has been submitted to such court or probate process for approval. If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the Asbestos PI Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease. If any claims are liquidated on the same date and the respective claimants' asbestos-related diseases were diagnosed on the same date, the position of those claimants in the FIFO Payment Queue shall be determined by the Asbestos PI Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2    Resolution of Pre-Petition Liquidated Asbestos PI Claims.**

**5.2(a) Processing and Payment.** As soon as practicable after the Effective Date, the Asbestos PI Trust shall pay, upon submission by the claimant of the applicable Asbestos PI Trust proof of claim form (included in Attachment B) together with all documentation required thereunder, all Asbestos PI Claims that were liquidated by (i) a binding settlement agreement for the particular claim entered into prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) by a judgment that became final and non-appealable prior to the Petition Date (collectively "Pre-Petition Liquidated Asbestos PI Trust Claims").

The liquidated value of a Pre-Petition Liquidated Asbestos PI Trust Claim shall be Kaiser's share of the unpaid portion of the amount agreed to in the binding settlement agreement, the unpaid portion of the amount awarded by the jury verdict or non-final judgment, or the unpaid portion of the amount of the final judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance with the terms of the agreement, if any, or under applicable state law for settlements or judgments as of the Petition Date; however, except as otherwise provided in Section 7.4 below, the liquidated value of a Pre-Petition Liquidated Asbestos PI Trust Claim shall not include any punitive or exemplary damages. In the absence of a final order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the Asbestos PI Trust over this issue shall be resolved pursuant to the same procedures in this Asbestos TDP that are provided for resolving the validity and/or liquidated value of an Asbestos PI Claim (*i.e.*, arbitration and litigation in the tort system as set forth in Sections 5.10 and 5.11 below).

Pre-Petition Liquidated Asbestos PI Trust Claims shall be processed and paid in accordance with their order in a separate FIFO queue to be established by the Asbestos PI Trustees based on the date the Asbestos PI Trust received a completed proof of claim form with all required documentation for the particular claim; provided, however, the amounts payable with respect to such claims shall not be subject to or taken into account in consideration of the Claims Payment Ratio, but shall be subject to the Maximum Annual Payment and Payment Percentage provisions set forth herein. If any Pre-Petition Liquidated Asbestos PI Trust Claims were filed on the same date, the claimants' position in the FIFO queue for such claims shall be determined by the date on which the claim was liquidated. If any Pre-Petition Liquidated Asbestos PI Trust Claims were both filed and liquidated on the same dates, the position of those claimants in the FIFO queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2(b) Marshalling of Security.** Holders of Pre-Petition Liquidated Asbestos PI Trust Claims that are secured by letters of credit, appeal bonds, or other security or sureties shall first exhaust their rights against any applicable security or surety before making a claim against the Asbestos PI Trust. Only in the event that such security or surety is insufficient to pay the Pre-Petition Liquidated Asbestos PI Trust Claim in full shall the deficiency be processed and paid as a Pre-Petition Liquidated Asbestos PI Trust Claim.

**5.3    Resolution of Unliquidated Asbestos PI Trust Claims.** Within six months after the establishment of the Asbestos PI Trust, the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative shall adopt procedures for reviewing and liquidating all unliquidated Asbestos PI Claims, which shall include deadlines for

- 21 -

processing such claims. Such procedures shall also require claimants seeking resolution of unliquidated Asbestos PI Claims to first file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 6.1 and 6.2 below. It is anticipated that the Asbestos PI Trust shall provide an initial response to the claimant within six months of receiving the proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing. All claims shall be deemed to be a claim for the highest Disease Level alleged by the claimant in his or her proof of claim form for which the claim qualifies at the time of filing. To the extent it is determined during the claim liquidation process that a claimant qualifies for a higher Disease Level than that alleged on his or her proof of claim form, the Trust may so notify the claimant and allow the claimant to amend his or her proof of claim form.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a) above. The Asbestos PI Trust shall provide the claimant with six-months notice of the date by which it expects to reach the claim in the FIFO Queue, following which the claimant shall promptly (i) advise the Asbestos PI Trust whether the claim should be liquidated under the Asbestos PI Trust's Expedited Review Process described in Section 5.3(a) below or, in certain circumstances, under the Asbestos PI Trust's Individual Review Process described in Section 5.3(b) below; (ii) provide the Asbestos PI Trust with any additional medical and/or exposure evidence that was not provided with the original claim submission; and (iii) advise the Asbestos PI Trust of any change in the claimant's Disease Level.

