law principles. The choice of law provision in Section 7.4 herein applicable to any claim with

respect to which, but for this choice of law provision, the applicable law of the Claimant's

Jurisdiction pursuant to Section 5.3(b)(2) is determined to be the Alabama Wrongful Death

Statute, shall only govern the rights between the Asbestos PI Trust and the claimant including,

but not limited to, suits in the tort system pursuant to Section 7.6, and to the extent the Asbestos

PI Trust seeks recovery from any entity that provided insurance to Kaiser, the Alabama Wrongful

Death Statute shall govern.

### 7.5    Interest.

**7.5(a) In General.** Except for Asbestos PI Claim involving Other Asbestos

Disease (Disease Level I – Cash Discount Payment) and subject to the limitations set forth

below, interest shall be paid on all Asbestos PI Claims with respect to which the claimant has

had to wait a year or more for payment, provided, however, that no claimant shall receive interest

for a period in excess of seven (7) years. The initial interest rate shall be six percent (6%) simple

interest per annum for the first five (5) years after the Effective Date; thereafter, the Asbestos PI

Trustees shall have the discretion to change the annual interest rate with the consent of the

Asbestos PI TAC and the Future Asbestos Claimants' Representative.

**7.5(b) Unliquidated Asbestos PI Claims.** Interest shall be payable on the

Scheduled Value of any unliquidated Asbestos PI Trust Claim that meets the requirements of

Disease Levels II – V, VII and VIII, whether the claim is liquidated under Expedited Review,

Individual Review, or by arbitration. No interest shall be paid on any claim involving Disease

Level I, or on any claim liquidated in the tort system pursuant to section 5.11 above and 7.6

below. Interest on an unliquidated Asbestos PI Trust Claim that meets the requirements of

Disease Level VI shall be based on the Average Value of such a claim. Interest on all such unliquidated claims shall be measured from the date of payment back to the earlier of the date that is one year after the date on which (a) the claim was filed against Kaiser prior to the Petition Date; (b) the claim was filed against another defendant in the tort system on or after the Petition Date but before the Effective Date; or (c) the claim was filed with the Asbestos PI Trust after the Effective Date.

**7.5(c) Liquidated Pre-Petition Asbestos PI Trust Claims.** Interest shall also be payable on the liquidated value of all Pre-Petition Liquidated Asbestos PI Trust Claims described in Section 5.2(a) above. In the case of Pre-Petition Liquidated Asbestos PI Trust Claims liquidated by verdict or judgment, interest shall be measured from the date of payment back to the date that is one year after the date that the verdict or judgment was entered. In the case of Pre-Petition Liquidated Asbestos PI Trust Claims liquidated by a binding, judicially enforceable settlement, interest shall be measured from the date of payment back to the date that is one year after the Petition Date.

**7.6 Suits in the Tort System.** If the holder of a disputed claim disagrees with the Asbestos PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.10 above, the holder may file a lawsuit in the Claimant's Jurisdiction as defined in Section 5.3(b)(2) above. Any such lawsuit must be filed by the claimant in her or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with respect to the Asbestos PI Trust, all defenses which could have been asserted by Kaiser)

shall be available to both sides at trial; however, the Asbestos PI Trust may waive any defense and/or concede any issue of fact or law. If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim was filed with the Asbestos PI Trust, the case shall be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

     **7.7**    **Payment of Judgments for Money Damages.** If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment became final. Thereafter, the claimant shall receive from the Asbestos PI Trust an initial payment (subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio provisions set forth above) of an amount equal to one-hundred percent (100%) of the greater of (i) the Asbestos PI Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration. The claimant shall receive the balance of the judgment, if any, in five equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the applicable Payment Percentage, the Maximum Available Payment and the Claims Payment Ratio provisions set forth above).

     In the case of non-Extraordinary claims involving Disease Levels IV - VIII, the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in Section 5.3(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the Maximum Value for such claims set forth in Section 5.4(a) above. In the case of claims involving Disease Levels I – III, the total amounts

paid shall not exceed the Scheduled Value of such claims. Under no circumstances shall interest be paid pursuant to Section 7.5 or under any statute on any judgments obtained in the tort system.

**7.8    Releases.** The Asbestos PI Trustees shall have the discretion to determine the form and substance of the releases to be provided to the Asbestos PI Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the Asbestos PI Trust. As a condition to making any payment to a claimant, the Asbestos PI Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

**7.9    Third-Party Services.** Nothing in this Asbestos TDP shall preclude the Asbestos PI Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos PI Trust so long as decisions about the categorization and liquidated value of Asbestos PI Trust Claims are based on the relevant provisions of this Asbestos TDP, including the Disease Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

**7.10    Asbestos PI Trust Disclosure of Information.** Periodically, but not less often than once a year, the Asbestos PI Trust shall make available to claimants and other interested parties, the number of claims by Disease Levels that have been resolved both by the Individual Review Process and by arbitration as well as by litigation in the tort system indicating the amounts of the awards and the averages of the awards by jurisdiction.

