**EXHIBIT III**

**VOTING PROCEDURES**

See attached.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | :   **Jointly Administered** |
| **KAISER ALUMINUM CORPORATION,** | :   **Case No. 02-10429 (JKF)** |
| a Delaware corporation, <u>et al.</u>, | : |
| | :   **Chapter 11** |
| Debtors. | : |

---

## BALLOT SOLICITATION AND TABULATION PROCEDURES

---

Daniel J. DeFranceschi (DE 2732)
Kimberly D. Newmarch (DE 4340)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

Gregory M. Gordon (TX 08435300)
Daniel P. Winikka (TX 00794873)
Debra K. Simpson (TX 24027986)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

Dated: ~~August 24,~~**September 7,** 2005

# TABLE OF CONTENTS

**Page**

| | | | |
|---|---|---|---|
| 1. | | Definitions | 1 |
| | a. | "Bankruptcy Court" | 1 |
| | b. | "Beneficial Owners" | 1 |
| | c. | "Certified Plan Solicitation Directive" | 1 |
| | d. | "Channeled Personal Injury Claims" | 1 |
| | e. | "Confirmation Hearing" | 1 |
| | f. | "Confirmation Objection Deadline" | 1 |
| | g. | "Debtors" | 1 |
| | h. | "Direct Channeled Personal Injury Claims" | 1 |
| | i. | "Disclosure Statement" | 1 |
| | j. | "Disclosure Statement Hearing" | 1 |
| | k. | "Disclosure Statement Notice" | 1 |
| | l. | "Disclosure Statement Order" | 1 |
| | m. | "Indenture Trustees" | 2 |
| | n. | "Individual Record Holders" | 2 |
| | o. | "KAC" | 2 |
| | p. | "KACC" | 2 |
| | q. | "Master Ballot" | 2 |
| | r. | "Master Ballot Agent Register" | 2 |
| | s. | "Master Ballot Agents" | 2 |
| | t. | "Nominee Register" | 2 |
| | u. | "Nominees" | 2 |
| | v. | "Personal Injury Claims Solicitation Procedures Notice" | 2 |
| | w. | "Plan" | 2 |
| | x. | "Publication Notice" | 2 |
| | y. | "Record Amount" | 3 |
| | z. | "Record Holder Register" | 3 |
| | aa. | "Rule 3018 Motion" | 3 |
| | bb. | "Solicitation Package" | 3 |
| | cc. | "Solicitation and Tabulation Agent" | 3 |
| | dd. | "Transfer Agent" | 3 |
| | ee. | "Voting Deadline" | 3 |
| | ff. | "Voting Debt Securities" | 3 |
| | gg. | "Voting Record Date" | 3 |

**TABLE OF CONTENTS**
(continued)

Page

| | | | |
|---|---|---|---|
| 2. | | Publication Notice | 4 |
| 3. | | Availability of Plan-Related Documents on the Internet | 4 |
| 4. | | Distribution of Certain Documents on CD-ROM | 4 |
| 5. | | Distribution of Solicitation Packages | 4 |
| | a. | Determination of Holders of Record | 4 |
| | b. | Distribution of Solicitation Packages | 45 |
| 6. | | Special Procedures Relating to Channeled Personal Injury Claims | 6 |
| | a. | Procedures Relating to Indirect Channeled Personal Injury Claims | 6 |
| | b. | Procedures Relating to Direct Channeled Personal Injury Claims | 6 |
| 7. | | Special Procedures Relating to Claims in Respect of Voting Debt Securities and Senior Subordinated Notes and Interests in KAC and KACC | 14 |
| | a. | Distribution of Solicitation Packages and Return of Ballots | 14 |
| | b. | Tabulation of Votes to Accept or Reject the Plan in Connection with Voting Debt Securities | 16 |
| | c. | Reimbursement of Expenses | 17 |
| 8. | | Return of Ballots | 17 |
| | a. | Authority to Complete and Execute Ballots | 17 |
| | b. | Method for Transmitting, and Place to Send, Completed Ballots | 17 |
| | c. | Deadline for Receiving Completed Ballots | 17 |
| 9. | | Tabulation of Ballots | 18 |
| | a. | Claimants That Are Entitled to Vote | 18 |
| | b. | General Tabulation Rules | 18 |

KAISER ALUMINUM CORPORATION, *ET AL.*
BALLOT SOLICITATION AND TABULATION PROCEDURES

The following procedures (the "Voting Procedures") have been approved by the Bankruptcy Court in connection with (a) the distribution of solicitation materials and Ballots for voting to accept or reject the Plan (as hereinafter defined) and (b) the return and tabulation of Ballots and Master Ballots (as hereinafter defined).

1.    **Definitions**

    **a.**    **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware.

    **b.**    **"Beneficial Owners"** means, as of the Voting Record Date, the beneficial owners of, as applicable, (i) the Voting Debt Securities (for whom a Master Ballot Agent provides services) or (ii) the Senior Subordinated Notes or the Interests in KAC or KACC (for whom a Nominee provides services).

    **c.**    **"Certified Plan Solicitation Directive"** means the directive, pursuant to which, among other things, each attorney representing one or more holders of Direct Channeled Personal Injury Claims will direct the Debtors and the Solicitation and Tabulation Agent as to the preferred method for the solicitation of votes on the Plan by such attorney's clients.

    **d.**    **"Channeled Personal Injury Claims"** means, collectively, Asbestos Personal Injury Claims, CTPV Personal Injury Claims, NIHL Personal Injury Claims and Silica Personal Injury Claims.

    **e.**    **"Confirmation Hearing"** means the hearing on the confirmation of the Plan, as such hearing may be adjourned from time to time.

    **f.**    **"Confirmation Objection Deadline"** means the date that is established by the Bankruptcy Court as the deadline for filing objections to confirmation of the Plan.

    **g.**    **"Debtors"** means, collectively, KAC, KACC, Akron Holding Corporation, Kaiser Aluminum & Chemical Investment, Inc., Kaiser Aluminium International, Inc., Kaiser Aluminum Properties, Inc., Kaiser Aluminum Technical Services, Inc., Kaiser Bellwood Corporation, Kaiser Micromill Holdings, LLC, Kaiser Texas Micromill Holdings, LLC, Kaiser Sierra Micromills, LLC, Kaiser Texas Sierra Micromills, LLC, Oxnard Forge Die Company, Inc., Alwis Leasing LLC, Kaiser Center, Inc., KAE Trading, Inc., Kaiser Aluminum & Chemical Investment Limited (Canada), Kaiser Aluminum & Chemical of Canada Limited (Canada), Kaiser Center Properties, Kaiser Export Company and Texada Mines Ltd. (Canada).

    **h.**    **"Direct Channeled Personal Injury Claims"** means Channeled Personal Injury Claims other than Indirect Channeled Personal Injury Claims.

    **i.**    **"Disclosure Statement"** means the disclosure statement in connection with the Plan, as approved by the Bankruptcy Court in the Disclosure Statement Order.

    **j.**    **"Disclosure Statement Hearing"** means the hearing ~~scheduled for~~**held on** September 1, 2005 at 9:00 a.m. at which the Bankruptcy Court ~~will consider~~**considered** approval of the Disclosure Statement.