- 22 -

If a claimant fails to respond to the Asbestos PI Trust's notice prior to the reaching of the claim in the FIFO Queue, the Asbestos PI Trust shall process and liquidate the claim under the Expedited Review Process based upon the medical/exposure evidence previously submitted by the claimant, although the claimant shall retain the right to request Individual Review as described in Section 5.3(b) below.

### 5.3(a)  Expedited Review Process.

**5.3(a)(1)  In General.**  The Asbestos PI Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating all Asbestos PI Claims (except those involving Lung Cancer 2 - Disease Level VI and all Foreign Claims (as defined below), which shall be liquidated pursuant to the Asbestos PI Trust's Individual Review Process) where the claim can easily be verified by the Asbestos PI Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level.  Expedited Review thus provides claimants with a substantially less burdensome process for pursuing Asbestos PI Claims than does the Individual Review Process described in Section 5.3(b) below. Expedited Review is also intended to provide qualifying claimants a fixed and certain claims payment.

Thus, claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for such Disease Level set forth in Section 5.3(a)(3) below.  However, except for claims involving Other Asbestos Disease (Disease Level I), all claims liquidated by Expedited Review shall be subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio limitations set forth herein.  Claimants holding claims that cannot be liquidated by

- 23 -

Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect the Asbestos PI Trust's Individual Review Process set forth in Section 5.3(b) below.

**5.3(a)(2)  Claims Processing under Expedited Review.**  All claimants seeking liquidation of their Asbestos PI Claims pursuant to Expedited Review shall file the Asbestos PI Trust's proof of claim form provided in Attachment B hereto.  As a proof of claim form is reached in the FIFO Processing Queue, the Asbestos PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination.  If a Disease Level is determined, the Asbestos PI Trust shall tender to the claimant an offer of payment of the Scheduled Value (as adjusted by the applicable Payment Percentage) for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos PI Trust.  If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos PI Trust shall disburse payment subject to the limitations of the Maximum Available Payment and Claims Payment Ratio, if any.

**5.3(a)(3)  Disease Levels, Scheduled Values and Medical/Exposure Criteria.**  The eight Disease Levels covered by this Asbestos TDP, together with the Medical/Exposure Criteria for each and the Scheduled Values for the seven Disease Levels eligible for Expedited Review, are set forth below.  These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Asbestos Trust Voting Claims filed with the Asbestos PI Trust on or before the Initial Claims Filing Date provided in Section 5.1 above.

Thereafter, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants'

Representative, the Asbestos PI Trustees may add to, change or eliminate Disease Levels,

Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels,

Scheduled Values or Medical/Exposure Criteria; or determine that a novel or exceptional

Asbestos PI Claim is compensable even though it does not meet the Medical/Exposure Criteria

for any of the then current Disease Levels.

| **Disease Level** | **Scheduled Value** | **Medical/Exposure Criteria** |
|---|---|---|
| Mesothelioma (Level VIII) | $70,000 | (1) Diagnosis[1] of mesothelioma; and (2) credible evidence of Kaiser Exposure (as defined in Section 5.7(b)(3) below). |
| Lung Cancer 1 (Level VII) | $ 27,500 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[2], (2) six months Kaiser Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos (as defined in Section 5.7(b)(2) below), and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |

[1]    The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this Asbestos Distribution Procedures are set forth in Section 5.7 below.

[2]    Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale, or (ii) (x) a chest X-ray read by a qualified B reader, (y) a CT scan read by a qualified physician, or (z) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Solely for claims filed against Kaiser or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a qualified physician or, (ii) pathology, showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with, or compatible with, a diagnosis of asbestos-related disease shall be evidence of Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V and VII. Pathological proof of asbestosis may be based on the pathological grading system for asbestos described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).

| | | |
|---|---|---|
| Lung Cancer 2 (Level VI) | None | (1) Diagnosis of a primary lung cancer; (2) Kaiser Exposure prior to December 31, 1982, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |

Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer (Level VII) claims. All claims in this Disease Level shall be individually evaluated.  The estimated likely average of the individual evaluation awards for this category is $ 7,000, with such awards capped at  $20,000, unless the claim qualifies for Extraordinary Claim treatment (as described in Section 5.4(a) below).

Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims shall be treated as having any significant value, especially if the claimant is also a Smoker.[3]
 In any event, no presumption of validity shall be available for any claims in this category.

| | | |
|---|---|---|
| Other Cancer (Level V) | $ 13,800 | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus |

[3]    There is no distinction between Non-Smokers and Smokers for either Lung Cancer (Level VII) or Lung Cancer (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the Asbestos Trust.  In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the $27,500 Scheduled Value for Lung Cancer 1 (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

- 26 -

| | | |
|---|---|---|
| | | evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months Kaiser Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level IV) | $ 20,750 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months Kaiser Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level III) | $ 4,850 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months Kaiser Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $ 700 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months Kaiser Exposure prior to December 31, |

|                                                              |       |                                                                                                                                                                                    |
|--------------------------------------------------------------|-------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                                                              |       | 1982, and (3) five years cumulative occupational exposure to asbestos.                                                                                                             |
| Other Asbestos Disease (Level I - Cash Discount Payment)     | $ 200 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma, and (2) Kaiser Exposure prior to December 31, 1982. |

### 5.3(b)    Individual Review Process.

**5.3(b)(1)  In General.** Subject to the provisions set forth below, a Kaiser claimant may elect to have his or her Asbestos PI Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in Section 5.3(a)(3) above. In addition or alternatively, a Kaiser claimant holding an Asbestos PI Claim involving Disease Levels IV, V, VII, or VIII may elect to have a claim undergo the Individual Review Process for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision. However, until such time as the Asbestos PI Trust has made an offer on a claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the Asbestos PI Trust's Expedited Review Process. In the event of such a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

The liquidated value of all Foreign Claims payable under this Asbestos TDP shall be established only under the Asbestos PI Trust's Individual Review Process. Because Asbestos PI Claims of individuals exposed in Canada who were resident in Canada when such claims were

filed were routinely litigated and resolved in the courts of the United States, and because the resolution history of these claims has been included in developing the Expedited Review Process, such claims shall not be considered Foreign Claims hereunder and shall be eligible for liquidation under the Expedited Review Process. Accordingly, a "Foreign Claim" is an Asbestos PI Claim with respect to which the claimant's exposure to an asbestos-containing product for which Kaiser has legal responsibility occurred outside of the United States and its Territories and Possessions and outside of the Provinces and Territories of Canada.

In reviewing such Foreign Claims the Asbestos PI Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in Section 5.3(a)(2)(B) below. The Asbestos PI Trust shall determine the liquidated value of Foreign Claims based on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in Section 5.3(a)(2)(B) below.

For purposes of the Individual Review Process for Foreign Claims, the Asbestos PI Trustees, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to all Foreign Claims channeled to the Asbestos PI Trust, provided, however, that such criteria, standards or requirements shall not effectuate substantive changes to the claims eligibility requirements under this Asbestos TDP but rather shall be made only for the purpose of adapting those requirements to the particular licensing provisions and/or medical customs or practices of the foreign country in question.

- 29 -

At such time as the Asbestos PI Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction, the Asbestos PI Trustees, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, may also establish a separate valuation matrix for any such Foreign Claims based on that data.

**5.3(b)(1)(A)  Review of Medical/Exposure Criteria.**  The Asbestos PI Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of an Asbestos PI Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I – V, and VII-VIII.  In such a case, the Asbestos PI Trust shall either deny the claim, or, if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Asbestos PI Trust can offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level, unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value for such a claim.

**5.3(b)(1)(B)  Review of Liquidated Value.**  Claimants holding claims involving Disease Levels IV – VIII shall also be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence.  The Individual Review Process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any Asbestos PI Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review.  Moreover, the liquidated value for a claim involving Disease Levels IV – VIII shall not exceed the Maximum Value for the relevant

- 30 -

Disease Level set forth in Section 5.3(b)(3) below, unless the claim meets the requirements of an Extraordinary Claim described in Section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value set forth in that provision for such claims. Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review Process shall necessarily be paid the liquidated value of their Asbestos PI Claims later than would have been the case had the claimant elected the Expedited Review Process.

**5.3(b)(2) Valuation Factors to be Considered in Individual Review.**

The Asbestos PI Trust shall liquidate the value of each Asbestos PI Claim that undergoes Individual Review based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level. The Asbestos PI Trust shall thus take into consideration all of the factors that affect the severity of damages and values within the tort system including, but not limited to (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family or recreational activities, dependencies, special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or were not) caused by asbestos exposure, including exposure to an asbestos-containing product for which Kaiser has legal responsibility prior to December 31, 1982 (for example, alternative causes, and the strength of documentation of injuries); (iv) the industry of exposure; and (v) settlements, verdicts, and the claimant's and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims.