## SECTION VIII

### Miscellaneous

**8.1    Amendments.** Except as otherwise provided herein, the Asbestos PI Trustees

may amend, modify, delete, or add to any provisions of this Asbestos TDP (including, without

limitation, amendments to conform this Asbestos TDP to advances in scientific or medical

knowledge or other changes in circumstances), provided they first obtain the consent of the

Asbestos PI TAC and the Future Asbestos Claimants' Representative pursuant to the Consent

Process set forth in Sections 5.76.7(b) and 6.67.7(b) of the Asbestos PI Trust Agreement, except

that the right to amend the Claims Payment Ratio is governed by the restrictions in Section 2.6

above, and the right to adjust the Payment Percentage is governed by Section 4.2 above.  Nothing

herein is intended to preclude the Asbestos TAC or the Asbestos Future Claimants'

Representative from proposing to the Asbestos Trustees, in writing, amendments to these

Procedures.  Any amendment proposed by the Asbestos TAC or the Asbestos Future Claimants'

Representative shall remain subject to Section 8.4 of the Asbestos Personal Injury Trust

Agreement.

**8.2    Severability.** Should any provision contained in this Asbestos TDP be

determined to be unenforceable, such determination shall in no way limit or affect the

enforceability and operative effect of any and all other provisions of this Asbestos TDP.  Should

any provision contained in this Asbestos TDP be determined to be inconsistent with or contrary

to Kaiser's obligations to any insurance company providing insurance coverage to Kaiser in

respect of claims for personal injury based on exposure to asbestos-containing products

manufactured or produced by Kaiser, the Asbestos PI Trustees with the consent of the Asbestos

PI TAC and the Future Asbestos Claimants' Representative, may amend this Asbestos TDP and/or the Asbestos PI Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of Kaiser to said insurance company.

**8.3     Governing Law.**  Except for purposes of determining the liquidated value of any Asbestos PI Claim, administration of this Asbestos TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware.  The law governing the liquidation of Asbestos PI Claims in the case of Individual Review, arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described in Section 5.3(b)(2) above.

SPECIMEN

**ATTACHMENT "A"**

# KAISER ALUMINUM & CHEMICAL CORPORATION

# ALTERNATIVE DISPUTE RESOLUTION (ADR) PROCEDURES

SPECIMEN

## KAISER ALUMINUM & CHEMICAL CORPORATION ASBESTOS PI TRUST

### ALTERNATIVE DISPUTE RESOLUTION (ADR) PROCEDURES

**Pursuant to Section 5.10 of the Kaiser Aluminum & Chemical Corporation Distribution Procedures (the "*Asbestos TDP*"), the Kaiser Aluminum & Chemical Corporation Asbestos PI Trust (the "*Asbestos PI Trust*") hereby establishes the following Alternative Dispute Resolution ("*ADR*") Procedures to resolve all present and future Asbestos Personal Injury Claims as that term is defined in the Kaiser Aluminum & Chemical Corporation Plan of Reorganization (hereinafter referred to for all purposes "*Asbestos PI Claims*"). All capitalized terms herein shall be as defined and/or referenced within the Asbestos TDP.**

**I.      OVERVIEW**

**The Asbestos PI Trust shall appoint a Private Adjudication Coordinator, at the cost of the Asbestos PI Trust, to administer these ADR procedures. To initiate these procedures, the claimant must make a written request to the Asbestos PI Trust. Within twenty (20) days of a claimant's request for ADR, the Asbestos PI Trust will send the claimant an ADR packet containing the documents necessary to pursue the ADR process. These ADR procedures shall not be construed as imparting to any claimant any substantive or procedural rights beyond those conferred by the Asbestos TDP.**

**The ADR process available to the claimant includes both non-binding and binding elements. In addition, there are mandatory as well as voluntary options to be utilized by the claimant and the Asbestos PI Trust in proceeding toward settlement. These ADR procedures must be pursued by claimants on an individual basis. As a general matter, claims of different claimants cannot be grouped together even if the claimants are represented by the same counsel, unless the Asbestos PI Trust, in its sole discretion, decides it would be expeditious to conduct ADR proceedings with respect to more than one claim involving differently exposed claimants with those claimants' representative. In such a case, however, the arbitrator, mediator or other neutral must individually value each such claim using the valuation factors set forth in Section 5.3(b)(2) of the Asbestos TDP, and the claimants' positions in the Asbestos PI Trust's FIFO Processing and Payment Queues must be separately maintained.**

**The requisite steps in the ADR process are as follows, in order:**

***A.      Mandatory ADR Proceedings (Two Stages)***

**1.      Stage One (Claimant Must Select One):**

**a.      Pro Bono Evaluation**
**b.      Mediation**

SPECIMEN

### B. Stage Two: Arbitration (Binding or Non-Binding)

Within twenty (20) days of a claimant's request for ADR, the Asbestos PI Trust will send the claimant an ADR packet containing a copy of these procedures and the following:

1. A summary outline of the ADR procedures with the time limits identified;

2. Form Affidavit of Completeness;

3. Election Form for Pro Bono Evaluation;

4. Request for Mediation Form;

5. Election Form and Agreement to submit to Binding Arbitration; and

6. Election Form and Agreement to submit to Non-binding Arbitration.

A claimant who wishes to proceed through the ADR process must engage in one of the two ADR options (pro bono evaluation or mediation) before any form of arbitration. Only after either party rejects a non-binding arbitration award may a claimant proceed to then commence a lawsuit in the tort system. It is the claimant's responsibility to comply with the ADR time deadlines. Although the deadlines may be extended by agreement or for cause shown, failure to comply with a deadline without obtaining an extension may result in withdrawal of the claim. Promptly after a claimant fails to comply with a specified deadline without obtaining an extension, the Asbestos PI Trust shall send the claimant written notice of the failure to comply. If the claimant does not take any action on the claim, then thirty (30) days thereafter the claim will be deemed withdrawn.