    **k.**    **"Disclosure Statement Notice"** means the notice of the date, time and place of the Disclosure Statement Hearing and the deadline and procedures for filing objections to the Disclosure Statement.

l.  **"Disclosure Statement Order"** means the order of the Bankruptcy Court approving the Disclosure Statement and these Voting Procedures.

m.  **"Indenture Trustees"** means, collectively, the indenture trustees for the Voting Debt Securities and the Senior Subordinated Notes.

n.  **"Individual Record Holders"** means the holders of record of, as applicable, the Voting Debt Securities, the Senior Subordinated Notes or the Interests in KAC or KACC that, as of the Voting Record Date, hold such instruments in their own name (rather than in street name as a Master Ballot Agent or a Nominee for Beneficial Owners).

o.  **"KAC"** means Kaiser Aluminum Corporation.

p.  **"KACC"** means Kaiser Aluminum & Chemical Corporation.

q.  **"Master Ballot"** means a Ballot (i) submitted on behalf of one or more beneficial owners of Voting Debt Securities in accordance with the procedures set forth in section 7 of these Voting Procedures or (ii) submitted on behalf of one or more holders of Direct Channeled Personal Injury Claims pursuant to section 6 of the Voting Procedures.

r.  **"Master Ballot Agent Register"** means a list, as of the Voting Record Date, provided by an Indenture Trustee containing the names and addresses of the Master Ballot Agents and, for each Master Ballot Agent, the aggregate holdings in the applicable Voting Debt Security held by the Beneficial Owners for whom such Master Ballot Agent provides services.

s.  **"Master Ballot Agents"** means brokers, banks, dealers or other agents or nominees that hold Voting Debt Securities in "street name" on behalf of Beneficial Owners or otherwise represent such Beneficial Owners.

t.  **"Nominee Register"** means a list, as of the Voting Record Date, provided by, as applicable, the Transfer Agent or the Indenture Trustee of the Senior Subordinated Notes containing the names and addresses of the Nominees for, as applicable, the Interests in KAC and KACC or the Senior Subordinated Notes.

u.  **"Nominees"** means brokers, banks, dealers or other agents or nominees that hold, as applicable, Senior Subordinated Notes or Interests in KAC or KACC in "street name" on behalf of Beneficial Owners or otherwise represent such Beneficial Owners.

v.  **"Personal Injury Claims Solicitation Procedures Notice"** means the notice to be sent to all known attorneys representing holders of Direct Channeled Personal Injury Claims that, among other things, will (i) notify such attorneys of the process for soliciting votes on the Plan in respect of Direct Channeled Personal Injury Claims and (ii) request that, if they have not already done so, such attorneys complete and return to the Solicitation and Tabulation Agent the Certified Plan Solicitation Directive, pursuant to which such attorneys will notify the Debtors and the Solicitation and Tabulation Agent of the preferred method for soliciting the votes of the holders of Direct Channeled Personal Injury Claims.

w.  **"Plan"** means the Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, dated June 29, 2005, as it may be amended.

x.  **"Publication Notice"** means a published notice of (i) the approval of the Disclosure Statement and the scheduling of the Confirmation Hearing, (ii) the deadlines for voting on, and filing objections to confirmation of, the Plan and (iii) the procedure for holders of Claims to obtain a

2

Solicitation Package, in a form approved by the Bankruptcy Court in the Disclosure Statement Order.

**y.**  **"Record Amount"** means the amount shown on the records of the Indenture Trustees (as confirmed by the Record Holder Register and Master Ballot Agent Register) as of the Voting Record Date.

**z.**  **"Record Holder Register"** means a list provided by an Indenture Trustee or the Transfer Agent that contains the names, addresses and holdings of the Individual Record Holders for, as applicable, the Voting Debt Securities, the Senior Subordinated Notes or the Interests in KAC or KACC as of the Voting Record Date.

**aa.**  **"Rule 3018 Motion"** means a motion, pursuant to Bankruptcy Rule 3018(a), seeking an order temporarily allowing a Claim, solely for purposes of voting to accept or reject the Plan, in an amount or classification different from the amount of classification allowed in accordance with these Voting Procedures.

**bb.**  **"Solicitation Package"** means, and will consist of, all of the following:

    i.  A notice, substantially in the form approved by the Bankruptcy Court, setting forth, among other things, the time fixed for voting to accept or reject the Plan, the time fixed for filing objections to confirmation of the Plan, and the date and time of the Confirmation Hearing;

    ii.  A CD-ROM containing the Disclosure Statement (together with the exhibits thereto, including the Plan, that have been filed with the Court before the date of the mailing);

    iii.  For classes entitled to vote on the Plan, an appropriate form of Ballot, voting instructions and a Ballot-return envelope;

    iv.  Letters recommending acceptance of the Plan from the Debtors and, if applicable, the Creditors' Committee and the Asbestos Claimants' Committee;

    v.  Letters or other communications from attorneys representing holders of Direct Channeled Personal Injury Claims to their clients; and

    vi.  Any other materials authorized by the Bankruptcy Court to be included as part of the Solicitation Package.

**cc.**  **"Solicitation and Tabulation Agent"** means Logan & Company, Inc. or such other firm that may be retained by the Debtors to act as the solicitation and tabulation agent with respect to the Plan.

**dd.**  **"Transfer Agent"** means the transfer agent for the Interests in KAC or KACC.

**ee.**  **"Voting Deadline"** means the date that is established by the Bankruptcy Court as the deadline for the return of Ballots on the Plan.

**ff.**  **"Voting Debt Securities"** means, collectively, the 9-7/8% Senior Notes, the 10-7/8% Senior Notes, the 6-1/2% RPC Revenue Bonds, the 7-3/4% SWD Revenue Bonds and the 7.60% SWD Revenue Bonds.

**gg.**  **"Voting Record Date"** means the date set forth in the Disclosure Statement Order that will be used for purposes of determining which creditors and interest holders are entitled to receive Solicitation Packages and, where applicable, vote on the Plan.

Any capitalized term not otherwise defined herein shall have the meaning given to such term in the Plan.

## 2.    Publication Notice

The Debtors will, on a date not less than forty-five calendar days prior to the Confirmation Objection Deadline, cause the Publication Notice to be published once in the national editions of *USA Today*, *The Wall Street Journal* and *The New York Times*, once in ~~the newspaper supplements~~ *~~Parade~~* ~~magazine and USA Weekend~~ ~~magazine, once in~~ *The Bond Buyer* and once in the following regional newspapers:  *The Ascension Citizen* (Gonzales), *Baton Rouge Advocate*, *The Charleston Gazette*, *Coeur d'Alene Press* (ID), *The Daily Gleaner* (local Jamaican edition), ***The Houston Chronicle,*** *The L'Observateur* (La Place), *The London Free Press* (London, Ontario edition), *New Orleans Times Picayune*, *The News Examiner* (St. James), *Oakland Tribune*, *Parkersburg* *~~Times~~**News*, *San Francisco Chronicle*, *Seattle Times*, *Spokane Spokesman Review*, *St. Bernard News* (Chalmette), *St. Bernard Voice* (Chalmette) and *Tacoma News Tribune*.**[1]**  The Debtors will also cause the Publication Notice to be published once in the ~~monthly magazines~~ **weekly magazines** ***Time*** **and** ***Newsweek*** **and once in the newspaper supplements** *Parade* **magazine and** *USA Weekend* **magazine on a date not less than thirty calendar days prior to the Confirmation Objection Deadline.  The Debtors will also cause the Publication Notice to be published in** *American Legion, Field & Stream,* **and** *Popular Mechanics, ~~Reader's Digest~~* and *~~VFW Magazine~~* ~~on a date not less than thirty calendar days~~ **in the earliest possible editions** prior to the Confirmation Objection Deadline.

## 3.    Availability of Plan-Related Documents on the Internet

All Plan-related documents, including the Disclosure Statement, are or will be available via the Internet on the Bankruptcy Court's docket at www.deb.uscorts.gov, on the Debtors' website at www.kaiseraluminum.com and on the Solicitation and Tabulation Agent's website at www.loganandco.com.