For these purposes, the "Claimant's Jurisdiction" is the jurisdiction in which the claim was filed (if at all) against Kaiser in the tort system prior to the Petition Date. If the claim was not filed against Kaiser in the tort system prior to the Petition Date, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos PI Trust; or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product for which Kaiser has legal responsibility.

With respect to the "Claimant's Jurisdiction" in the event a personal representative or authorized agent makes a claim under the Asbestos TDP for wrongful death with respect to which the governing law of the Claimant's Jurisdiction could only be the Alabama Wrongful Death Statute, the Claimant's Jurisdiction for such claim shall be the Commonwealth of Pennsylvania, and such claimant's damages shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles. The choice of law provision in Section 7.4 below applicable to any claim with respect to which, but for this choice of law provision, the applicable law of the Claimant's Jurisdiction pursuant to Section 5.3(b)(2) is determined to be the Alabama Wrongful Death Statute, shall only govern the rights between the Asbestos PI Trust and the claimant, and, to the extent the Asbestos PI Trust seeks recovery from any entity that provided insurance coverage to Kaiser, the Alabama Wrongful Death Statute shall govern.

**5.3(b)(3) Scheduled, Average and Maximum Values.** The Scheduled, Average and Maximum Values for the Disease Levels compensable under this Asbestos TDP are the following:

- 32 -

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $ 70,000 | $ 104,000 | $ 380,000 |
| Lung Cancer 1 (Level VII) | $ 27,500 | $    33,000 | $ 85,000 |
| Lung Cancer 2 (Level VI) | None | $     7,000 | $ 20,000 |
| Other Cancer (Level V) | $ 13,800 | $   17,300 | $ 40,000 |
| Severe Asbestosis (Level IV) | $ 20,750 | $   22,000 | $ 55,000 |
| Asbestosis/Pleural Disease (Level III) | $  4,850 | None | None |
| Asbestosis/Pleural Disease (Level II) | $    700 | None | None |
| Other Asbestos Disease Cash Discount Payment (Level I) | $    200 | None | None |

These Scheduled Values, Average Values and Maximum Values shall apply to all Asbestos Trust Voting Claims except Pre-Petition Liquidated Asbestos PI Trust Claims filed with the Asbestos PI Trust on or before the Initial Claims Filing Date as provided in Section 5.1 above. Thereafter, the Asbestos PI Trustees, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to Sections 5.76.7(b) and 6.67.7(b) of the Asbestos PI Trust Agreement, may change these valuation amounts for good cause and consistent with other restrictions on the amendment power.

### 5.4    Categorizing Claims as Extraordinary and/or Exigent Hardship.

**5.4(a)  Extraordinary Claims.** An "Extraordinary Claim" is an Asbestos PI Claim that otherwise satisfies the Medical Criteria for Disease Levels IV - VIII, and that is held

by a claimant whose exposure to asbestos (i) occurred predominately as the result of working in a manufacturing facility of Kaiser during a period in which Kaiser was manufacturing asbestos-containing products at that facility, or (ii) was at least 75% the result of exposure to asbestos-containing product for which Kaiser has legal responsibility, and there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to a Maximum Value of five (5) times the Scheduled Value for claims qualifying for Disease Levels IV – V, VII and VIII, and five (5) times the Average Value for claims in Disease Level VI, multiplied by the applicable Payment Percentage.

Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review. An Extraordinary Claim, following its liquidation, shall be placed in the Asbestos PI Trust's FIFO Payment Queue ahead of all other Asbestos PI Claims except Pre-Petition Liquidated Asbestos PI Trust Claims, Disease Level I Claims and Exigent Hardship Claims, which shall be paid first in that order in said Queue, based on its date of liquidation and shall be subject to the Maximum Available Payment and Claims Payment Ratio described above.