If the claimant requests arbitration, either binding or non-binding, the Asbestos PI Trust shall execute the appropriate election form and agreement. If both parties agree to binding arbitration, then the claimant and the Asbestos PI Trust waive their respective rights to seek a jury trial as set forth in the Asbestos TDP.

If either party rejects a non-binding arbitration award, and the claimant has otherwise complied with the requirements of these ADR procedures and the Plan, then the claimant may commence a lawsuit against the Asbestos PI Trust in the Claimant's Jurisdiction, as that term is defined in Section 5.3(b)(2) of the Asbestos TDP.

SPECIMEN

## II.    ADR PROCEEDINGS SUMMARY

### A.    Showing Required

As set forth in the Asbestos TDP, in order to establish a valid Asbestos PI Claim, a claimant must among other things make a demonstration of exposure to asbestos-containing products for which Kaiser Aluminum & Chemical Corporation ("*Kaiser*") bears legal responsibility.

### B.    Pro Bono Evaluation

This ADR alternative consists of an evaluation of the claim by an evaluator selected from a pro bono panel. The panel shall be comprised of asbestos litigation attorneys as mutually agreed upon between the Asbestos PI TAC (the "*TAC*") and the Asbestos PI Trustees (the "*Trustees*"). The TAC will be provided, on a quarterly basis, with a list of the pro bono panelists. Each evaluation will have a pro bono evaluator randomly selected by the Private Adjudication Coordinator from the list of pro bono panelists. Within fifteen (15) days of the claimant's request for the pro bono evaluation, the individual pro bono evaluator shall be randomly chosen from the approved panel.

A pro bono evaluation will be done by document submission. The identity of the pro bono evaluator will not be disclosed to the claimant or the claimant's attorney. The Asbestos PI Trust encourages identification of and not anonymity as to the alleged injured party so that medical records can be transmitted in their original form. The Private Adjudication Coordinator will communicate to the parties the pro bono evaluator's written evaluation. The parties will communicate their respective rejection or acceptance of settlement upon the terms of the written evaluation. If either or both parties reject settlement upon those terms, then the claimant may submit an Election Form and Agreement for Binding or Non-binding Arbitration.

### C.    Mediation

The claimant may request telephone mediation as an ADR alternative. This process will require the detailed written submissions to familiarize the mediator with the respective positions. The Asbestos PI Trust shall establish and maintain a list of qualified regional mediators compensated by the Asbestos PI Trust. The Private Adjudication Coordinator shall select a qualified mediator from the list based upon location of claimant within fifteen (15) days after receipt of the Request for Mediation Form signed by the claimant and the Asbestos PI Trust.

Claims shall be handled by each mediator in the order received by him or her, to the extent practicable. Any party may be represented by legal counsel. The mediator shall review the claim and the positions of the parties, such information as the parties may wish to submit as to a fair and equitable settlement, and all documents and medical reports relevant to the claim as

SPECIMEN

submitted by the parties.  At least five (5) business days prior to the mediation conference, claimant and the Asbestos PI Trust shall each submit to the mediator a detailed written submission consisting of a confidential statement outlining the claimant's medical condition, exposure to Kaiser products and each party's detailed position on overall claim value.  The mediator shall confer with the parties and/or their legal representatives, individually and jointly.  Such conference shall be conducted by telephone unless both parties agree otherwise.  A representative of the Asbestos PI Trust with settlement authority must participate in the conference.  The mediator may request, but not require, that the claimant personally participate in the conference.  Such conference shall be in the nature of a settlement conference.  The mediator shall work with both sides toward reaching an acceptable, reasonable settlement.  The mediator does not have the authority to impose a settlement on the parties.  Ten (10) days after the conclusion of the mediation, if the parties have not settled the matter, the claimant may submit to the Asbestos PI Trust an Election Form and Agreement for Binding or Non-binding Arbitration.

### D.    Binding and Non-Binding Arbitration Procedures

Upon completion of either pro bono evaluation or mediation, the claimant may request non-binding and/or binding arbitration.  Binding arbitration will be conducted in the "final offer" format also known as "baseball style" arbitration.  If the claim is arbitrated in either the binding or non-binding format, then the arbitrator shall return an award no greater than the Maximum Value for the relevant Disease Category set forth in Section 5.3(b)(4) of the Asbestos TDP, unless the claim qualifies as an Extraordinary Claim pursuant to Section 5.4(a) of the Asbestos TDP. In that case, the arbitrator shall return an award no greater than the Maximum Value for such claims as also set forth in Section 5.4(a) of the Asbestos TDP.

If the claimant requests arbitration, either binding or non-binding, then the Asbestos PI Trust shall execute the appropriate Election Form and Agreement. The Asbestos PI Trust may not decline the claimant's election of either binding or non-binding arbitration, but reserves all rights to reject any award in a non-binding arbitration proceeding.  If the parties agree to engage in binding arbitration, then the claimant and the Asbestos PI Trust waive their respective rights to seek a jury trial as set forth in the Asbestos TDP.