## 4.    Distribution of Certain Documents on CD-ROM

The Solicitation Packages will include a CD-ROM containing the Disclosure Statement and the exhibits thereto, including the Plan, that have been filed with the Bankruptcy Court before the date of the mailing.  If service by CD-ROM imposes a hardship for any creditor (*e.g.*, the creditor does not own or have access to a computer or the Internet), such creditor may obtain a paper copy of the applicable documents by sending a request, **in writing**, to the Solicitation and Tabulation Agent, Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043 (Attn:  Kaiser Aluminum Voting Department).  Any such request must be received by the Solicitation and Tabulation Agent at least ten Business Days prior to the Voting Deadline. Upon receipt of such a written request, the Solicitation and Tabulation Agent will cause a paper copy of the applicable documents to be served on the requestor.  In addition, attorneys representing holders of Direct Channeled Personal Injury Claims may elect on the Certified Plan Solicitation Directive to obtain a paper copy for their clients or have the Solicitation and Tabulation Agent serve their clients with paper copies.

## 5.    Distribution of Solicitation Packages

### a.    Determination of Holders of Record

Except with respect to Direct Channeled Personal Injury Claims, the Solicitation and Tabulation Agent will cause a Solicitation Package to be served upon all holders of Claims against the Debtors and all holders of Interests in KAC or KACC as of the Voting Record Date, and the Debtors will have no obligation to cause a Solicitation Package to be served upon any subsequent

---

**[1]** **As a result of Hurricane Katrina, publication has been indefinitely suspended for the** *St. Bernard News* **(Chalmette) and** *St. Bernard Voice* **(Chalmette) (collectively, the "Suspended Newspapers").  The Reorganizing Debtors will cause the Publication Notice to be published in the Suspended Newspapers as soon as practicable after publication resumes.  To the extent that a Suspended Newspaper does not resume publication prior to December 31, 2005, however, the Reorganizing Debtors will not publish the Publication Notice in such Suspended Newspaper.**

holder of a Claim against the Debtors (as evidenced by any notice of assignment of such Claim entered on the Bankruptcy Court's docket or that becomes effective after the Voting Record Date or otherwise) or an Interest in KAC or KACC.

**b.**  Distribution of Solicitation Packages

**(i)**  Scheduled Claims

The Solicitation and Tabulation Agent will cause a Solicitation Package to be served upon all persons or entities listed in the Schedules as holding liquidated, noncontingent, undisputed claims as of the Voting Record Date.

**(ii)**  Filed Claims

The Solicitation and Tabulation Agent will cause a Solicitation Package to be served upon each person or entity that has filed a proof of claim against a Debtor, which claim has not been withdrawn, disallowed or expunged on or before the Voting Record Date, other than a proof of claim asserting (a) claims in respect of Voting Debt Securities or (b) Direct Channeled Personal Injury Claims, the holders of which will be served with a Solicitation Package according to the procedures set forth below. If the relevant proof of claim does not indicate the classification of the Claim, and such classification cannot be determined from the Schedules, such Claim shall be treated as an Unsecured Claim.

**(iii)**  Parties to Executory Contracts and Unexpired Leases

The Solicitation and Tabulation Agent will cause a Solicitation Package to be served on (A) each person or entity that is listed on the Schedules as a party to an executory contract or an unexpired lease with one or more of the Debtors, irrespective of whether, pursuant to section 365(a) of the Bankruptcy Code, such contract is, in fact, an "executory contract" or such lease is, in fact, an "unexpired lease," and (B) any other person or entity listed as a party to any contract listed on Exhibit 6.1.a of the Plan.

**(iv)**  Channeled Personal Injury Claims

The Solicitation and Tabulation Agent will cause Solicitation Packages to be served in connection with Channeled Personal Injury Claims in the manner described in section 6 hereof.

**(v)**  Claims in Respect of Voting Debt Securities and Senior Subordinated Notes and Interests in KAC or KACC

The Solicitation and Tabulation Agent will cause Solicitation Packages to be served in connection with (A) Claims under, or evidenced by, Voting Debt Securities or Senior Subordinated Notes and (B) Interests in KAC or KACC, in the manner described in section 7.a hereof.

**(vi)**  Other Parties

The Solicitation and Tabulation Agent will cause a Solicitation Package to be served upon the Securities and Exchange Commission, the Office of the United States Trustee for the District of Delaware, counsel to the Debtors' postpetition lenders, counsel to the Creditors' Committee, counsel to the Asbestos Claimants' Committee, counsel to the Future Asbestos Claimants' Representative, counsel to the Future Silica and CTPV Claimants' Representative, counsel to the Retirees' Committee and each party that filed a

5

notice of appearance with the Bankruptcy Court and has not withdrawn such notice of appearance as of the Voting Record Date.

**(vii)**   Distribution of Solicitation Packages to Undeliverable Addresses Not Required; Procedures for Returned Solicitation Packages

To the extent that Disclosure Statement Notices are returned by the United States Postal Service as undeliverable as a result of incomplete or inaccurate addresses, the Solicitation and Tabulation Agent will not mail Solicitation Packages to such addresses unless the Debtors or the Solicitation and Tabulation Agent are provided with accurate addresses for such entities, in writing, on or before the date of the Disclosure Statement Hearing. If a Solicitation Package is returned as undeliverable, the Solicitation and Tabulation Agent shall resend such Solicitation Package only once, provided that the United State Post Office has included a forwarding address at least five Business Days before the Voting Deadline.

**6.**   **Special Procedures Relating to Channeled Personal Injury Claims**

    **a.**   Procedures Relating to Indirect Channeled Personal Injury Claims

        **(i)**   Service on Holders of Indirect Channeled Personal Injury Claims

The Solicitation and Tabulation Agent will cause a Solicitation Package to be served upon each holder of an Indirect Channeled Personal Injury Claim that has not been withdrawn, disallowed or expunged on or before the Voting Record Date.

        **(ii)**   Tabulation of Votes

Each holder of an Indirect Channeled Personal Injury Claim will have a single vote in the amount, for voting purposes only, of $1.00.

    **b.**   Procedures Relating to Direct Channeled Personal Injury Claims

        **(i)**   Initial Distribution of Solicitation Packages and Mailing of Personal Injury Claims Solicitation Procedures Notice and Certified Plan Solicitation Directives.

As soon as practicable after entry of the Disclosure Statement Order, the Solicitation and Tabulation Agent will serve a Personal Injury Claims Solicitation Procedures Notice, a Certified Plan Solicitation Directive and one Solicitation Package that includes one Master Ballot for voting Direct Channeled Personal Injury Claims on all known attorneys representing holders of Direct Channeled Personal Injury Claims.

        **(ii)**   Certified Plan Solicitation Directive

            **(A)**   The Certified Plan Solicitation Directive must be returned by each attorney representing one or more holders of Direct Channeled Personal Injury Claims to the Solicitation and Tabulation Agent, Logan & Company, Inc., 546 Valley Road, Upper Montclair, New Jersey 07043 (Attn: Kaiser Aluminum Voting Department); fax: 973-509-1131.

            **(B)**   Attorneys representing one or more holders of Direct Channeled Personal Injury Claims must return a Certified Plan Solicitation Directive so it is actually received by the Solicitation and Tabulation Agent no later than the deadline set forth in the Personal Injury Claims Solicitation Procedures Notice, which will be approximately 20 days after the Solicitation and Tabulation Agent completes the

mailing of initial Solicitation Packages and Certified Plan Solicitation Directives to the attorneys representing holders of Direct Channeled Personal Injury Claims.