**5.4(b) Exigent Hardship Claims.** At any time the Asbestos PI Trust may liquidate and pay Asbestos PI Claims that qualify as Exigent Hardship Claims as defined below. Such claims may be considered separately no matter what the order of processing otherwise would have been under this Asbestos TDP. An Exigent Hardship Claim, following its

liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated Asbestos PI Claims except Pre-Petition Liquidated Asbestos PI Trust Claims and Disease Level I Claims, and shall be subject to the Maximum Available Payment and Claims Payment Ratio described above. An Asbestos PI Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V - VIII), and the Asbestos PI Trust, in its sole discretion, determines (i) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (ii) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**5.5    Secondary Exposure Claims.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her claim pursuant to Section 5.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this Asbestos TDP that would have been applicable had that person filed a direct claim against the Asbestos PI Trust. In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.3(a)(3) above or an asbestos-related disease otherwise compensable under the Asbestos TDP, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to asbestos products produced by Kaiser, and that such secondary exposure was a cause of the claimed disease. The proof of claim form included in Attachment B hereto contains an

additional section for Secondary Exposure Claims. All other liquidation and payment rights and limitations under this Asbestos TDP shall be applicable to such claims.

     5.6    **Indirect Asbestos PI Trust Claims.**  Indirect Asbestos PI Trust Claims asserted against the Asbestos PI Trust based upon theories of contribution or indemnification under applicable law, shall be treated as presumptively valid and paid by the Asbestos PI Trust subject to the applicable Payment Percentage if (a) such claim satisfied the requirements of the Bar Date for such claims established by the Bankruptcy Court, if applicable, and is not otherwise disallowed by Section 502(e) of the Code or subordinated under Section 509(c) of the Code, and (b) the holder of such claim (the "Indirect Claimant") establishes to the satisfaction of the Asbestos PI Trustees that (i) the Indirect Claimant has paid in full the liability and obligation of the Asbestos PI Trust to the individual claimant to whom the Asbestos PI Trust would otherwise have had a liability or obligation under these Procedures (the "Direct Claimant"), (ii) the Direct Claimant and the Indirect Claimant have forever and fully released the Asbestos PI Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law.  In no event shall any Indirect Claimant have any rights against the Asbestos PI Trust superior to the rights of the related Direct Claimant against the Asbestos PI Trust, including any rights with respect to the timing, amount or manner of payment.  In addition, no Indirect Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the related Direct Claimant.

     To establish a presumptively valid Indirect Asbestos PI Trust Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release

in favor of the Asbestos PI Trust) or a Final Order (as defined in the Plan) provided that such claim is valid under the applicable state law. In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Asbestos PI Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Asbestos PI Trust a release in form and substance satisfactory to the Asbestos PI Trustees.

If an Indirect Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Claimant provide the Asbestos PI Trust with a full release of the Direct Claimant's claim, the Indirect Claimant may request that the Asbestos PI Trust review the Indirect Asbestos PI Trust Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the Asbestos PI Trust had to the Direct Claim as of the effective date of the Asbestos TDP. If the Indirect Claimant can show that it has paid all or a portion of such a liability or obligation, the Asbestos PI Trust shall reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage. However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, the liquidated value of any Indirect Asbestos PI Trust Claim paid by the Asbestos PI Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Asbestos PI Claim that might be subsequently asserted by the Direct Claimant against the Asbestos PI Trust.

Any dispute between the Asbestos PI Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be

subject to the ADR procedures provided in Section 5.10 below and set forth in Attachment A hereto. If such dispute is not resolved by said ADR procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 and 7.6 below.

The Asbestos PI Trustees may develop and approve a separate proof of claim form for such Indirect Asbestos PI Trust Claims. Indirect Asbestos PI Trust Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Asbestos PI Trustees, consistent with the provisions of this Section 5.6, which procedures (a) shall determine the validity, allowability and enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Asbestos PI Trust would have afforded the holders of the underlying valid Asbestos PI Claims. Nothing in this Asbestos TDP is intended to preclude a trust to which asbestos-related liabilities are channeled from asserting an Indirect Asbestos PI Trust Claim against the Asbestos PI Trust subject to the requirements set forth herein.

### 5.7    Evidentiary Requirements.

#### 5.7(a)  Medical Evidence.

##### 5.7(a)(1)  In General.  All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least 10 years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period. A finding by a physician after the Petition Date that a claimant's disease is

"consistent with" or "compatible with" asbestosis shall not alone be treated by the Asbestos PI Trust as a diagnosis.[4]

**5.7(a)(1)(A)  Disease Levels I - IV.**  Except for claims filed against Kaiser or any other asbestos defendant in the tort system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I - IV) shall be based in the case of a claimant who was living at the time the claim was filed, upon a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease. All living claimants must also provide (i) for Disease Levels I - III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 2 above); (ii) for Disease Level IV, an ILO reading of 2/1 or greater or pathological evidence of asbestosis, and (iii) for Disease Levels III and IV, pulmonary function testing.[5]

In the case of a claimant who was deceased at the time the claim was filed, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I - IV) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; or (ii) pathological evidence of the non-malignant asbestos-related disease; or (iii) in the case of Disease Levels I - III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 2 above), and for Disease Level IV, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (iv) for either Disease Level III or IV, pulmonary function testing.