## III.    RULES GOVERNING PRO BONO EVALUATION AND MEDIATION

Within ninety (90) days of a claimant's receipt of the ADR packet from the Asbestos PI Trust, the claimant must elect one of the two ADR procedures and return the appropriate form to the Asbestos PI Trust along with an executed Affidavit of Completeness.

### A.    *Rules Governing Pro Bono Evaluation*

1.    **Election and Time Limits**

a.    **If the claimant chooses pro bono evaluation, then within ninety (90) days of claimant's receipt of the ADR packet, the claimant must send the Asbestos PI Trust the Election Form for Pro Bono Evaluation. (See Attachment 1). The claimant or his/her attorney shall personally sign the Election Form for Pro Bono Evaluation.**

b.    **The claimant must also sign an Affidavit of Completeness (*See* Attachment 2) and return it to the Asbestos PI Trust with a copy to the Private Adjudication Coordinator within ninety (90) days of receipt of the ADR packet. The claim will not proceed until the Asbestos PI Trust has received a completed election form and Affidavit of Completeness from the claimant. The Affidavit of Completeness shall verify that all information to be considered in the ADR process has been provided to the Asbestos PI Trust while the claim was under review by the Asbestos PI Trust.**

c.    **After receiving the signed election form and Affidavit of Completeness, the Asbestos PI Trust shall review and sign the election form within five (5) business days of receipt.**

d.    **Within fifteen (15) days from the date the Asbestos PI Trust notifies the claimant's counsel of the Asbestos PI Trust's consent to the election form, the Asbestos PI Trust shall send a copy of the signed election form, the Affidavit of Completeness together with complete copies of all materials submitted to the Asbestos PI Trust by the claimant and factual information in the Asbestos PI Trust file, if any, gathered by the Asbestos PI Trust from other sources, and a completed Affidavit of Accuracy to the claimant's counsel and the Private Adjudication Coordinator who will forward the materials to the selected pro bono evaluator at the time the evaluator is selected. The Asbestos PI Trust may not send the Private Adjudication Coordinator any materials in the Asbestos PI Trust file that have not previously been provided to the claimant.**

2.    **Selection of the Pro Bono Evaluator**

**Within fifteen (15) days of the date the Private Adjudication Coordinator receive the claimant's election agreement, the Private**

SPECIMEN

Adjudication Coordinator shall randomly select the pro bono evaluator from the list of pro bono panelists and notify the parties that the evaluator has been designated without disclosing the identity of the evaluator. The pro bono evaluator shall be selected from a panel of asbestos litigation plaintiff attorneys who have volunteered to serve the Asbestos PI Trust at the request of the TAC. Pro bono assignments will be made on a rotating basis.

The identity of the pro bono evaluator shall not be disclosed to the claimant and the claimant's attorney. The identity of the claimant should be disclosed so that medical records can be transmitted in their original form.

**3.      Submission of Written Arguments**

Fifteen (15) days after the Asbestos PI Trust sends the complete file materials to the Private Adjudication Coordinator, the claimant and the Asbestos PI Trust shall simultaneously exchange and submit written arguments to the Private Adjudication Coordinator. The Private Adjudication Coordinator will immediately forward the written arguments to the pro bono evaluator. The written arguments shall comply with the following rules:

a.      The argument shall not exceed ten (10) double spaced typewritten pages. In order to preserve anonymity in a pro bono evaluation, the name of counsel should not be mentioned. The argument may not introduce factual matter not contained in the documents in the Asbestos PI Trust's file. The evaluator shall disregard any argument that does not comply with this rule.

b.      When a party fails to submit the written argument within the fifteen (15) days, the party waives written argument and the pro bono evaluator shall disregard any argument received after that time.

**4.      Evaluation of Documents**

The pro bono evaluation is only a document review with complete anonymity preserved between claimant's counsel and the pro bono evaluator. The documents that the pro bono evaluator may consider shall be limited to the following:

a.      The documents in Asbestos PI Trust's file forwarded to the pro bono evaluator.

b.    The claimant's Affidavit of Completeness and the Asbestos PI Trust's Affidavit of Accuracy.

c.    The written arguments of the claimant and the Asbestos PI Trust that comply with the rules for written arguments set forth above.

d.    Before the Private Adjudication Coordinator forwards any documents to the pro bono evaluator it will redact all references to claimant's counsel.

5.    Written Evaluation and Procedure for Acceptance/Rejection

Within fifteen (15) days after the submission of written arguments, the pro bono evaluator shall submit a written evaluation of the claim to the Private Adjudication Coordinator who will promptly mail it to the parties.

Within fifteen (15) days after receipt of the pro bono evaluator's written evaluation, the claimant and the Asbestos PI Trust will each communicate in writing to the Private Adjudication Coordinator whether they will accept the amount of the pro bono evaluator's written evaluation to settle the claim. If both parties accept, then the Private Adjudication Coordinator will immediately inform both parties that they have achieved a settlement and the Asbestos PI Trust shall pay the claim pursuant to the Asbestos TDP. If either or both parties reject the pro bono evaluator's written evaluation, then within five (5) business days of receipt of both parties' written communication, the Private Adjudication Coordinator shall send each party a notice of rejection of pro bono evaluator's written evaluation that will not indicate whether the opposing party has accepted or rejected the pro bono evaluator's written evaluation amount.