(C)   Pursuant to the Certified Plan Solicitation Directive, each attorney representing holders of Direct Channeled Personal Injury Claims will direct the Solicitation and Tabulation Agent to solicit votes on the Plan from his or her clients that hold Direct Channeled Personal Injury Claims (collectively, the "Clients"), according to one of the following procedures:

    (1)   <u>Master Ballot Solicitation Method.</u> If the attorney certifies that he or she has the authority under applicable bankruptcy and/or non-bankruptcy law to vote on behalf of the Clients, such attorney may inform the Solicitation and Tabulation Agent that no additional Solicitation Packages need to be served and that such attorney will submit a Master Ballot on which that attorney will record the votes on the Plan for each of the Clients. If the attorney elects this procedure, the attorney may also request that, for informational purposes, the Solicitation and Tabulation Agent serve Solicitation Packages (without a Ballot) on the Clients.

    (2)   <u>Direct Solicitation Method.</u> If the attorney does not have the authority to vote on behalf of the Clients or the attorney prefers to have the Clients cast their own votes on the Plan, the attorney may direct the Solicitation and Tabulation Agent to solicit votes on the Plan directly from the Clients. If the attorney selects this method: (I) the attorney must include an address for each Client on the list required pursuant to section 6.b(ii)(D) below and (II) the Solicitation and Tabulation Agent will cause a Solicitation Package, including an appropriate Ballot, to be served directly on each of the Clients.

    (3)   <u>Indirect Solicitation Method.</u> If the attorney does not have the authority to vote on behalf of the Clients or the attorney prefers to have the Clients cast their own votes on the Plan, the attorney may direct the Solicitation and Tabulation Agent to deliver the Solicitation Packages to the attorney, who will, in turn, deliver the Solicitation Packages to the Clients. If the attorney selects this method: (I) the Solicitation and Tabulation Agent will cause the requested number of Solicitation Packages, including appropriate Ballots, to be served on the attorney; (II) the attorney must deliver the Solicitation Packages to the Clients within ten days after receipt; and (III) the attorney must file an affidavit of service with the Bankruptcy Court, and send a copy of such affidavit to Logan, within five days of such service. The names and addresses of the Clients served, however, do not need to be listed on the affidavit of service. The affidavit of service only needs to state that service was completed, the date(s) that service was completed and that the attorney has provided or will provide the Solicitation and Tabulation Agent with the required lists of clients, as described in subsection (D) below.

    (4)   <u>Hybrid Solicitation Method.</u> If the attorney certifies that he or she has the authority under applicable bankruptcy and/or non-bankruptcy law to vote, and intends to exercise that authority, only for certain of the Clients (collectively, the "Master Ballot Clients"), the attorney may inform the Solicitation and Tabulation Agent that no additional Solicitation Packages need to be served and that such attorney will submit a Master Ballot on which that attorney will record the votes on

7

the Plan for the Master Ballot Clients. The attorney may also request that, for informational purposes, the Solicitation and Tabulation Agent serve Solicitation Packages (without a Ballot) on the Master Ballot Clients. With respect to the other Clients represented by such attorney (collectively, the "Individual Ballot Clients"), the attorney must elect the procedure under either the Direct Solicitation Method (subsection (2) above) or the Indirect Solicitation Method (subsection (3) above).

(5)    If an attorney certifies that her or she does not represent any holders of Direct Channeled Personal Injury Claims, such attorney may direct the Solicitation and Tabulation Agent to omit such attorney from the Reorganizing Debtors' solicitation of votes on the Plan and may request that he or she be removed from the service list in the above-captioned cases.

(D)    Lists of Clients

To facilitate the solicitation of votes on the Plan from the holders of Direct Channeled Personal Injury Claims, each attorney representing such holders should submit, as applicable, one or two lists of Clients to the Solicitation and Tabulation Agent, which lists are subject to the following requirements:

(1)    The list(s) must be in Excel™ or a comparable electronic format on either a 3.5" floppy disc or CD-ROM. If an attorney returning the Certified Plan Solicitation Directive either (a) certifies that he or she does not have access to Excel™ or a comparable application or (b) has fewer than 1,000 Clients, then such attorney may provide the list in hard copy. Attorneys may contact the Solicitation and Tabulation Agent, Logan & Company, Inc., at 973-509-3190 with any technical questions or to arrange for special delivery of the list of Clients.

(2)    The list(s) must contain the name and social security number for each of the Clients. If the attorney is returning his or her Client list as an Exhibit to a Master Ballot, such list must also indicate (1) whether each Client voted to accept or reject the Plan and (2) if the Clients hold Asbestos Personal Injury Claims, the appropriate Disease Category. If the attorney is requesting that the Solicitation and Tabulation Agent directly serve Solicitation Packages on some or all of the Clients, the list submitted for such Clients must also include an address for each of those Clients. If an attorney selects the solicitation method described in section 6.b(ii)(C)(4), the attorney must return two lists of Clients: one for the Master Ballot Clients and one for the Individual Ballot Clients.

(3)    Attorneys representing holders of Direct Channeled Personal Injury Claims are required to submit their lists of Clients as follows:

i.    List(s) of Clients must be submitted to the Solicitation and Tabulation Agent, Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043 (Attn: Kaiser Aluminum Voting Department).

ii.    If an attorney selects the Master Ballot Solicitation Method described in section 6.b(ii)(C)(1), the list of Clients must be

submitted as the exhibit to the Master Ballot on or before the Voting Deadline.

iii.    If an attorney selects the Direct Solicitation Method described in section 6.b(ii)(C)(2), the list of Clients (which must include addresses) must be submitted on or before the deadline set forth in the Personal Injury Claims Solicitation Procedures Notice, which will be approximately 20 days after the Solicitation and Tabulation Agent completes the mailing of initial Solicitation Packages and Certified Plan Directives to the attorneys representing holders of Direct Channeled Personal Injury Claims. To the extent that the list of Clients is not submitted by the deadline, the Debtors and the Solicitation and Tabulation Agent will distribute Solicitation Packages for the affected Clients as soon as practicable after the receipt of such list.

iv.    If an attorney selects the Indirect Solicitation Method described in section 6.b(ii)(C)(3), the list of Clients must be submitted on or before the deadline set forth in the Personal Injury Claims Solicitation Procedures Notice, which will be approximately 25 days before the Voting Deadline.

v.    If an attorney selects the Hybrid Solicitation Method described in section 6.b(ii)(C)(4), the list of Master Ballot Clients must be submitted as the exhibit to the Master Ballot on or before the Voting Deadline and the list of Individual Ballot Clients must be submitted on or before the applicable deadline set forth in the Personal Injury Claims Solicitation Procedures Notice, depending upon whether the Direct Solicitation Method or Indirect Solicitation Method is elected.

**(iii)**    Distribution of Solicitation Packages Pursuant to Certified Plan Solicitation Directives

(A)    The Solicitation and Tabulation Agent will serve the Solicitation Packages in accordance with the instructions set forth on the Certified Plan Solicitation Directives within seven days after receipt thereof. If a directive instructs the Solicitation and Tabulation Agent to serve the Solicitation Packages directly on the attorney's Clients, the seven-day period will not begin until the Solicitation and Tabulation Agent receives the list of Clients required in section 6.b(ii)(D).

(B)    An attorney electing to vote his or her clients' Direct Channeled Personal Injury Claims on a Master Ballot may, via the Certified Plan Solicitation Directive, request that the Solicitation and Tabulation Agent serve non-voting Solicitation Packages on such attorney's Clients for informational purposes only.