---

[4] All diagnoses of Asbestosis/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy.  However, the Asbestos Trust may refute such presumptions.

[5]    "Pulmonary function testing" shall mean spirometry testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration.

**5.7(a)(1)(B)  Disease Levels V - VIII.**  All diagnoses of an asbestos-related malignancy (Disease Levels V – VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified pathologist.

**5.7(a)(1)(C)  Exception to the Exception for Certain Pre-Petition Claims.**  If the holder of an Asbestos PI Claim that was filed against Kaiser or any other defendant in the tort system prior to the Petition Date has not provided the Asbestos PI Trust with a diagnosis of the asbestos-related disease by a physician who conducted a physical examination of the holder as described in Section 5.7(a)(1)(A), or if the holder has such a diagnosis by an examining physician engaged by holder, or if the holder filed such a diagnosis with another asbestos-related personal injury settlement trust that requires such evidence, the holder shall provide such diagnosis to the Asbestos PI Trust notwithstanding the exception in Section 5.7(a)(1)(A).

**5.7(a)(2)  Credibility of Medical Evidence.**  Before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Asbestos PI Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedures to assure that such evidence is reliable. Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence

- 40 -

submitted to Kaiser to settle for payment similar disease cases prior to Kaiser's bankruptcy, or (iii) a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Asbestos PI Trust may seek to rebut the presumption.

In addition, claimants who otherwise meet the requirements of this Asbestos TDP for payment of an Asbestos PI Claim shall be paid irrespective of the results in any litigation at anytime between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system involving another defendant, other than any findings of fact, a verdict, or a judgment, may be introduced by either the claimant or the Asbestos PI Trust in any Individual Review proceeding conducted pursuant to Section 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to Section 5.4(a).

### 5.7(b)  Exposure Evidence.

**5.7(b)(1)  In General.**  As set forth in Section 5.3(a)(3) above, to qualify for any Disease Level, the claimant must demonstrate a minimum exposure to an asbestos-containing product manufactured or distributed by Kaiser. Claims based on conspiracy theories that involve no exposure to an asbestos-containing product produced by Kaiser are not compensable under this Asbestos TDP. To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(3) above, the claimant must show (i) for all Disease Levels, Kaiser Exposure as defined in Section 5.7(b)(3) below prior to December 31, 1982; (ii) for Asbestos/Pleural Disease Level II, six months Kaiser Exposure prior to December 31, 1982, plus five years cumulative occupational asbestos exposure; and (iii) for Asbestos/Pleural Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level

V) or Lung Cancer 1 (Disease Level VII), the claimant must show six months Kaiser Exposure

prior to December 31, 1982, plus Significant Occupational Exposure to asbestos as defined

below. If the claimant cannot meet the relevant presumptive exposure requirements for a Disease

Level eligible for Expedited Review, the claimant may seek Individual Review of his or her

claim based on exposure to an asbestos-containing product manufactured or distributed by

Kaiser.

### 5.7(b)(2)  Significant Occupational Exposure.  "Significant

Occupational Exposure" means employment for a cumulative period of at least five years, with a

minimum of two years prior to December 31, 1982, in an industry and an occupation in which

the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing

products so that the claimant in the fabrication process was exposed on a regular basis to raw

asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product

such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in

an industry and occupation such that the claimant worked on a regular basis in close proximity to

workers engaged in the activities described in (a), (b) and/or (c).

### 5.7(b)(3)  Kaiser Exposure.  The claimant must demonstrate meaningful

and credible exposure prior to December 31, 1982, to asbestos or asbestos-containing products

supplied, specified, manufactured, installed, maintained, or repaired by Kaiser and/or any entity,

including a contracting unit for which Kaiser has legal responsibility. That meaningful and

credible exposure evidence may be established by an affidavit of the claimant, by an affidavit of

a co-worker or the affidavit of a family member in the case of a deceased claimant (providing the

Asbestos PI Trust finds such evidence reasonably reliable), by invoices, employment,

construction or similar records, or by other credible evidence. The specific exposure information required by the Asbestos PI Trust to process a claim under either Expedited or Individual Review is set forth on the proof of claim form to be used by the Asbestos PI Trust, which is attached as Attachment B hereto. The Asbestos PI Trust can also require submission of other or additional evidence of exposure when it deems such to be necessary.