6.    Arbitration May Proceed After Rejection of Pro Bono Evaluator's Written Evaluation

Within sixty (60) days after receipt of the notice of rejection of pro bono evaluator's written evaluation, the claimant may request arbitration by returning to the Asbestos PI Trust a signed Election Form and Agreement for either Binding or Non-binding Arbitration.

B.    *Rules Governing Mediation*

1.    Election

If the claimant chooses mediation, then the claimant shall submit to the Asbestos PI Trust a signed Request for Mediation Form

(Attachment 3) along with an executed Affidavit of Completeness within ninety (90) days of claimant's receipt of the ADR packet. Within five (5) business days of the Asbestos PI Trust's receipt of the signed Request for Mediation Form, the Asbestos PI Trust shall review and sign the form and forward a signed copy along with an executed Affidavit of Accuracy to the claimant and the Private Adjudication Coordinator.

2.    **Selection of Mediator**

Within fifteen (15) days of the signed Request for Mediation Form, the Private Adjudication Coordinator shall retain a mediator from the approved list of mediators. The Private Adjudication Coordinator shall select the mediator based upon the region in which the claimant is located. The mediator shall be compensated by the Asbestos PI Trust. The Private Adjudication Coordinator shall schedule a mediation conference within sixty (60) days after receipt of the signed request for mediation form. The mediation will be conducted by telephone conference unless the parties agree otherwise. Scheduling of the conference shall be coordinated with the mediator and the conferences shall take place in the order received by the mediator, to the extent practicable.

3.    **Submission of Materials to Mediator**

At least five (5) business days prior to the mediation conference, the claimant and the Asbestos PI Trust shall each submit to the mediator detailed written submissions consisting of a confidential statement outlining the claimant's medical condition, exposure to Kaiser products, and each party's position on overall claim value. The parties may also submit to the mediator documents and medical reports that they believe are relevant to the claim. The mediator shall review the claim and the positions of the parties and the other information that the parties submit prior to the mediation conference. The mediation briefs shall comply with the following rules:

a.    The submission should not exceed ten (10) double spaced typewritten pages exclusive of attachments.

b.    The submission may not introduce factual matter not contained in the documents in the Asbestos PI Trust's file as certified by the Affidavit of Completeness.

4.    **Mediation Conference**

Any party may be represented by legal counsel at the mediation conference. The mediator shall confer with the parties legal representatives and, if the claimant is present and consents, with the

SPECIMEN

claimant. A representative of the Asbestos PI Trust with settlement authority must participate in the conference. The mediator may request, but not require, that the claimant personally participate in the conference.

**5.    Negotiations at the Mediation Conference**

The mediator may facilitate settlement in any manner the mediator believes is appropriate. The mediator will help the parties focus on their underlying interests, explore resolution alternatives and develop settlement options. The mediator will decide when to hold joint conferences, and when to confer separately with each party.

The parties are expected to initiate and convey to the mediator proposals for settlement. Each party shall provide a rationale for any settlement terms proposed. Finally, if the parties fail to develop mutually acceptable settlement terms, before terminating the procedure, and only with the consent of the parties, (a) the mediator may submit to the parties a final settlement proposal; and (b) if the mediator believes he/she is qualified to do so, the mediator may give the parties an evaluation (which if all parties choose, and the mediator agrees, may be in writing) of the likely outcome of the case if it were tried to final judgment, subject to any limitations under the Plan, the Asbestos TDP and ethical codes.

**6.    Confidentiality of Mediation**

The entire mediation process is confidential. Unless agreed among all the parties or required to do so by law, the parties and the mediator shall not disclose to any person who is not associated with participants in the process, including any judicial officer, any information regarding the process (including pre-process exchanges and agreements), contents (including written and oral information), settlement terms or outcome of the proceeding.

Under this procedure, the entire process is a compromise negotiation subject to Federal Rule of Evidence 408 and all state counterparts, together with any applicable statute protecting the confidentiality of mediation. All offers, promises, conduct and statements, whether oral or written, made in the course of the proceeding by any of the parties, their agents, employees, experts and attorneys, and by the mediator are confidential. Such offers, promises, conduct and statements are privileged under any applicable mediation privilege and are inadmissible and not discoverable for any purpose, including impeachment, in litigation between the parties. However, any written or oral information or other materials submitted to the mediator by either the Asbestos PI Trust or the claimant may be submitted by either party to the arbitrator in an arbitration that takes place under

these ADR procedures. In addition, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable solely as a result of its presentation or use during the mediation.

The exchange of any tangible material shall be without prejudice to any claim that such material is privileged or protected as work-product within the meaning of Federal Rule of Civil Procedure 26 and all state and local counterparts.

The mediator and any documents and information in the mediator's possession will not be subpoenaed in any such investigation, action or proceeding, and all parties will oppose any effort to have the mediator or documents subpoenaed. The mediator will promptly advise the parties of any attempt to compel him/her to divulge information received in mediation.

7.    **Submission of Written Offers After Mediation**

At the conclusion of the mediation, the mediator shall require the parties to exchange written settlement offers that shall remain open for ten (10) days. If after the expiration of that ten (10) day period neither party accepts the other's written offer or the parties do not otherwise settle the matter, then the claimant may request binding or non-binding arbitration by sending to the Asbestos PI Trust the appropriate signed Election Form and Agreement for either Binding or Non-binding Arbitration.