(C)    An attorney representing holders of Direct Channeled Personal Injury Claims may elect to include a letter or other communication from the attorney to his or her Clients with the Solicitation Packages. If the Solicitation and Tabulation Agent is to serve Solicitation Packages (either for voting or for informational purposes) directly on an attorney's Clients, such attorney must so notify the Solicitation and Tabulation Agent via the Certified Plan Solicitation Directive if the attorney desires to include a letter or other communication and provide the

letter or other communication to the Solicitation and Tabulation Agent on or before the deadline for submitting the Certified Plan Solicitation Directives.

(D)    If an attorney chooses to transmit the Solicitation Packages to the Clients directly:

(1)    The attorney must serve the Solicitation Packages on his or her Clients within ten days after receipt of such packages and, within five days thereafter, file an affidavit of service with the Bankruptcy Court and provide a copy of such affidavit to the Solicitation and Tabulation Agent. The affidavit of service does not need to list the names and addresses of the Clients served, but should state that service was completed, the date(s) service was completed and that, for the Clients served, the attorney has provided or will provide the Solicitation and Tabulation Agent with the required list of Clients.

(2)    The Debtors will reimburse such attorney for the actual postage incurred by the attorney in transmitting such Solicitation Packages by regular, first-class mail. Attorneys seeking reimbursement shall submit reasonable evidence of postage expenses incurred in order to obtain such reimbursement.

(E)    *Solicitation Packages will not be served upon the individual holders of Direct Channeled Personal Injury Claims, except to the extent: (i) an individual holder of a Direct Channeled Personal Injury Claim requests a Solicitation Package; (ii) a proof of claim in respect of a Direct Channeled Personal Injury Claim is signed and filed by an individual holder of such Claim prior to the Voting Record Date and such proof of claim does not list counsel for the claimant; or (iii) an attorney requests service on the individual holders of Direct Channeled Personal Injury Claims by indicating such on the Certified Plan Solicitation Directive in accordance with section 6(b)(ii).*

**(iv)**    Completion and Return of Master Ballots by Attorneys for Holders of Direct Channeled Personal Injury Claims

Attorneys who represent individual holders of Direct Channeled Personal Injury Claims shall be permitted to cast Ballots for such holders, but only to the extent that those attorneys (i) have the authority under applicable bankruptcy and/or non-bankruptcy law to do so and (ii) indicate such on the Certified Plan Solicitation Directive returned to the Solicitation and Tabulation Agent. Each attorney voting on behalf of individual holders of Direct Channeled Personal Injury Claims shall complete a Master Ballot, which will set forth the votes cast by such attorney on behalf of any such clients. The following procedures will govern the completion and return of a Master Ballot:

(A)    Summarizing Votes on the Master Ballot

Each attorney completing a Master Ballot must indicate one of the following: (A) all of the Clients listed on the exhibit described below voted to accept the Plan; (B) all of the Clients listed on the exhibit reject the Plan; or (C) some of the Clients voted to accept the Plan, while other of the Clients voted to reject the Plan. For Master Ballots completed in respect of Asbestos Personal Injury Claims, the attorneys completing such ballots must also summarize the votes cast by the Clients listed on the exhibit, according to such Clients' Disease Category.

(B)    Exhibit to the Master Ballot

(1)    Each attorney shall prepare an exhibit to the Master Ballot that lists the name, the social security number and, for votes cast in respect of Asbestos Personal Injury Claims, the Disease Category for each Client on whose behalf the attorney is submitting a vote and indicates whether each Client voted to accept or reject the Plan.

(2)    The exhibit must be in Excel™ or a comparable electronic format on either a 3.5" floppy disc or CD-ROM.  If the attorney completing the Master Ballot has less than 1,000 Client or certifies that he or she does not have access to Excel™ or a comparable application, then such attorney may provide the exhibit to the Master Ballot in hard copy.

(3)    The exhibit and the completed Master Ballot must be submitted to the Solicitation and Tabulation Agent in accordance with section 8 of these Voting Procedures.

(C)    Certification by Attorney of Authority to Vote

(1)    The Master Ballot will contain certain certifications, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the attorney preparing and signing the Master Ballot has the authority, under applicable bankruptcy and/or non-bankruptcy law, to cast a Ballot on the Plan on behalf of the holders of each of the Direct Channeled Personal Injury Claims listed on the exhibit to the Master Ballot.

(2)    For Master Ballots completed on behalf of holders of Asbestos Personal Injury Claims, the Master Ballot will also contain certifications, under penalty of perjury pursuant to 28 U.S.C. § 1746, that (a) each of the individuals set forth on the Exhibit to the Master Ballot has been exposed to an asbestos-containing product and (b) the disease category for each individual as set forth on the Exhibit to the Master Ballot is true and correct based on medical records or similar documentation in such individual's file.

(3)    If the attorney is unable to make the above certifications on behalf of any Client, the attorney may not cast a vote on behalf of such Client. Such attorney must, via the Certified Plan Solicitation Directive in accordance with the section 6.b(ii) above, select either the Direct Solicitation Method described in section 6.b(ii)(C)(2) or the Indirect Solicitation Method described in section 6.b(ii)(C)(3) with respect to the attorney's affected Clients.

(v)    Tabulation of Votes with Respect to Asbestos Personal Injury Claims

(A)    Each holder of an Asbestos Personal Injury Claim will have a single vote in the amount, for voting purposes only, that corresponds to such holder's Disease Category, as indicated on a Ballot cast by such holder or on a Master Ballot cast on behalf of such holder by his or her attorney.

(B)    The Disease Categories applicable to Asbestos Personal Injury Claims, along with the corresponding medical and exposure criteria and the allowed amount for such Claims for voting purposes, are as follows:

(1)    *Other Asbestos Disease (Level I).*  Requires: (1) Diagnosis of a
Bilateral Asbestos-Related Nonmalignant Disease* or an asbestos-
related malignancy other than mesothelioma; and (2) Kaiser Exposure*
prior to December 31, 1982. Claim amount for voting purposes only:
$200.

(2)    *Asbestosis/Pleural Disease (Level II).*  Requires: (1) Diagnosis of a
Bilateral Asbestos-Related Nonmalignant Disease; (2) six months'
Kaiser Exposure prior to December 31, 1982; and (3) five years
cumulative occupational exposure to asbestos. Claim amount for voting
purposes only:  $700.

(3)    *Asbestosis/Pleural Disease (Level III).*  Requires: (1) Diagnosis of
Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less
than 80% or (b) FVC less than 80% and FEV1/FVC ratio greater than
or equal to 65%; (2) six months' Kaiser Exposure prior to December 31,
1982; (3) Significant Occupational Exposure* to asbestos; and (4)
supporting medical documentation establishing asbestos exposure as a
contributing factor in causing the pulmonary disease in question. Claim
amount for voting purposes only:  $4,850.

(4)    *Severe Asbestosis (Level IV).*  Requires: (1) Diagnosis of asbestosis
with ILO of 2/1 or greater, or asbestosis determined by pathological
evidence of asbestos, plus (a) TLC less than 65% or (b) FVC less than
65% and FEV1/FVC ratio greater than 65%; (2) six months' Kaiser
Exposure prior to December 31, 1982; (3) Significant Occupational
Exposure to asbestos; and (4) supporting medical documentation
establishing asbestos exposure as a contributing factor in causing the
pulmonary disease in question. Claim amount for voting purposes only:
$20,750.