**5.8    Claims Audit Program.** The Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Futures Claimants' Representative may develop methods for auditing the reliability of medical evidence, including additional reading of X-rays, CT scans and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products manufactured or distributed by Kaiser prior to December 31, 1982. In the event that the Asbestos PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos PI Trust, it may decline to accept additional evidence from such provider in the future.

Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos PI Trust, the Asbestos PI Trust may penalize any claimant or claimant's attorney by disallowing the Asbestos PI Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Asbestos PI Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution

of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking sanctions from the Bankruptcy Court.

**5.9     Second Disease (Malignancy) Claims.** The holder of an Asbestos PI Claim involving a non-malignant asbestos-related disease (Disease Levels I through IV) may assert a new Asbestos PI Claim against the Asbestos PI Trust for a malignant disease (Disease Levels V – VIII) that is subsequently diagnosed. Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related disease shall not be reduced by the amount paid for the non-malignant asbestos-related disease, provided that the malignant disease had not been diagnosed by the time the claimant was paid with respect to his or her original claim involving the non-malignant disease.

**5.10 Arbitration.**

**5.10(a) Establishment of ADR Procedures.** The Asbestos PI Trustees, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, shall institute binding and non-binding arbitration procedures in accordance with the Alternative Dispute Resolution ("ADR") Procedures included in Attachment A hereto for resolving disputes concerning whether a Pre-Petition settlement agreement with Kaiser is binding and judicially enforceable in the absence of a final order of the Bankruptcy Court determining the issue, whether the Asbestos PI Trust's outright rejection or denial of a claim was proper, or whether the claimant's medical condition or exposure history meets the requirements of this Asbestos TDP for purposes of categorizing a claim involving Disease Levels I – IV, VII and VIII. Binding and non-binding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels IV – VIII as well as disputes over Kaiser's share of the unpaid

portion of a Pre-Petition Liquidated Asbestos PI Trust Claim described in Section 5.2 above and disputes over the validity of an Indirect Asbestos PI Trust Claim.

In all arbitrations where relevant, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.7 above. In the case of an arbitration involving the liquidated value of a claim involving Disease Levels II – VIII, the arbitrator shall consider the same valuation factors that are set forth in Section 5.3(b)(2) above. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos PI Trust, may elect either non-binding or binding arbitration. The Arbitration Rules set forth in Attachment A hereto may be modified by the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative. Such amendments may include adoption of mediation procedures as well as establishment of an Extraordinary Claims Panel to review such claims pursuant to Section 5.4(a) above.

**5.10(b) Claims Eligible for Arbitration.** In order to be eligible for arbitration, the claimant must first complete the Individual Review Process as well as either Pro Bono Evaluation or Mediation under the ADR Procedures with respect to the disputed issue. Individual Review shall be treated as completed for these purposes when the claim has been individually reviewed by the Asbestos PI Trust, the Asbestos PI Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos PI Trust of the rejection in writing. Individual Review shall also be treated as completed if the Asbestos PI Trust has rejected the claim.

**5.10(c) Limitations on and Payment of Arbitration Awards.** In the case of a non-Extraordinary Claim involving Disease Levels IV – VIII, the arbitrator shall not return an

award in excess of the Maximum Value for the appropriate Disease Level as set forth in Section 5.3(a)(4) above, and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the Maximum Extraordinary Value for such a claim as set forth in Section 5.4(a) above. For claims involving Disease Levels I – III, the arbitrator shall not award more than the Scheduled Value for such claims. A claimant who submits to arbitration and who accepts the arbitral award shall receive payments in the same manner as one who accepts the Asbestos PI Trust's original valuation of the claim.

**5.11    Litigation.** Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in the tort system against the Asbestos PI Trust pursuant to Section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Asbestos PI Trust's available cash only as provided in Section 7.7 below.

### SECTION VI

### Claims Materials

**6.1    Claims Materials.** The Asbestos PI Trust shall prepare suitable and efficient claims materials ("Claims Materials") for all Asbestos PI Claims, and shall provide such Claims Materials upon a written request for such materials to the Asbestos PI Trust. The proof of claim form to be submitted to the Asbestos PI Trust shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. A copy of the proof of claim

form to be used by the Asbestos PI Trust for Pre-Petition Liquidated Asbestos PI Trust Claims and unliquidated Asbestos PI Claims is included in Attachment B hereto. The proof of claim form may be changed by the Asbestos PI Trustees with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative.