## IV.    RULES GOVERNING NON-BINDING AND BINDING ARBITRATION

### A.    *Election by the Claimantt*

The Asbestos PI Trust shall review the Election Form and Agreement for Binding or Non-binding Arbitration (Attachments 4 and 5) and within five (5) business days of receipt the Asbestos PI Trust shall sign the Agreement and shall immediately send a fully signed Arbitration Agreement to the Private Adjudication Coordinator.

### B.    *Selection of the Arbitrator*

1.    As soon as reasonably possible after the receipt of the signed Arbitration Agreement, but no more than fifteen (15) days after the receipt of the signed arbitration agreement, the Private Adjudication Coordinator shall select three potential arbitrators from a rotating list

SPECIMEN

kept by the Private Adjudication Coordinator. Arbitrator's assignments will be made on a rotating basis nationally, by the Private Adjudication Coordinator. The Private Adjudication Coordinator shall promptly notify the arbitrator and the parties of the potential arbitrators' selection. If a potential arbitrator is unable or unwilling to serve, then a replacement selection will be made prior to notifying the Asbestos PI Trust and the claimant of the potential arbitrators selected.

2.    Within seven (7) days of receipt of the list of potential arbitrators, the Asbestos PI Trust may select, and identify to the Private Adjudication Coordinator, one potential arbitrator to be stricken from the list. The Private Adjudication Coordinator shall then promptly notify the claimant of the Asbestos PI Trust's selection, whereupon, within seven (7) days of the receipt of such notification, the claimant may select, and identify to the Private Adjudication Coordinator, a second potential arbitrator to be stricken from the list. The Private Adjudication Coordinator shall then notify all parties which potential arbitrator remains and will conduct the arbitration. If either the Asbestos PI Trust or the claimant, or both, fails to exercise the right to strike an arbitrator from the list of potential arbitrators, the Private Adjudication Coordinator shall appoint from those potential arbitrators remaining the arbitrator next in rotation on the Asbestos PI Trust's rotating list.

3.    Any appointed arbitrator shall disclose to the Private Adjudication Coordinator any circumstances likely to affect impartiality including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or representatives. Upon receipt of such information from the arbitrator or another source, the Private Adjudication Coordinator shall communicate the information to the parties and, if the administrator deems necessary, to the arbitrator and others. Upon objection of a party to the continued service, the Private Adjudication Coordinator shall determine whether the arbitrator should be disqualified and shall inform the parties of the decision, which shall be final.

C.    *Final Offer or "Baseball Style" Binding Arbitration*

All binding arbitrations shall be conducted in the "final offer" format also known as "baseball style" arbitration. In the course of submitting the arbitration materials, as explained in these rules, the parties shall submit their final offer of settlement which shall also serve as the party's demand for arbitration award. The arbitrator must choose from one of these two demands in determining the amount of the arbitration award.

**D.    _Submission of Pre-Hearing Statements_**

Within twenty (20) days of the appointment of an arbitrator each party shall submit to the opposing party and to the arbitrator a written statement (not to exceed ten (10) double spaced pages) containing that party's positions and arguments. Each party may then submit a supplement to its written statement (not to exceed five (5) double-spaced pages) following the initial pre-hearing conference to respond to the opposing party's positions and arguments and addressing issues raised at the initial pre-hearing conference. Supplements must be sent to the opposing party and to the arbitrator within ten (10) days after the date of the pre-hearing conference.

The Private Adjudication Coordinator will provide the arbitrator with a complete schedule of categories of injuries and Scheduled, Average and Maximum Values therefor in the Asbestos TDP.

**E.    _Initial Pre-Hearing Conference, Scheduling Hearing Date, Optional Video Conference for Arbitration Hearing_**

1.    Within fifteen (15) calendar days of the receipt of both party's briefs, the Private Adjudication Coordinator shall contact the claimant, the arbitrator, and the Asbestos PI Trust to schedule the initial pre-hearing conference. The pre-hearing conference shall be presided over by the arbitrator and held by telephone conference call.

2.    During the initial pre-hearing conference, the arbitrator shall schedule the date and select the location of the arbitration hearing either at the location of the arbitrator or a location mutually agreeable by the parties. The arbitration hearing should be scheduled not less than forty-five (45) days, and not more than sixty (60) days, from the date of the initial pre-hearing conference. The Private Adjudication Coordinator will mail a confirmation notice of this date to the claimant and the Asbestos PI Trust.

3.    At the election of the claimant, the arbitration hearing may be conducted by video conference. If the claimant so elects, then the claimant must state that election in writing prior to the initial pre-hearing conference. The Private Adjudication Coordinator will make appropriate arrangements for the Asbestos PI Trust and the arbitrator to participate by video conference. The Asbestos PI Trust shall pay for its and the arbitrator's cost for use of video conference equipment and facilities. The claimant shall only be responsible for his/her costs (including participation by claimant's counsel).