(5)    *Other Cancer (Level V).*  Requires: (1) Diagnosis of a primary
colorectal, laryngeal, esophageal, pharyngeal or stomach cancer, plus
evidence of an underlying Bilateral Asbestos-Related Nonmalignant
Disease; (2) six months' Kaiser Exposure prior to December 31, 1982;
(3) Significant Occupational Exposure to asbestos; and (4) supporting
medical documentation establishing asbestos exposure as a contributing
factor in causing the other cancer in question. Claim amount for voting
purposes only:  $13,800.

(6)    *Lung Cancer 2 (Level VI).*  Requires: (1) Diagnosis of a primary lung
cancer; (2) Kaiser Exposure prior to December 31, 1982; and (3)
supporting medical documentation establishing asbestos exposure as a
contributing factor in causing the lung cancer in question. Claim
amount for voting purposes only: ~~None.~~ **$7,000.**

(7)    *Lung Cancer 1 (Level VII).*  Requires: (1) Diagnosis of a primary lung
cancer plus evidence of an underlying Bilateral Asbestos-Related
Nonmalignant Disease; (2) six months' Kaiser Exposure prior to
December 31, 1982; (3) Significant Occupational Exposure to asbestos;
and (4) supporting medical documentation establishing asbestos

---

* As such capitalized terms are defined in the Voting Information and Instructions for Completing the Ballot
accompanying the ballots to be used for submitting votes in respect of Asbestos Personal Injury Claims.

exposure as a contributing factor in causing the lung cancer in question. Claim amount for voting purposes only: $27,500.

(8)  *Mesothelioma (Level VIII).* Requires: (1) Diagnosis of mesothelioma; and (2) credible evidence of Kaiser Exposure. Claim amount for voting purposes only: $70,000.

(C)  For purposes of computing votes, each holder of an Asbestos Personal Injury Claim shall be deemed to have voted the full amount of such Asbestos Personal Injury Claim according to the disease category specified for such Claim.

(D)  The temporary allowance of Asbestos Personal Injury Claims in the amount corresponding to the Disease Category designated by, or on behalf of, the holders of such Claims is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution under the Asbestos PI Trust and is without prejudice to the rights of the holders of Asbestos Personal Injury Claims or the Debtors and the Asbestos PI Trust in any other context.

(E)  If no disease category is selected for an Asbestos Personal Injury Claim, the Voting Agent shall treat the vote cast in respect of such Claim as Other Asbestos Disease (Level I).

(F)  If more than one disease category is selected for any Asbestos Personal Injury Claim, the Voting Agent shall count the vote cast in respect of such Claim in the amount corresponding to the disease category with the highest allowed amount.

(G)  Multiple Master Ballots may be completed and delivered to the Solicitation and Tabulation Agent. Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest dated Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s), rather than supersede(s), earlier Master Ballot(s), the attorney submitting such Master Ballot should mark the subsequent Master Ballot(s) as "Supplement" and clearly mark which of those votes reflected thereon are additional votes.

(H)  If two or more Master Ballots are received from separate counsel, each of whom purports to represent the same holder of an Asbestos Personal Injury Claim, the vote by such holder will be counted only once, and only if such votes are consistent. In the event that the votes are not consistent, none of the votes will be counted.

(vi)  Tabulation of Votes with Respect to CTPV, NIHL and Silica Personal Injury Claims

(A)  Each holder of a CTPV, NIHL or Silica Personal Injury Claim will have a single vote in the amount, for voting purposes only, of $1.00.

(B)  The temporary allowance of CTPV, NIHL and Silica Personal Injury Claims in the amount of $1.00 is solely for voting purposes and does not constitute an allowance of such Claims for purposes of distribution under, as applicable, the CTPV PI Trust, the NIHL PI Trust or the Silica PI Trust and is without prejudice to the rights of the holders of CTPV, NIHL or Silica Personal Injury Claims or

the Debtors, the CTPV PI Trust, the NIHL PI Trust and the Silica PI Trust in any other context.

(C)    Multiple Master Ballots may be completed and delivered to the Solicitation and Tabulation Agent. Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest dated Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s), rather than supersede(s), earlier Master Ballot(s), the attorney submitting such Master Ballot should mark the subsequent Master Ballot(s) as "Supplement" and clearly mark which of those votes reflected thereon are additional votes.

(D)    If two or more Master Ballots are received from separate counsel, each of whom purports to represent the same holder of a CTPV, NIHL or Silica Personal Injury Claim, the vote by such holder will be counted only once, and only if such votes are consistent. In the event that the votes are not consistent, none of the votes will be counted.

7.    **Special Procedures Relating to Claims in Respect of Voting Debt Securities and Senior Subordinated Notes and Interests in KAC and KACC**

a.    Distribution of Solicitation Packages and Return of Ballots

For voting on Claims in respect of Voting Debt Securities and distribution of non-voting Solicitation Packages to holders of Senior Subordinated Notes and Interests in KAC and KACC, the Solicitation and Tabulation Agent will cause a Solicitation Package or Packages to be mailed by first class mail, postage prepaid, to each Individual Record Holder and each Nominee or Master Ballot Agent for distribution to Beneficial Owners, in the manner described below.

(i)    Lists of Individual Record Holders, Nominees and Master Ballot Agents

Pursuant to Bankruptcy Rules 1007(i) and 3017(e), to facilitate the transmittal of Solicitation Packages to Individual Record Holders and Beneficial Owners of Voting Debt Securities, Senior Subordinated Notes and Interests in KAC or KACC, the respective Indenture Trustee or the Transfer Agent will be required to provide the following documents to the Debtors or the Solicitation and Tabulation Agent within three Business Days after the Voting Record Date: (i) a Record Holder Register in appropriate electronic or other format agreed to by the Debtors; and (ii) a Nominee Register or a Master Ballot Agent Register, as applicable, in appropriate electronic or other format agreed to by the Debtors.

(ii)    Procedures for Solicitation of Votes from Individual Record Holders and Beneficial Owners of Voting Debt Securities

(A)    Procedures for Individual Record Holders of Voting Debt Securities

The Solicitation and Tabulation Agent will send directly to each Individual Record Holder a Solicitation Package containing an appropriate Ballot, and such Ballot must be completed and returned to the Solicitation and Tabulation Agent so that it is received prior to the Voting Deadline in accordance with the procedures for the Return of Ballots set forth below.

(B)     Procedures for Beneficial Holders of Voting Debt Securities

(1)     Upon receipt of the Master Ballot Agent Register, the Solicitation and Tabulation Agent will (i) contact each Master Ballot Agent to determine the number of Solicitation Packages needed by the Master Ballot Agent for distribution to the applicable Beneficial Owners for whom the Master Ballot Agent performs services and (ii) deliver to each Master Ballot Agent a Master Ballot and the requisite number of Solicitation Packages with appropriate Ballots on which the Beneficial Owners may vote their Claims.

(2)     The Master Ballot Agents will be required to distribute the Solicitation Packages as promptly as possible to the Beneficial Owners for whom the Master Ballot Agents provide services. In particular, to obtain the votes of the Beneficial Owners, the Master Ballot Agents will include, as part of each Solicitation Package sent to a Beneficial Owner, an appropriate Ballot and a return envelope provided by, and addressed to, the Master Ballot Agent. The Beneficial Owners then must return the Ballots to the Master Ballot Agent in the manner and by the deadline set forth in the instructions accompanying such Ballots. The deadline for Beneficial Owners to return their Ballots to the applicable Master Ballot Agent will be two Business Days prior to the Voting Deadline to allow the Master Ballot Agents sufficient time to complete their Master Ballots and return them to the Solicitation and Tabulation Agent prior to the Voting Deadline. Upon receipt of the completed Ballots from the Beneficial Owners, the Master Ballot Agent will summarize the votes of its respective Beneficial Owners on a Master Ballot in accordance with the procedures set forth below and the instructions attached to the Master Ballot. The Master Ballot Agent must return the Master Ballot to the Solicitation and Tabulation Agent so that it is received prior to the Voting Deadline in accordance with the procedures for the Return of Ballots set forth below.