**6.2    Content of Claims Materials.** The Claims Materials shall include a copy of this Asbestos TDP, such instructions as the Asbestos PI Trustees shall approve, and a detailed proof of claim form. If feasible, the forms used by the Asbestos PI Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the Asbestos PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization. However, the Asbestos PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the Asbestos PI Trust. If requested by the claimant, the Asbestos PI Trust shall accept information provided electronically. The claimant may, but shall not be required to, provide the Asbestos PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations.

**6.3    Withdrawal or Deferral of Claims.** A claimant can withdraw an Asbestos PI Claim at any time upon written notice to the Asbestos PI Trust and file another such claim subsequently without affecting the status of the claim for statute of limitation purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of such subsequent filing. A claimant can also request that the processing of his or her

Asbestos PI Claim by the Asbestos PI Trust be deferred for a period not to exceed three (3) years without affecting the status of the claim for statute of limitation purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. Except for Asbestos PI Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the Asbestos PI Trust's offer is required, or an Asbestos PI Claim for which deferral status has been granted, a claim shall be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the Asbestos PI Trust's offer of payment or rejection of the claim. Upon written request and good cause, the Asbestos PI Trust may extend either the deferral or withdrawal period for an additional six months.

**6.4    Filing Requirements and Fees.** The Asbestos PI Trustees shall have the discretion to determine, with the consent of the Asbestos PI TAC and the Futures Representative, (a) whether a claimant must have previously filed an Asbestos PI Claim in the tort system to be eligible to file the claim with the Asbestos PI Trust and (b) whether a filing fee should be required for any Asbestos PI Claims.

**SECTION VII**

**General Guidelines for Liquidating and Paying Claims**

**7.1    Showing Required.** To establish a valid Asbestos PI Claim, a claimant must meet the requirements set forth in this Asbestos TDP. The Asbestos PI Trust may require the submission of X-rays, CT scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the claim, and may further require that

- 48 -

medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

**7.2    Costs Considered.** Notwithstanding any provisions of this Asbestos TDP to the contrary, the Asbestos PI Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid Asbestos PI Claims so that the payment of valid Asbestos PI Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Asbestos PI Claim. The Asbestos PI Trustees shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the Asbestos PI Trust so that valid Asbestos PI Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Asbestos PI Trustees, in appropriate circumstances, from contesting the validity of any claim against the Asbestos PI Trust whatever the costs, or to decline to accept medical evidence from sources that the Asbestos PI Trustees have determined to be unreliable pursuant to the Claims Audit Program described in Section 5.7 above.

**7.3    Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.** Consistent with the provisions hereof and subject to the FIFO Processing and Liquidation Queues, the Maximum Annual Payment, the Maximum Available Payment and the Claims Payment Ratio requirements set forth above, the Asbestos PI Trustees shall proceed as quickly as possible to liquidate valid Asbestos PI Claims, and shall make payments to holders of such claims in accordance with this Asbestos TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the Asbestos PI Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Asbestos PI Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Asbestos PI Trustees, the purposes of the Asbestos PI Trust, the established allocation of funds to claims in Categories A and B, and the practical limitations imposed by the inability to predict the future with precision. In the event that the Asbestos PI Trust faces temporary periods of limited liquidity, the Asbestos PI Trustees may, with the consent of the Asbestos PI TAC and the Future Asbestos Claimants' Representative, suspend the normal order of payment and may temporarily limit or suspend payments altogether, and may offer a Reduced Payment Option as described in Section 2.6 above.

**7.4     Punitive Damages.**  Except as provided below for claims asserted under the Alabama Wrongful Death Statute, in determining the value of any liquidated or unliquidated Asbestos PI Claim, punitive or exemplary damages, *i.e.*, damages other than compensatory damages, shall not be considered or allowed, notwithstanding their availability in the tort system. Similarly, no punitive or exemplary damages shall be payable with respect to any claim litigated against the Asbestos PI Trust in the tort system pursuant to Sections 5.11 above and 7.6 below. The only damages that may be awarded pursuant to this Asbestos TDP to Alabama Claimants who are deceased and whose personal representatives pursue their claims only under the Alabama Wrongful Death Statute shall be compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to its choice of