4.    **During the initial pre-trial conference, the arbitrator shall seek to achieve agreement between the parties on:**

   a.    **narrowing the issues (through methods including but not limited to stipulation of facts);**

   b.    **whether the claimant will appear at the hearing (at the claimant's sole discretion);**

   c.    **any legal issues;**

   d.    **and any other matters that will expedite the arbitration proceedings.**

   **If appropriate or if the parties do not agree on these issues, then the arbitrator must issue orders governing the process.**

F.    *No Discovery With Limited Exceptions*

   **There shall be no discovery except as specifically provided below. The purpose of the arbitration is to resolve differences between the Asbestos PI Trust and the claimant based only on the documents that have been previously submitted to the Asbestos PI Trust by the claimant and any other documents relied upon by the Asbestos PI Trust to make a settlement offer to the claimant or to disallow the claim. However, if the Asbestos PI Trust commissions an independent medical examination or a third-party medical review upon which the Asbestos PI Trust relies in evaluating the claimant's claim, then the claimant may depose the medical professional conducting the review or examination after having a reasonable opportunity to study any report or written opinion generated by the medical professional.**

G.    *No Record of Proceedings Unless Requested by Arbitrator*

   **There will be no record or transcript of the proceedings unless and except the arbitrator requests a transcript to assist him/her in reviewing the evidence or otherwise to aid in the decision making process. In the event an arbitrator requests a transcript prior to the arbitration, then the Asbestos PI Trust shall arrange for a court reporter and shall pay all expenses associated with the preparation of the transcript. In no event, however, will the transcript be made available to the parties, nor shall any time required for preparation of the transcript affect the time for the arbitrator to render a decision.**

### *H.    Postponement of Hearing*

The arbitrator for good cause may postpone any hearing upon the request of a party or upon the arbitrator's own initiative, and shall also grant such postponement when all of the parties agree.

### *I.    Duration of Hearings*

The arbitrator shall complete the hearing in one day except for good cause shown. The arbitrator shall set time limits on the respective presentations, and shall enforce those set limits. The parties shall request no more than three hours apiece for presentation of their cases.

### *J.    Procedure at Arbitration Hearing*

**1.    Testimony Under Oath or Affirmation**

If the claimant or any other witness testifies, such testimony shall be under oath or affirmation administered by the arbitrator.

**2.    Conduct of Hearing**

At the opening of the arbitration hearing, the arbitrator shall make a written record of the time, place, and date of the hearing, and the presence of the parties and counsel.

**3.    Evidence**

**a.    Rules of Evidence:** The arbitrator is not required to apply the rules of evidence used in judicial proceedings, provided, however that the arbitrator shall apply the attorney-client privilege and the work product privilege. The arbitrator shall determine the applicability of any privilege or immunity and the admissibility, relevance, materiality and weight of the evidence offered.

**b.    Admission of Evidence:** The evidence that the arbitrator may consider shall be limited to the following:

**a.    The documents supplied to the Asbestos PI Trust prior to the execution of the Affidavit of Completeness;**

**b.    Non-binding or binding arbitration election agreement;**

**c.    Testimony of the claimant, who may offer evidence regarding the nature and extent of compensable damages, including physical injuries, and/or the market share of Kaiser products, if there is a claim of greater than average market share. The Asbestos PI Trust may cross-examine on these issues. At the claimant's option,**

SPECIMEN

a claimant's deposition, including videotaped testimony, shall be admissible into evidence in lieu of live testimony.

d.    Any additional deposition testimony taken by the Asbestos PI Trust or the claimant, and provided to both sides, prior to the initiation of ADR.

e.    Any evidence submitted in mediation.

f.    Arguments of the claimant and the Asbestos PI Trust. The arguments shall be limited to the evidence contained and the issues raised in the documents or testimony referred to above and shall be limited to ½ hour for each party. The arbitrator shall disregard any effort to introduce further evidence or issues in argument.

## K.    Arbitration in the Absence of a Party or Representative

The claimant may choose whether or not to attend the arbitration in person in his/her sole discretion. The arbitration may proceed in the absence of any party or representative who, after due notice, chooses not to be present, fails to be present or fails to obtain a postponement if he/she desires to be present but cannot. An award shall not be made against a party solely for the failure to appear. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

## L.    Conclusion of Hearing and Submission of Post-Hearing Submissions

When the parties state that they have no further evidence or witnesses to offer, and after the parties have made their closing arguments, if any, the arbitrator shall declare the hearing closed. Post-hearing submissions will be permitted only upon order of the arbitrator and shall be served upon the arbitrator no later than ten (10) ten days after the hearing is closed. Such submissions shall be no longer than five (5) double spaced pages. The time limit within which the arbitrator is required to make the award shall commence to run upon the closing of the hearing or the submission of post-hearing submissions, whichever is later.

## M.    Option to Waive Oral Hearings

The parties may request a waiver of oral hearings. Oral hearings will only be waived if all parties consent.

### N.    Arbitration Decision

1.    The arbitrator shall issue a decision no later than fifteen (15) calendar days after the date of the close of the hearing or submission of post-hearing submissions, whichever is later.

2.    The decision shall state only the amount of the award, if any. The decision shall not state reasons for the award. An arbitrator shall not be permitted to award punitive, exemplary, trebled or other like damages or attorneys' fees, and prejudgment and post-judgment interest and costs shall not be sought or allowed. The award shall dispose of all monetary claims presented to the arbitrator and shall determine fully the only issue to be decided pursuant to the arbitration agreement: the amount, if any, at which the claim value should be fixed. To assist the arbitrator, the Private Adjudication Coordinator will provide the arbitrator with a schedule setting forth the Disease Levels and the Scheduled, Average and Maximum Values associated with each category.