(C)     Procedures for Holders of 6-1/2% RPC Revenue Bonds in Bearer Form (*i.e.*, not registered in the holders' name with the ~~Indenture Trustee~~**Registrar and Paying Agent** for the 6-1/2% RPC Revenue Bonds)

(1)     If any holder of 6-1/2% RPC Revenue Bonds not registered in the holders' name with the ~~Indenture Trustee~~**Registrar and Paying Agent** for the 6-1/2% RPC Revenue Bonds wishes to cast a vote on the Plan, such holder must contact ~~the Indenture Trustee for the 6-1/2% RPC Revenue Bonds or~~ the Solicitation and Tabulation Agent to obtain a Solicitation Package and an appropriate Ballot. The Publication Notice will include a paragraph directed at such holders and notifying them of this requirement.

(2)     Each Ballot submitted by a holder of 6-1/2% RPC Revenue Bonds not registered in the holders' name with the ~~Indenture Trustee~~**Registrar and Paying Agent** for the 6-1/2% RPC Revenue Bonds must be accompanied by one of the following: (a) a certificate or affidavit in a form satisfactory to the Debtors and the ~~Indenture Trustee for the 6-1/2% RPC Revenue Bonds~~**Solicitation and Tabulation Agent** that has been executed, as depositary, by any trust company, bank, or other depositary, indicating the serial number of the bond(s) held by the holder and the amount of such bond(s) and stating that, as of the date

that the Ballot was executed, the holder held the bond(s) covered by the certificate; or (b) a copy of the front and back of the bond(s) held by such holder.

**(iii)** Procedures for Distribution of Solicitation Packages to Individual Record Holders and Beneficial Owners of Senior Subordinated Notes or Interests in KAC or KACC

    (A)    Solicitation Packages Will Not Contain Ballots

Because neither holders of Senior Subordinated Notes nor holders of Interests in KAC or KACC will receive anything under the Plan, such holders are deemed to have rejected the Plan, pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, Solicitation Packages that are distributed to holders of Senior Subordinated Notes and holders of Interests in KAC or KACC will not include Ballots.

    (B)    Procedures for Individual Record Holders of Senior Subordinated Notes or Interests in KAC or KACC

The Solicitation and Tabulation Agent will send a Solicitation Package directly to each Individual Record Holder of Senior Subordinated Notes and each Individual Record Holder of Interests in KAC or KACC.

    (C)    Procedures for Beneficial Holders of Senior Subordinated Notes or Interests in KAC or KACC

Upon receipt of the Nominee Register, the Solicitation and Tabulation Agent will (i) contact each Nominee to determine the number of Solicitation Packages needed by the Nominee for distribution to the applicable Beneficial Owners for whom the Nominee performs services and (ii) deliver to each Nominee the requisite number of Solicitation Packages for distribution as promptly as possible to the Beneficial Owners.

**b.**    Tabulation of Votes to Accept or Reject the Plan in Connection with Voting Debt Securities

With respect to the tabulation of Ballots cast by Individual Record Holders and Beneficial Owners of the Voting Debt Securities, the following procedures will apply:

**(i)**    All Master Ballot Agents will be required to retain the Ballots cast by their respective Beneficial Owners for inspection for a period of one year following the Voting Deadline.

**(ii)**    The Solicitation and Tabulation Agent will compare (A) the votes cast by Individual Record Holders and Beneficial Owners to (B) the Record Holder Register and the Master Ballot Agent Register, respectively. Votes submitted by an Individual Record Holder will not be counted in excess of the record position in the applicable Voting Debt Security for that particular Individual Record Holder, as identified on the Record Holder Register. Votes submitted by a Master Ballot Agent on a Master Ballot will not be counted in excess of the aggregate position in the applicable Voting Debt Security of the Beneficial Owners for whom the Master Ballot Agent provides services, as identified in the Master Ballot Agent Register. The submission of a Master Ballot or a Ballot by an Individual Record Holder that reflects an aggregate amount of voting claims that exceeds the record position, as identified on the Record Holder Register or the aggregate position identified on the Master Ballot Agent Register, respectively, is referred to herein as an "overvote."

**(iii)**    To the extent that a Ballot submitted by an Individual Record Holder contains an overvote or otherwise conflicts with the Record Holder Register, the Solicitation and Tabulation Agent will tabulate the Individual Record Holder's vote to accept or reject the Plan based upon the information contained in the Record Holder Register.

**(iv)**    To the extent that a Master Ballot contains an overvote or votes that otherwise conflict with the Master Ballot Agent Register, the Solicitation and Tabulation Agent will attempt to resolve the overvote or conflicting vote prior to the Voting Deadline.

**(v)**    To the extent that an overvote or a conflicting vote on a Master Ballot is not reconciled prior to the Voting Deadline, the Solicitation and Tabulation Agent (A) will calculate the respective percentage of the total stated amount of the Master Ballot voted by each respective Beneficial Owner, (B) will multiply such percentage for each Beneficial Owner by the amount of aggregate holdings for the applicable Master Ballot Agent identified on the Master Ballot Agent Register and (C) will tabulate votes to accept or reject the Plan based on the result of this calculation. The Debtors reserve the right to challenge the appropriateness of this calculation in any given case by seeking a determination of the Court within three Business Days after the final voting results are certified by the Solicitation and Tabulation Agent.

**(vi)**    A single Master Ballot Agent may complete and deliver to the Solicitation and Tabulation Agent multiple Master Ballots summarizing the votes of Beneficial Owners of each Voting Debt Security. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest dated Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot.

**(vii)**    The tabulation of votes by the Individual Record Holders and the Beneficial Owners of Voting Debt Securities will also be subject to the General Tabulation Rules set forth below.

**c.**    Reimbursement of Expenses

The Debtors will serve a copy of the Disclosure Statement Order, including a copy of these Voting Procedures, on (i) the Indenture Trustees; (ii) the Transfer Agent; (iii) each known entity that is serving as a Master Ballot Agent with respect to Voting Debt Securities; (iv) each known entity that is serving as a Nominee with respect to Senior Subordinated Notes or Interests in KAC or KACC; and (v) ADP Proxy Services, which is an intermediary that processes voting materials for many brokerage firms and banks. Upon written request, the Debtors will reimburse such entities (or their agents) in accordance with customary procedures for their reasonable, actual and necessary out-of-pocket expenses incurred in performing the tasks described above. No other fees, commissions or other remuneration will be payable to any Master Ballot Agent (or their agents or intermediaries) in connection with the distribution of Solicitation Packages to Beneficial Owners or the completion of Master Ballots.

**8.    Return of Ballots**

**a.**    Authority to Complete and Execute Ballots

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or any other entity acting in a fiduciary or representative capacity, such person must indicate such capacity when signing. The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed, but each such signatory shall certify, by executing the Ballot,

that he or she has such authority and shall provide evidence of such authority upon request of the Solicitation and Tabulation Agent.

**b.**      Method for Transmitting, and Place to Send, Completed Ballots

Except for Ballots voted by Beneficial Owners of Voting Debt Securities, which should be returned to the applicable Master Ballot Agent, all Ballots should be returned by mail, overnight or hand-delivery service to the Debtors' Solicitation and Tabulation Agent, **Logan & Company, Inc., Attn: Kaiser Aluminum Voting Department, 546 Valley Road, Upper Montclair, New Jersey 07043**. The Solicitation and Tabulation Agent will **not** accept Ballots submitted by facsimile or electronic transmission. Notwithstanding the preceding sentence, Master Ballots for Voting Debt Securities may be submitted by facsimile, provided that the original Master Ballots are transmitted to the Solicitation and Tabulation Agent within two Business Days after the Voting Deadline.