### O.    Payment of Award

Pursuant to the terms of the arbitration agreement, the Asbestos PI Trust will promptly send to the claimant the appropriate release. The Asbestos PI Trust will then pay the claim based upon the binding or, if accepted by both parties, the non-binding award, in accordance with the Asbestos TDP provisions in effect at that time.

### P.    Rejection of Non-Binding Award

1.    A party in a non-binding arbitration proceeding that wishes to reject the award must notify the other party within thirty (30) days from the date a non-binding award is issued. If no rejection is received or sent by the Asbestos PI Trust, then the decision will stand and the award will be deemed accepted by both parties and the Asbestos PI Trust will promptly send to the claimant the appropriate release. The Asbestos PI Trust will then pay the claim in accordance with the Asbestos TDP in effect at that time.

2.    Procedure for Rejected Award
   a.    Rejection by Claimant

If claimant has sent the Asbestos PI Trust timely notification of rejection of a non-binding award and wishes to pursue the claim, then the claimant must notify the Asbestos PI Trust through correspondence postmarked no later than sixty (60) days from the date of the non-binding award. If notification is received within the sixty (60) day deadline and claimant wishes

SPECIMEN

to pursue the claim, then the Asbestos PI Trust will within fifteen (15) days of receipt of this notification send the claimant an authorization to commence litigation.

**b.      Rejection by Asbestos PI Trust**

If the Asbestos PI Trust rejects the non-binding award, then claimant may elect binding arbitration or request that the Asbestos PI Trust forward the authorization to commence litigation.

## V.     GENERAL ADR PROCEDURES GOVERNING PRO BONO EVALUATION, MEDIATION, NON-BINDING ARBITRATION, AND BINDING ARBITRATION

### A.      ADR Submissions

The claimant's submissions (with the exception of the binding arbitration's written argument) will be reviewed by the ADR administrator before they are submitted to the pro bono evaluator, mediator or arbitrator. If they contain materials not previously submitted in support of the claim, then the Asbestos PI Claims department will review the additional information and determine the effect, if any, it would have on the Asbestos PI Trust's evaluation of the claim. In appropriate situations, a new offer may be made to the claimant.

If an attorney or other agent represents the claimant, both the attorney *and* the claimant must also sign the Election and Agreement for Binding Arbitration. The attorney or agent may not sign in place of, or for, the claimant unless the claimant is incapacitated, incompetent or deceased and the attorney or agent has been designated legally to act on the claimant's behalf. Documentation of this legal designation will be required.

### B.      No Grouping or Bundling of Claims

As a general matter, there shall be no grouping or bundling of claims by separate claimants at any stage of the ADR or arbitrations even if the claims are related and/or the claimants have the same counsel. Each claimant must proceed individually through the ADR and arbitration processes with all claims that claimant may have or represent. This provision is intended to separate claims of different exposed persons and has no effect upon multiple claims brought by a claimant's representative, such as heirs of a deceased worker. However, the Asbestos PI Trust, in its sole discretion, may decide that it would be expeditious to allow the conduct of arbitration proceeding with respect to more than one claim of different exposed persons, provided that the arbitrator individually values each such claim in accordance with the valuation factors set forth in Section 5.3(b)(2) of the Asbestos TDP, and

the respective claimants' separate positions in the Asbestos PI Trust's FIFO Processing and Payment Queues are maintained.

*C.*     *No* Ex Parte *Communication*

There shall be no *ex parte* communication between the arbitrator or pro bono evaluator and any counsel or party in any matter.  All correspondence between the arbitrator or pro bono evaluator and the parties will be facilitated by the Private Adjudication Coordinator.

*D.*     *Claims and Defenses*

All available claims and defenses which exist under the law subject to the claimant's election under the Asbestos TDP shall be available to both sides.

*E.*     *Costs of ADR*

.

1.     **ADR Expenses**

The Asbestos PI Trust will pay the arbitrator's fee for non-binding or binding arbitration up to two thousand dollars ($2,000.00) per claim depending on the length of the hearing.  The pro bono evaluator is a volunteer and thus no fee will be incurred.  The Asbestos PI Trust will assume costs of meeting and hearing facilities for arbitration.  Claimants will pay their costs and attorney fees, including any expenses incurred should the claimant testify.

2.     **Filing Fee**

No filing fee is required of the claimant for any ADR selection, unless the Asbestos PI Trust with the consent of the TAC and the Legal Representative decide that it would be in the best interests of the Asbestos PI Trust and its beneficiaries to adopt such a fee.

*F.*     *Waiver of Objection to Rules Infraction*

Either party who continues with the pro bono evaluation, mediation, non-binding arbitration, or binding arbitration proceeding after knowing that any provision or requirement of the applicable rules has not been complied with, and who fails to state a timely objection in writing to the arbitrator, mediator or pro bono evaluator, shall be deemed to have waived the right to object.  A timely objection by a claimant must be stated in writing and mailed to the Asbestos PI Trust with instructions to forward the objection to the Private Adjudication Coordinator and to the arbitrator, mediator or pro bono evaluator.  A timely objection by the Asbestos PI Trust will be mailed to the claimant and to the Private Adjudication Coordinator with instructions to forward to the arbitrator, mediator or pro bono evaluator.

*G.*     *Serving of Notices and Other Papers*

Each party to the ADR and arbitration agreements shall be deemed to have consented that any papers, notices, or processes necessary or proper for the