**c.**      Deadline for Receiving Completed Ballots

All Ballots must be *actually received* by the Solicitation and Tabulation Agent by 5:00 p.m., Eastern Time on the Voting Deadline. The Solicitation and Tabulation Agent will date and time-stamp all Ballots when received. In addition, the Solicitation and Tabulation Agent will make a photocopy of all Ballots received and will retain a copy of all Ballots for a period of one year after the Effective Date of the Plan, unless otherwise instructed by the Debtors in writing or otherwise ordered by the Bankruptcy Court.

**9.**      **Tabulation of Ballots**

**a.**      Claimants That Are Entitled to Vote

Except as otherwise provided in section 9.b, each claimant that holds a Claim in Subclass 9B or Classes 2, 4, 5, 6, 7 or 8 under the Plan is entitled to vote to accept or reject the Plan. Holders of Claims or Interests in Subclass 9A or Classes 1, 3, 10, 11, 12, 13, 14 or 15 under the Plan or whose Claims are deemed temporarily disallowed pursuant to section 9.b are not entitled to vote to accept or reject the Plan. The assignee of a transferred and assigned Claim (whether a filed or scheduled Claim) shall be permitted to vote such Claim *only* if the transfer and assignment has been noted on the Bankruptcy Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Voting Record Date.

**b.**      General Tabulation Rules

**(i)**      Temporary Allowance of Claims for Voting Purposes

Solely for purposes of voting to accept or reject the Plan — and not for the purpose of the allowance of, or distribution on account of, a claim and without prejudice to the rights of the Debtors in any other context — the Debtors propose that each claim within a class of claims entitled to vote to accept or reject the Plan be temporarily allowed in accordance with the following rules:

(A)      Unless otherwise provided in these tabulation rules, a Claim will be deemed temporarily allowed for voting purposes in an amount equal to the amount of such Claim as set forth in a timely filed proof of claim;

(B)      if a Claim is deemed allowed in accordance with the Plan, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;

(C) if a Claim for which a proof of claim has been timely filed is marked as contingent, unliquidated or disputed on its face, either in whole or in part, such claim will be temporarily allowed for voting purposes in an amount equal to (a) the amount marked on the claim as noncontingent, liquidated and undisputed or (b) if no such amount is clearly marked, $1.00;

(D) if a Claim for which a proof of claim has been timely filed is marked as a priority Claim, either in whole or in part, but is listed in the Schedules as a nonpriority Claim or as a priority Claim only in part, such Claim will be temporarily allowed for voting purposes as a nonpriority Claim in an amount equal to the lesser of (i) the entire amount of such Claim as set forth in the proof of claim or (ii) the nonpriority Claim set forth in the Schedules, provided that such Claim is not marked on the proof of claim as contingent, unliquidated or disputed;

(E) if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

(F) if a Claim is listed in the Schedules as contingent, unliquidated or disputed, and a proof of claim was not timely filed, such Claim will be disallowed for voting purposes;

(G) if the Debtors have filed and served an objection to a Claim at least 30 days before the Voting Deadline, such Claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection, unless such Claim is estimated or otherwise allowed for voting purposes by order of the Court prior to the Voting Deadline;

(H) Channeled Personal Injury Claims will be temporarily allowed for voting purposes in accordance with the procedures set forth in, as applicable, section 6.a(ii), 6.b(v) or 6.b(vi);

(I) with respect to Claims asserted by holders of Voting Debt Securities, the amounts of such Claims for voting purposes will be the lesser of (i) the amounts provided to the Debtors by the corresponding Indenture Trustee on the Record Holder Register or the Master Ballot Agent Register, as applicable, or (ii) the amounts identified by an Individual Record Holder on an appropriate Ballot or by a Master Ballot Agent on a Master Ballot, in each case calculated in accordance with the terms of section 7.b above; and

(J) if a Claim holder identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with these tabulation rules, the Debtors reserve the right to request that the Bankruptcy Court temporarily allow the Claim for voting purposes in the lesser amount identified on such Ballot.

(ii) Additional Rules for the Tabulation of Ballots

(A) Only Ballots cast by claimants that are entitled to vote, pursuant to section 9.a of these Voting Procedures, will be counted as votes to accept or votes to reject the Plan.

(B) Only those Ballots that are *actually received* by the Solicitation and Tabulation Agent in the manner set forth in section 8.b by the Voting Deadline will be counted as votes to accept or reject the Plan.

(C)    Any Ballot that (i) is incomplete (including, without limitation, a Master Ballot with respect to a Direct Channeled Personal Injury Claim on which the attorney fails to make the required certification or fails to include the required exhibit), (ii) is unsigned, (iii) is illegible or (iv) contains insufficient information to identify the claimant, will not be counted as a vote to accept or reject the Plan.

(D)    Any Ballot that is properly completed, executed and timely returned to the Solicitation and Tabulation Agent but does not indicate an acceptance or rejection of the Plan will not be counted as either a vote to accept or a vote to reject the Plan;

(E)    Creditors will be required to vote all of their claims within a particular class under the Plan either to accept or reject the Plan and may not split their votes; thus, a Ballot (or a group of Ballots within a Plan class received from a single creditor) that partially rejects and partially accepts the Plan will not be counted;

(F)    If a creditor casts more than one Ballot voting the same claim before the Voting Deadline, the last-dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus will supersede any prior Ballots;

(G)    If multiple Ballots are received from different holders purporting to hold the same Claim, in the absence of contrary information establishing which claimant held such Claim as of the Voting Deadline or, in the case of Voting Debt Securities, the Voting Record Date, the latest-dated Ballot that is received prior to the Voting Deadline will be the Ballot that is counted;

(H)    If multiple Ballots are received from a holder of a Claim and someone purporting to be such holder's attorney or agent, the Ballot received from the holder of the Claim will be the Ballot that is counted, and the vote of the purported attorney or agent will not be counted; and

(I)    The tabulation of Ballots in connection with Claims in respect of Voting Debt Securities are also subject to the special provisions for such Claims set forth in section 7 above.

(iii)    Additional Procedures and Standard Assumptions

(A)    The Solicitation and Tabulation Agent, in its discretion, may contact voters to cure any defects in the Ballots or Master Ballots.

(B)    Any voter that delivers a valid Ballot or Master Ballot may withdraw such Ballot or Master Ballot by delivering a written notice of withdrawal to the Solicitation and Tabulation Agent before the Voting Deadline. To be valid, the notice of withdrawal must (I) be signed by the party who signed the Ballot or Master Ballot to be revoked and (II) be received by the Solicitation and Tabulation Agent before the Voting Deadline. The Debtors may contest the validity of any withdrawals.

(C)    There shall be a rebuttable presumption that any claimant who submits a properly completed superseding Ballot or withdrawal of Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan.

(D)    If any claimant seeks to challenge the allowance of its Claim for voting purposes in accordance with the tabulation rules, such claimant must file a Rule 3018 Motion and serve such motion on the Debtors so that it is received on or before the deadline set forth in the Disclosure Statement Order, which will be approximately 14 days before the Voting Deadline.  In accordance with Bankruptcy Rule 3018, any Ballot submitted by a creditor that files a Rule 3018 Motion will be counted solely in accordance with these Voting Procedures unless and until the underlying Claim is temporarily allowed by the Court for voting purposes in a different amount, after notice and a hearing.