## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Jointly Administered Under** |
| **KAISER ALUMINUM CORPORATION, a** | : | **Bankruptcy Case No. 02-10429 (JKF)** |
| Delaware corporation, <u>et al.</u> | : | **Chapter 11** |
| | : | |

| | | |
|---|---|---|
| **KAISER ALUMINUM CORPORATION, <u>et al.</u>** | : | **Case No. 06-mc-41 (JJF)** |

| | | |
|---|---|---|
| **TIG INSURANCE COMPANY,** | : | |
| | : | |
| **Appellants,** | : | |
| | : | |
| | : | **Case No. 06-cv-171 (UNA)** |
| vs. | : | |
| | : | |
| | : | |
| **KAISER ALUMINUM CORPORATION, <u>et al.</u>,** | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION, REORGANIZING** | : | |
| **DEBTORS, OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS CLAIMANTS,** | : | |
| **RETIREES' COMMITTEE, MARTIN J.** | : | |
| **MURPHY, and ANNE M. FERAZZI,** | : | |
| **Appellees.** | : | |

| | | |
|---|---|---|
| **COLUMBIA CASUALTY INSURANCE** | : | |
| **COMPANY, TRANSCONTINENTAL** | : | |
| **INSURANCE COMPANY, HARBOR** | : | |
| **INSURANCE COMPANY and** | : | |
| **CONTINENTAL INSURANCE COMPANY,** | : | |
| | : | |
| | : | |
| **Appellants,** | : | |
| vs. | : | **Case No. 06-cv-172 (UNA)** |
| | : | |
| **KAISER ALUMINUM CORPORATION, <u>et al.</u>,** | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION, REORGANIZING** | : | |
| **DEBTORS, OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS CLAIMANTS,** | : | |
| **RETIREES' COMMITTEE, MARTIN J.** | : | |
| **MURPHY, and ANNE M. FERAZZI,** | : | |
| **Appellees.** | : | |

REPUBLIC INDEMNITY COMPANY,

     Appellant,

vs.

                         Case No. 06-cv-173 (UNA)

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, FUTURE SILICA
CLAIMANTS REPRESENTATIVE and
OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

     Appellees.

---

ACE PROPERTY & CASUALTY COMPANY
(formerly known as Cigna Property & Casualty
Company formerly known as Aetna Insurance
Company), CENTRAL NATIONAL
INSURANCE COMPANY OF OMAHA,
CENTURY INDEMNITY COMPANY,
INDUSTRIAL INDEMNITY COMPANY,
INDUSTRIAL UNDERWRITERS
INSURANCE COMPANY and PACIFIC
EMPLOYERS INSURANCE COMPANY,

     Appellants,

vs.                      Case No. 06-cv-174 (UNA)

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, ANNE M. FERAZZI
and OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

     Appellees.

---

DLI-5985848v5

TRANSPORT INSURANCE COMPANY (f/k/a
Transport Indemnity Company),

      Appellant,

vs.

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, ANNE M. FERAZZI
and OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

      Appellees.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 06-cv-175 (UNA)

DUNCAN J. McNEIL, III,
Pro Se,

      Appellant,

vs.

KAISER ALUMINUM CORPORATION, et al.,

      Appellees.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 06-cv-178 (UNA)

FIRST STATE INSURANCE COMPANY,
HARTFORD ACCIDENT & INDEMNITY
COMPANY, NEW ENGLAND
REINSURANCE CORPORATION and
NUTMEG INSURANCE COMPANY,

      Appellants,

vs.

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, FUTURE SILICA
CLAIMANTS REPRESENTATIVE and
OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

      Appellees.

Case No. 06-cv-179 (UNA)

---

AIU INSURANCE COMPANY, GRANITE
STATE INSURANCE COMPANY,
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, LANDMARK INSURANCE
COMPANY, LEXINGTON INSURANCE
COMPANY, NATIONAL UNION FIRE
INSURANCE COMPANY and NEW
HAMPSHIRE INSURANCE COMPANY,

      Appellants,

vs.

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, FUTURE SILICA
CLAIMANTS REPRESENTATIVE AND
OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

      Appellees.

Case No. 06-cv-182 (UNA)

DLI-5985848v5

**JOINT MOTION OF DEBTORS AND DEBTORS
IN POSSESSION AND THEIR PRINCIPAL CREDITOR
CONSTITUENCIES FOR CONSOLIDATION OF APPEALS, FOR
WAIVER OF MEDIATION REQUIREMENT AND FOR AN EXPEDITED
HEARING ON CONFIRMATION FINDINGS AND CONFIRMATION ORDER**

Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation

("KACC") and certain of their debtor affiliates (collectively, the "Reorganizing Debtors"),[1]

twenty-two of the above-captioned debtors and debtors in possession (collectively, the Debtors"),

the official committee of unsecured creditors (the "Creditors' Committee"), the statutory

committee of asbestos claimants (the "Asbestos Committee"), the official committee of retired

employees (the "Retirees' Committee") and Martin J. Murphy as legal representative for future

asbestos claimants (the "Asbestos Representative")[2] hereby request that (i) the above-captioned

appeals be consolidated, (ii) the mediation ordinarily required pursuant to this Court's Standing

Order dated July 23, 2004 be waived and (iii) the Court proceed with no further briefing of the

issues, which were fully briefed in the Bankruptcy Court, and schedule a hearing prior to April

10, 2006, to consider the Bankruptcy Court's Findings of Fact and Conclusions of Law

Regarding Confirmation of the Second Amended Joint Plan of Reorganization of Kaiser

---

[1]     In addition to Kaiser Aluminum Corporation and KACC, the Reorganizing Debtors
include the following entities: Akron Holding Corporation, Kaiser Aluminum &
Chemical Investment, Inc., Kaiser Aluminium International, Inc., Kaiser Aluminum
Properties, Inc., Kaiser Aluminum Technical Services, Inc., Kaiser Bellwood
Corporation, Kaiser Micromill Holdings, LLC, Kaiser Texas Micromill Holdings, LLC,
Kaiser Sierra Micromills, LLC, Kaiser Texas Sierra Micromills, LLC, Oxnard Forge Die
Company, Inc., Alwis Leasing LLC, Kaiser Center, Inc., KAE Trading, Inc., Kaiser
Aluminum & Chemical Investment Limited (Canada), Kaiser Aluminum & Chemical of
Canada Limited (Canada), Kaiser Center Properties, Kaiser Export Company and Texada
Mines Ltd. (Canada).

[2]     Counsel for the legal representative for future silica and coal tar pitch volatiles claimants
(the "Silica Representative" and collectively with the Asbestos Representative, the "Legal
Representatives") has indicated that the Silica Representative, Anne M. Ferazzi, also
supports the relief requested in this Joint Motion. The Silica Representative is not a party

Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor

Affiliates, as Modified (the "Confirmation Findings") (D.I. 8226) and Order Confirming the

Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser

Aluminum & Chemical Corporation and Certain of their Debtor Affiliates, as Modified (the

"Confirmation Order") (D.I. 8225). In support hereof, the Reorganizing Debtors, the Creditors'

Committee, the Retirees' Committee, the Asbestos Committee and the Asbestos Representative

(collectively, the "Plan Proponents") (a) submit the Declaration of Edward F. Houff, a copy of

which is attached hereto as Exhibit A and incorporated herein by reference and (b) respectfully

represent as follows:

### Preliminary Statement

Currently before the Court are eight separate appeals of the Confirmation Order

(collectively, the "Appeals") as well as six requests for *de novo* review of the Confirmation

Findings (collectively, the "Requests").[3]  With one exception,[4] each of the Appeals and Requests

---

(continued...)

  to this Joint Motion, however, because Ms. Ferazzi was not available to review and
approve the form of the motion.

[3] The Reorganizing Debtors' plan of reorganization proposes to establish a trust to which
all asbestos personal injury claims will be channeled pursuant to section 524(g) of the
Bankruptcy Code. Because section 524(g)(3)(A) of the Bankruptcy Code requires that
"the order confirming the plan of reorganization [be] issued or affirmed by the district
court that has jurisdiction over the reorganization case," the Reorganizing Debtors' plan
cannot be consummated until this Court issues or affirms the Confirmation Order.

[4] One of the appeals, Case No. 06-cv-178, was not filed by an insurance company but by
an individual, Duncan J. McNeil, III ("McNeil"), who is attempting to proceed *pro se* and
who failed to raise any objection to confirmation before the Bankruptcy Court. McNeil
has not paid the requisite fee for his appeal and has not filed a designation of items for the
record on appeal or a statement of issues on appeal. The Bankruptcy Court has issued a
notice of deficiency for failure to pay the fee (D.I. 8268), noting that the appeal will be
dismissed if the fee is not paid by February 27, 2006. McNeil has not paid the fee, and
the Plan Proponents expect that McNeil's appeal will be dismissed. Indeed, McNeil
previously filed a frivolous appeal in the Reorganizing Debtors' cases without paying the
requisite fee, and this Court dismissed his appeal and denied his request to proceed *in*

were filed by various insurance companies (collectively, the "Insurers") and collectively raise only one narrow legal issue for this Court to decide: whether, under the Bankruptcy Code as a matter of law, the proposed transfer of the rights to insurance proceeds to a trust under the Reorganizing Debtors' plan of reorganization is valid and enforceable against the Insurers notwithstanding the anti-assignment provisions of the applicable insurance policies and applicable state law. This Court's consideration of that issue and the resulting issuance or affirmance of the Confirmation Order by this Court are the only remaining steps in the Reorganizing Debtors' efforts to emerge from bankruptcy.

As explained in detail below, the Reorganizing Debtors are seeking an expedited hearing on the Appeals and the Requests to avoid potential adverse effects on their business that may result if their emergence from bankruptcy is further delayed. In that regard, no later than April 10, 2006, the Reorganizing Debtors will be required to file a motion with the Bankruptcy Court seeking a further extension of their postpetition financing facility and a further extension of an existing commitment for $200 million in exit financing, both of which will otherwise terminate on May 11, 2006. Given the careful monitoring by customers and suppliers of the Reorganizing Debtors' chapter 11 cases, including the projected timing for emergence from bankruptcy, the filing of that motion may give rise to unwarranted concerns regarding delays or even prospects for emergence, which, in turn, could adversely effect the Reorganizing Debtors' business operations. Moreover, at this juncture it is uncertain as to whether the terms of any extension of the postpetition financing facility and the exit financing commitments will be as

---

(continued...)

> *forma pauperis* based on the fact that McNeil, while incarcerated, had previously filed at least three other actions that had been deemed frivolous. <u>McNeil v. Kaiser Aluminum Corporation</u>, Civil Action No. 1:05-cv- 00574 (D.I. 3, 15).

favorable as the existing terms, which could adversely affect the value of the consideration to be

received by creditors on the effective date of the plan. Finally, the Reorganizing Debtors have

been in chapter 11 proceedings for over four years and, as described below, a prolonged review

of the Confirmation Findings and the Confirmation Order, which will correspondingly delay

creditor, including retiree and tort claimant, recoveries as well as emergence, will create

unnecessary business risks and could have other adverse effects on the Reorganizing Debtors'

business prospects as well.

        For all these reasons, the Plan Proponents request that the Court consolidate the

Appeals,[5] waive the requirement for mediation, proceed without further briefing, and schedule an

expedited hearing prior to April 10, 2006, to consider the Confirmation Findings and the

Confirmation Order.

### The Debtors' Chapter 11 Cases

        1.      On February 12, 2002 (the "Petition Date"), KACC and fourteen of its

Debtor affiliates commenced their respective reorganization cases by filing voluntary petitions

for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§101-1532 (the "Bankruptcy

Code"). Two additional Debtors commenced their voluntary chapter 11 cases on March 15,

2002. On January 14, 2003, the remaining nine Debtors filed their chapter 11 petitions. The

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being

administered jointly.

        2.      Prior to the Petition Date, the Debtors and their nondebtor subsidiaries had

worldwide operations in all principal aspects of the aluminum industry: (a) the mining of

bauxite, (b) the refining of bauxite into alumina, (c) the production of primary aluminum from

---

[5]      Because the Requests have been docketed in the respective Appeals, consolidation of the
Appeals will include the Requests as well.

alumina and (d) the manufacture of both fabricated and semi-fabricated aluminum products.

Pursuant to the Debtors' strategic plan, which envisioned a reorganization around the Debtors'

fabricated products business, the Debtors sold most of their commodities assets during the course

of the Debtors' chapter 11 cases. Certain of the Debtors that held those assets were dissolved

pursuant to separate plans of liquidation that went effective on December 22, 2005. The

remaining Debtors — the Reorganizing Debtors — are continuing in possession of their

respective properties and are operating and managing their businesses, as debtors in possession,

pursuant to sections 1107 and 1108 of the Bankruptcy Code.

        3.      On February 25, 2002, the United States trustee for the District of

Delaware (the "U.S. Trustee") appointed the Creditors' Committee and the Asbestos Committee

in these chapter 11 cases, pursuant to section 1102 of the Bankruptcy Code. In addition, the

Bankruptcy Court entered orders appointing (a) Martin J. Murphy as the Asbestos Representative

on January 27, 2003; (b) the Retirees' Committee, pursuant to section 1114 of the Bankruptcy

Code, on August 26, 2003; and (c) Anne M. Ferazzi as the Silica Representative on June 21,

2004.

## Formulation of the Plan of Reorganization

        4.      At the inception of their chapter 11 cases, the Debtors faced numerous

financial and economic problems including, among other things, an excessive debt burden,

unusually weak aluminum industry business conditions, significant retiree medical and pension

obligations, environmental liabilities, the pendency of more than 100,000 asbestos claims, and

other tort liabilities. (Houff Decl. ¶ 7.) In addition, before the Debtors could formulate any plan

or plans of reorganization or liquidation, the Debtors had to address a myriad of complex issues

relating to the treatment of prepetition and postpetition intercompany claims among the Debtors,

which in many cases involved individual claims approaching or exceeding $1 billion. (Id.)

5.    For more than three years, the Debtors, the Creditors' Committee, the Asbestos Committee, the Legal Representatives, the Retirees' Committee, the Pension Benefit Guaranty Corporation (the "PBGC"), the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union and other unions representing the Debtors' current or former employees and other creditor constituencies worked diligently to address these key liabilities and other issues that had to be resolved in order for the Reorganizing Debtors to formulate and proceed with a plan of reorganization. (Houff Decl. ¶ 8.) The efforts of all of these parties led to numerous agreements that ultimately formed the building blocks for a consensual plan of reorganization, and on September 7, 2005, the Reorganizing Debtors filed their Second Amended Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates (as subsequently modified, the "Plan") and a corresponding disclosure statement (the "Disclosure Statement"). (Id.) On September 8, 2005, the Bankruptcy Court entered an order (D.I. 7320) approving the Disclosure Statement and procedures for the solicitation and tabulation of votes to accept or reject the Plan. (Id.)

6.    The Plan, which is supported by all of the Debtors' principal creditor constituencies, is founded upon, and implements, agreements regarding the treatment of prepetition and postpetition intercompany claims; agreements regarding the resolution of retiree medical and pension obligations; the settlement of issues with the PBGC relating to the termination of pension plans, the implementation of replacement plans and the PBGC's claims for unfunded pension liabilities; agreements relating to the resolution of asbestos, silica, coal tar pitch volatiles and noise-induced hearing loss personal injury claims; and agreements regarding environmental liabilities. (Houff Decl. ¶ 9.) Consistent with these agreements, the Plan

proposes to establish certain trusts (collectively, the "PI Trusts"), including a trust pursuant to section 524(g) of the Bankruptcy Code, that will be used to satisfy asbestos, silica and coal tar pitch volatiles claims and future demands and noise-induced hearing loss claims (collectively, the "Tort Claims").[6] (Id.) The PI Trusts will be funded by, among other things, the transfer to a funding vehicle trust (the "Funding Vehicle Trust") of rights to proceeds under third-party liability insurance policies issued to the Debtors and/or settlements reached with the Debtors' third-party liability insurers regarding insurance coverage related to the Tort Claims (collectively, the "PI Insurance Assets"). The Funding Vehicle Trust will handle insurance coverage litigation and settlements and preserve, hold, manage and maximize the assets of the Funding Vehicle Trust, including the PI Insurance Assets, for the benefit of the PI Trusts. (Id.) The PI Insurance Assets constitute the most significant source of potential recovery for the holders of Tort Claims. The Plan provides that the PI Insurance Assets will be transferred to the Funding Vehicle Trust on the effective date of the Plan. (Id.) In exchange for the treatment of the Tort Claims provided for in the Plan, the Plan proposes channeling injunctions that will protect the Reorganizing Debtors and certain other entities from any further liability with respect to the Tort Claims and permanently channel those claims to the applicable PI Trust. (Id.)

---

[6]    Section 524(g) of the Bankruptcy Code was specifically promulgated to establish "a procedure for dealing in a chapter 11 reorganization proceeding with the future personal injury claims against the debtor based on exposure to asbestos-containing products." H.R. Rep. No. 103-835, at 40 (1994), reprinted in 1994 U.S.C.C.A.N. 3348. In short, section 524(g) provides that a debtor (and certain third parties) can obtain permanent injunctive protection against asbestos claims, both current and future, by funding a trust that will assume the liabilities of the debtor with respect to, and will use its assets to pay, such claims. Id. Such an injunction can be entered if the specific requirements of section 524(g) are satisfied. See 11 U.S.C. § 524(g).

**The Insurance Coverage Litigation and**
**the Reorganizing Debtors' Stipulation with the Insurers**

7.    Following the refusal of the Insurers[7] and certain other insurance

companies to provide liability coverage, in May 2000, KACC instituted companion insurance

coverage actions against certain liability insurers, including the Insurers, in the Superior Court of

California for the County of San Francisco (the "Coverage Action"), seeking a declaratory

judgment that the insurers are obligated to cover the asbestos-related bodily injury products and

premises liability claims that have been asserted against the Debtors. (Houff Decl. ¶ 10.) When

KACC filed its chapter 11 case, the Coverage Action was expanded to include virtually all of

KACC's's insurers with products or premises liability coverage obligations. The Coverage Action

has proceeded during the Debtors' chapter 11 cases. (Id.)

8.    Recognizing that insurance coverage disputes were being adjudicated in

the California state court, and to attempt to avoid any disputes with the Insurers in the

Bankruptcy Court, the Reorganizing Debtors included certain insurance neutrality provisions in

the Plan filed on September 7, 2005. (Houff Decl. ¶ 11.) In particular, the Plan as proposed at

that time preserved every defense to coverage under applicable nonbankruptcy law that any of

the Insurers possessed with the limited exception that the Insurers could not seek relief from

---

[7]    The Insurers include: Columbia Casualty Insurance Company, Transcontinental
Insurance Company, Harbor Insurance Company, Continental Insurance Company, AIU
Insurance Company, Granite State Insurance Company, Insurance Company of the State
of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company,
National Union Fire Insurance Company, New Hampshire Insurance Company, ACE
Property & Casualty Company, Central National Insurance Company of Omaha, Century
Indemnity Company, Industrial Indemnity Company, Industrial Underwriters Insurance
Company, Pacific Employers Insurance Company, Republic Indemnity Company,
Transport Insurance Company (f/k/a Transport Indemnity Company), First State
Insurance Company, Hartford Accident & Indemnity Company, New England
Reinsurance Corporation, Nutmeg Insurance Company, and TIG Insurance Company (as
successor by merger to International Insurance Company).

liability under their policies based solely on: (a) the transfer of the Reorganizing Debtors' rights to proceeds from the insurance policies to the Funding Vehicle Trust pursuant to the Plan; or (b) the drafting, proposing, confirmation or consummation of the Plan (as opposed to the terms, operation, effect or unreasonableness of the Plan or plan exhibits) or the discharge or release of the Reorganizing Debtors from liability for the Tort Claims pursuant to the Plan. (Id.) In other words, the insurance neutrality provisions in the Plan left the Insurers free to advance against the Funding Vehicle Trust any argument or defense that they could have advanced against the Reorganizing Debtors if the Reorganizing Debtors had (a) retained, rather than transferred, their rights to insurance proceeds and (b) not filed a chapter 11 reorganization. (Id.)

9.      Notwithstanding the retention of all usual defenses to coverage, following the Bankruptcy Court's approval of the Disclosure Statement, the Insurers served extensive discovery on each of the Reorganizing Debtors, the Asbestos Committee and the Legal Representatives covering a broad spectrum of topics that were allegedly related to confirmation of the Plan. (Houff Decl. ¶ 12.) Additionally, through a series of motions the Insurers raised a number of concerns regarding the meaning and effect of the insurance neutrality and related provisions of the Plan, and, absent clarification of such provisions, expressed an intent to pursue extensive litigation.[8] (Id.)

---

[8]     On September 8, 2005, certain of the Insurers filed a motion to access the exhibits attached to verified Bankruptcy Rule 2019 statements filed in these bankruptcy cases by various entities and individuals representing more than one tort claimant (D.I. 7329); on September 14, 2005, certain of the Insurers filed a motion for summary adjudication and supporting memorandum of law in the Products Coverage Action; on September 17, 2005, several Insurers filed a motion for more definite statement regarding the Plan (D.I. 7364); and on September 19, 2005, several Insurers filed an omnibus objection to, and related motion regarding, silica personal injury claims filed in these bankruptcy cases (D.I. 7385).

10.    Although the Reorganizing Debtors and their principal tort constituencies believed that these pleadings and the Insurers' requested discovery were insupportable and grossly overreaching in light of the Plan's broad preservation of the Insurers' coverage defenses, to resolve the issues raised in all of the Insurers' various pleadings, the Reorganizing Debtors, the Asbestos Committee and the Legal Representatives negotiated with the Insurers over several weeks and ultimately entered into a stipulation and agreed order (the "Stipulation") (D.I. 7718), pursuant to which the Reorganizing Debtors made modifications to the Plan that unequivocally preserve all defenses at law or in equity that any Insurer may have under applicable non-bankruptcy law and clarified that nothing in the Plan or any related document would limit the right of any Insurer to assert such defense in any insurance coverage action. (Houff Decl. ¶ 13.)

11.    Additionally, the Plan modifications made pursuant to the Stipulation provided that the order confirming the Plan will not constitute a trial or hearing on the merits, an adjudication or judgment, or be used as evidence to prove, among other things, (a) any liability of the Debtors, the PI Trusts or any applicable insurance company for any individual Tort Claim, (b) the reasonableness of the distribution procedures for the PI Trusts or the settlement of, or value assigned to, any individual Tort Claim pursuant to those distribution procedures, (c) that any applicable insurance company participated in or consented to the negotiation of the Plan or the distribution procedures for the PI Trusts, (d) that any of the Debtors or the PI Trusts have suffered an insured loss with respect to any Tort Claim, or (e) the liability, in an aggregate or individual basis, of the Debtors or any of the PI Trusts for Tort Claims. (Houff Decl. ¶ 14.)

12.    Of particular significance, the Insurers agreed pursuant to the Stipulation that the Insurers' objections, if any, to the Plan would be strictly limited to (a) whether, under the

Bankruptcy Code as a matter of law, the proposed transfer of the rights to insurance proceeds to the Funding Vehicle Trust under the applicable provisions of the Plan is valid and enforceable against the Insurers notwithstanding the anti-assignment provisions of the Policies and applicable state law and (b) whether the Plan complies with the trust funding requirements of section 524(g) of the Bankruptcy Code, specifically sections 524(g)(2)(B)(i)(II) and (III).  (Houff Decl. ¶ 15.)

### The Plan Confirmation Process and the
### Bankruptcy Court's Confirmation Hearing

13.    Given the substantial input of the Reorganizing Debtors' principal creditor constituencies into the development of the Plan, the Reorganizing Debtors' creditors, not surprisingly, overwhelmingly accepted the Plan.  In fact, the Plan received a greater than 92% acceptance rate in all classes, and 99% in most classes, of those voting in both number and amount.  (Houff Decl. ¶ 16.)  Moreover, despite total estimated claims aggregating billions of dollars and the distribution of Plan solicitation materials to more than 102,000 parties, only sixteen objections to confirmation of the Plan were filed and seven of those objections were resolved or withdrawn at or prior to the confirmation hearing.  (Id.)  Of the ten unresolved objections, seven were filed by the Insurers and were limited to the two, narrow legal issues delineated in the Stipulation.  (Id.)

14.    In support of confirmation and in response to the Insurers' objections, the Reorganizing Debtors filed a Memorandum of Law in Support of Confirmation (D.I. 7967), and, with the Asbestos Committee, a Joint Memorandum of Law and Response to Certain Insurers' Objections (the "Joint Response to Insurer Objections") (D.I. 7966).  The Silica Representative also filed a response to the Insurers' objections (D.I. 7962).  As explained in the Joint Response to Insurer Objections, the Insurers' two legal objections to confirmation of the Plan are completely meritless.  With respect to the transfer of rights to insurance proceeds, the opinion of

the Third Circuit Court of Appeals in In re Combustion Engineering, Inc., 391 F.3d 190, 218-19

(3d Cir. 2005), makes clear that the transfer of insurance proceeds to a section 524(g) trust

notwithstanding any anti-assignment provisions in the subject insurance policies is valid and

enforceable pursuant to sections 541 and 1123(a)(5) of the Bankruptcy Code. And with respect

to the section 524(g) funding requirements, not only does the Plan unquestionably comply with

the statutory requirements, the Insurers lack standing even to raise issues regarding the adequacy

of the funding of the Asbestos PI Trust since under no circumstance will the Insurers be seeking

distributions from that trust.

       15.     On January 9, 2006, the Bankruptcy Court conducted a hearing to consider

confirmation of the Plan. (Houff Decl. ¶ 17.) The Insurers were afforded the opportunity to, but

did not present any witnesses or evidence at the confirmation hearing, nor did the Insurers

cross-examine the Plan Proponents' witnesses or otherwise challenge any of the Plan Proponents'

evidence. (Id.) The Insurers did not even present argument on all of the issues on which

argument would have been permissible under the stipulation. (Id.)

       16.     At the confirmation hearing, the Bankruptcy Court summarily dismissed

the Insurers' argument regarding the Reorganizing Debtors' transfer of the rights of insurance

proceeds to the Funding Vehicle Trust, noting that "to the extent that the Combustion

Engineering opinion definitely talked about the fact that the debtor has insurance contract rights

on the date of filing and that they can be transferred to a trust. Rights to proceeds can be

transferred." (Tr. of January 9, 2006 hearing at 82). The Bankruptcy Court went on to state that

"1123(a)(5)(B) is clear that estate property can be transferred in whole or in part to one or more

entities, whether organized before or after the confirmation of the plan." (Tr. of January 9, 2006

hearing at 85). The Bankruptcy Court then dismissed the Insurers' objection, stating specifically

Case 1:06-mc-00041-JJF    Document 5    Filed 03/17/2006    Page 17 of 26

that the argument against the transfer of insurance proceeds was "not well founded." (Tr. of January 9, 2006 hearing at 87).

   17. Thus, in the Confirmation Findings, the Bankruptcy Court concluded that the transfer of rights to proceeds from the applicable insurance policies to the Funding Vehicle Trust for the benefit of the PI Trusts is valid and enforceable and that section 1123(a)(5) of the Bankruptcy Code expressly permits the transfer of the Reorganizing Debtors' rights to proceeds from the applicable insurance policies under the Plan and preempts any anti-assignment provisions of those policies. (Confirmation Findings, Section II.G.1 at 45). Additionally, the Bankruptcy Court concluded that the Plan complied with the funding requirements of section 524(g). (Id.)

   18. Having overruled the Insurers' objections, which were in essence the only remaining objections to the Plan, on February 6, 2006, the Bankruptcy Court entered the Confirmation Findings and the Confirmation Order. Because section 524(g) of the Bankruptcy Code requires that "the order confirming the plan of reorganization [be] issued or affirmed by the district court that has jurisdiction over the reorganization case," 11 U.S.C. § 524(g)(3)(A), the Plan cannot be consummated until this Court issues or affirms the order. Thus, in the last section of the Confirmation Order, entitled "Report and Recommendation to the District Court," the Bankruptcy Court provided that, to the extent required, it "hereby reports to the District Court and recommends that the District Court enter an order issuing or affirming this Confirmation Order." (Confirmation Order at 53.) The Bankruptcy Court thereafter transmitted the Confirmation Findings, the Confirmation Order and certain relevant pleadings to this Court for review. This Court then assigned a miscellaneous case number to the matter, case number 06-mc-41.

DLI-5985848v5
-13-

## The Appeals and Bankruptcy Rule 9033 Objections

19.    On February 15 or 16, 2006, the Insurers filed separate notices of appeal

of the Confirmation Order (collectively, the "Notices of Appeal")[9] as well as the separate

Requests seeking *de novo* review of the Confirmation Findings.[10]    Each of the Requests seeks *de*

*novo* review, pursuant to 28 U.S.C. § 1157(c)(1), 11 U.S.C. § 524(g) and Bankruptcy Rule 9033,

of the Confirmation Findings "in addition to the [applicable Appellant's] timely filed Notice of

Appeal of the [Confirmation] Order . . . ."[11]    In their Requests, Hartford and Republic objected to

---

[9]    Columbia Casualty Insurance Company, Transcontinental Insurance Company, Harbor
Insurance Company and Continental Insurance Company (collectively, "Columbia")
jointly filed a notice of appeal of the Confirmation Order (D.I. 8272); AIU Insurance
Company, Granite State Insurance Company, Insurance Company of the State of
Pennsylvania, Landmark Insurance Company, Lexington Insurance Company and
National Union Fire Insurance Company and New Hampshire Insurance Company
(collectively, "AIU") jointly filed a notice of appeal of the Confirmation Order (D.I.
8283); ACE Property & Casualty Company, Central National Insurance Company of
Omaha, Century Indemnity Company, Industrial Indemnity Company, Industrial
Underwriters Insurance Company and Pacific Employers Insurance Company
(collectively, "ACE") jointly filed a notice of appeal of the Confirmation Order (D.I.
8273); Republic Indemnity Company ("Republic") filed a notice of appeal of the
Confirmation Order (D.I. 8277); Transport Insurance Company (f/k/a Transport
Indemnity Company ("Transport") filed a notice of appeal of the Confirmation Order
(D.I. 8276); First State Insurance Company, Hartford Accident & Indemnity Company,
New England Reinsurance Corporation and Nutmeg Insurance Company (collectively,
"Hartford") jointly filed a notice of appeal of the Confirmation Order (D.I. 8278); and
TIG Insurance Company (as successor by merger to International Insurance Company)
("TIG") filed a notice of appeal of the Confirmation Order (D.I. 8264).

[10]    Columbia (D.I. 8293) and Hartford (D.I. 8298) filed requests for *de novo* review of the
Confirmation Findings; AIU (D.I. 8295), ACE (D.I. 8297) and TIG (D.I. 8296) filed
joinders in Columbia's request; and Republic and Transport filed a joint request for *de
novo* review of the Confirmation Findings (D.I. 8299).

[11]    Bankruptcy Rule 9033 provides that "[i]n non-core proceedings heard pursuant to 28
U.S.C. § 157(c)(1), the bankruptcy judge shall file proposed findings of fact and
conclusions of law." Bankruptcy Rule 9033(a). Bankruptcy Rule 9033 further provides
that "[w]ithin 10 days after being served with a copy of the proposed findings of fact and
conclusions of law a party may serve and file with the clerk written objections which
identify the specific proposed findings or conclusions objected to and state the grounds
for such objection." The district judge must then make a "de novo review upon the

Section II.G.1. of the Confirmation Findings, the paragraph in which the Bankruptcy Court overruled the Insurers' objections, and as the basis for their objection in the Requests, Hartford and Republic simply cited to or incorporated by reference the Insurers' confirmation briefs. The Requests filed by the other Insurers did not identify the specific findings or conclusions to which the Insurers object or state the Insurers' grounds for objection as required by Bankruptcy Rule 9033.

      20.     Through their Notices of Appeal and Requests, the Insurers sought appellate review of the Confirmation Order and separate Bankruptcy Rule 9033 review of the Confirmation Findings, suggesting that the Court treat the Confirmation Findings as proposed or recommended findings, while it treats the Confirmation Order as a final order subject to appeal. There is no reason, however, to have these two separate processes when each requires the Court to necessarily rule on the identical legal issues and the standard of review (*de novo*) under either is the same. Accordingly, on February 24, 2006, the Plan Proponents filed a joint response (the "Joint Response") (D.I. 8338) to the Requests, requesting that the Court review the Confirmation Findings and the Confirmation Order pursuant to either an appellate process or a Bankruptcy Rule 9033-type process, but not both. The Joint Response also requested that the Court expedite its review of the Confirmation Findings and Confirmation Order and decide the issues without further briefing.

      21.     On February 27, 2006, pursuant to Bankruptcy Rule 8006, the Insurers filed their designations of items to be included in the record on appeal and statements of issues on appeal, which uniformly limit the issue on appeal to whether, under the Bankruptcy Code as a

---

(continued...)

      record ... of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made ...." Fed. R. Bankr. P. 9033(d).

matter of law, the proposed transfer of the rights to insurance proceeds to the Funding Vehicle

Trust under the applicable provisions of the Plan is valid and enforceable against the Insurers

notwithstanding the anti-assignment provisions of the Policies and applicable state law.[12] Thus,

it appears that the Insurers are not challenging the Bankruptcy Court's conclusion that the Plan

meets the funding requirements of section 524(g) of the Bankruptcy Code and there is only one

legal issue for this Court to consider in connection with the Confirmation Findings and

Confirmation Order.

      22.    On March 1, 2006, the Plan Proponents filed their Joint Designation of

Reorganized Debtors and Their Principal Creditor Constituencies of Additional Items for Record

in Connection with District Court Review of Insurer Confirmation Issues. The Appeals were

each docketed in this Court and assigned their respective case number on March 15, 16 or 17,

2006.

<u>**Request for Consolidation of the Appeals and the Requests**</u>

      23.    Because the Appeals are each appeals of the Confirmation Order and raise

the same legal issue, there is no question that the Appeals should be consolidated. In addition,

the Requests have been docketed in the applicable Appeals (the Appeal filed by the Insurer that

filed the Request). Given the joinder of the Requests with the Appeals, the Court should simply

proceed with the appellate process, and for the reasons set forth in the Plan Proponents'

confirmation briefs and articulated by the Bankruptcy Court at the confirmation hearing, overrule

---

[12]    The Insurers filed four separate designations of items to be included in the record on
appeal and statements of issues on appeal, each of which states essentially the same three
issues on appeal. Each of the three issues, however, relate solely to the Bankruptcy
Court's ruling with respect to the transfer of insurance proceeds to the Funding Vehicle
Trust.

the Insurers' objections and affirm the Confirmation Order. A form of order affirming the

Confirmation Findings and the Confirmation Order is attached hereto as Exhibit B.

### Request for Waiver of Mediation and for an Expedited
### Hearing on the Confirmation Findings and the Confirmation Order

24.    The Plan represents the culmination of almost four years of work by the

Debtors and their primary creditor constituencies to reach a fair, equitable and expeditious

resolution of a myriad of complex issues presented in the Debtors' chapter 11 cases. (Houff

Decl. ¶ 19.) Other than the narrow, and meritless, objections raised by the Insurers, the Plan is

fully consensual. (Id.) The Court's affirmance of the Confirmation Order is the only remaining

step in the Reorganizing Debtors' emergence from bankruptcy.[13] (Id.) Because any further delay

in obtaining such affirmance may have adverse effects on the Reorganizing Debtors and will

create unnecessary risks for the Reorganizing Debtors' businesses, the Plan Proponents request

that the Court waive the mediation requirement and schedule an expedited hearing prior to April

10, 2006, to consider the Confirmation Findings and the Confirmation Order without further

briefing.[14] (Id.)

---

[13]    While the Insurers could attempt to appeal this Court's ruling, they have demonstrated no
grounds for a stay pending appeal, and the Plan Proponents are prepared to consummate
the Plan, including waiving the final order condition in the Plan, despite any appeal.

[14]    Bankruptcy Rule 8019 expressly provides that: "In the interest of expediting decision or
for other cause, the district court ... may suspend the requirements or provisions of the
rules in Part VIII, except [the rules relating to the manner of taking an appeal, time for
filing a notice of appeal and standard of review for findings of fact], and may order
proceedings in accordance with the direction." Accordingly, it is within the Court's
authority to suspend any of the otherwise applicable appellate requirements, including
briefing or local rules ordinarily requiring mediation, that would interfere with an
expedited review of the Insurers' objections. The issues before the Court have been
thoroughly briefed and fully litigated below and nothing has changed since the issues
were briefed in the Bankruptcy Court. Accordingly, further briefing is unnecessary and
will serve only to delay the Reorganizing Debtors' emergence.

25.    The Reorganizing Debtors' postpetition financing facility and commitment for exit financing expire on May 11, 2006. (Houff Decl. ¶ 20.) To ensure that Bankruptcy Court approval of any extension can be timely obtained, the Reorganizing Debtors will be required to file a motion with the Bankruptcy Court no later than April 10, 2006, seeking an extension of the maturity date of their postpetition financing and an extension of the commitment for their exit financing. The filing of that motion itself could have an adverse effect on the Reorganizing Debtors. (Id.) Currently, the Reorganizing Debtors in most instances have less than optimal credit terms with major suppliers because of the uncertainty surrounding their emergence from bankruptcy. (Id.) Even the perception of a potentially protracted delay in the confirmation process caused by the filing of an extension motion may substantially contribute to a loss of confidence by customers and suppliers. (Id.) While such confidence was temporarily enhanced by the Bankruptcy Court's recent approval of the Plan, given the careful monitoring by customers and suppliers of the Reorganizing Debtors' emergence from bankruptcy, the filing of a motion indicating a need to extend the financing for some further period beyond May 11, 2006 may cause the Reorganizing Debtors' customers and suppliers to develop mistaken impressions about when emergence will occur, adversely affecting their levels of confidence in the Reorganizing Debtors' business and reorganization prospects. (Id.)

26.    Moreover, if the Reorganizing Debtors are unable to emerge before May 11, 2006, they will be forced to negotiate another extension of their postpetition financing and exit financing commitment with their lenders. (Id.) Not only is there a risk that the lenders' confidence in the Reorganizing Debtors will also be undermined as a result, the Reorganizing Debtors may be required to pay substantial fees associated with any resulting amendment to their postpetition facility and, depending on the economic climate, the lenders may seek, to the

detriment of the Reorganizing Debtors' estates, to modify the current terms of these financing facilities. (Id.) Scheduling a hearing prior to April 10, 2006 will ensure that the adverse effects from the filing of a motion for an extension are avoided or largely mitigated and, assuming the Court promptly affirms the Confirmation Order, enable the Reorganizing Debtors to emerge before May 11, 2006.[15]

27.    Furthermore, in addition to preventing the implementation of the Reorganizing Debtors' post-emergence strategic plans and programs for 2006, delays in the Reorganizing Debtors' emergence could adversely affect the Reorganizing Debtors' ability to compete in the marketplace. (Houff Decl. ¶ 21.) For instance, the Reorganizing Debtors are currently at a significant disadvantage in competing for contracts with foreign automakers that have operations in the United States because such foreign companies are reluctant to enter into contracts with companies in bankruptcy due to a general unfamiliarity with United States bankruptcy laws. (Id.) A delay in the Reorganizing Debtors' emergence will also cause the Reorganizing Debtors to continue incurring substantial operating costs and administrative expenses related to these cases. In fact, the restructuring costs related to these cases, including the fees and expenses of retained professionals, have recently ranged between $2 million and $3 million per month. (Id.)

28.    Finally, a delay in the Debtors' emergence will prevent the Debtors from making distributions to creditors, the PI Trusts from making payments to tort claimants, and the voluntary employees beneficiary associations under the Plan from making payments to hourly

---

[15]    Following the Court's affirmation of the Confirmation Order, the Reorganizing Debtors must await the expiration of the 10-day stay provided for in Bankruptcy Rule 3020(e) before the Plan may become effective. Assuming this Court affirms the Confirmation Order prior to April 10, 2006 and the Insurers are not granted a stay pending any appeal

and salaried retirees. (Houff Decl. ¶ 22 ) The Reorganizing Debtors' creditors have already been waiting a number of years for recoveries in respect of their claims, including claims for lost medical coverage and pensions as well as personal injuries. (<u>Id.</u>)

29.    In contrast to the unnecessary risks and harm that will result from a delay in the Reorganizing Debtors' emergence, the Insurers will not be prejudiced at all by the Court's expedited consideration of the Confirmation Order and Confirmation Findings. As mentioned above, the facts in this proceeding are not in dispute, and the Insurers' issues on appeal are limited to one narrow legal issue. For that same reason, no further briefing is necessary. Accordingly, under the circumstances, the Plan Proponents respectfully request that the Court schedule an expedited hearing prior to April 10, 2006 to consider the Confirmation Findings and the Confirmation Order. A form of order consolidating the Appeals, waiving the mediation requirement and scheduling an expedited hearing, with no further briefing on the issues, is attached hereto as Exhibit C and incorporated herein by reference.

### Statement of Conference Pursuant to D. Del. LR 7.1.1

30.    Counsel for the Reorganizing Debtors has conferred with counsel for Columbia regarding the relief requested in this Joint Motion, who thereafter consulted with counsel for other Insurers regarding the Joint Motion. While the Insurers consent to consolidation of the Appeals, the Insurers do not consent to proceeding without any further briefing nor do they consent to the schedule proposed in the Joint Motion. The Insurers did not discuss among themselves the requested waiver of the mediation requirement.

---

(continued...)

       to the Third Circuit, the Reorganizing Debtors should be in a position to close the necessary transactions to emerge from bankruptcy before May 11, 2006.

Dated:  March 17, 2006
         Wilmington, Delaware

Respectfully submitted,

_Lisa Beckerman  w/p Kimberly D. Newmark_

William P. Bowden (DE 2553)
Gregory A. Taylor (DE 4008)
ASHBY & GEDDES
222 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware  19899
Phone:  (302) 654-1888
Fax:  (302) 654-1067

_Kimberly D. Newmark_

Daniel J. DeFranceschi (DE 2732)
Kimberly D. Newmarch (DE 4340)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

            -and-

Lisa Beckerman
AKIN GUMP STRAUSS HAUER
& FELD LLP
590 Madison Avenue
New York, New York  10022
Phone:  (212) 872-1000
Fax:  (212) 872-1002

Brian A. Kilmer
AKIN GUMP STRAUSS HAUER
& FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Phone:  (214) 969-2800
Fax:  (214) 969-4343

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS

            -and-

Gregory M. Gordon
Daniel P. Winikka
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

*Peter Van N. Lockwood w/p Hurford & Harron     Frederick D. Holden w/p Hurford, & Harron*

Marla R. Eskin (DE 2989)
Mark T. Hurford (DE 3299)
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

-and-

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue
New York, NY 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

-and-

Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

ATTORNEYS FOR OFFICIAL
COMMITTEE OF ASBESTOS
CLAIMANTS

Laurie Schenker Polleck (No. 4300)
JASPAN SCHLESINGER HOFFMAN, LLP
913 Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010

-and-

Frederick D. Holden
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

COUNSEL TO THE OFFICIAL
COMMITTEE OF RETIRED
SALARIED EMPLOYEES

*Sharon M. Zieg, w/p Hurford & Harron*

James L. Patton Jr. (DE 2202)
Edwin J. Harron (DE 3396)
Sharon M. Zieg (DE 4196)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 571-6600
Facsimile: (302) 571-1253

COUNSEL TO MARTIN J. MURPHY,
THE LEGAL REPRESENTATIVE FOR
FUTURE ASBESTOS CLAIMANTS

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Jointly Administered Under** |
| **KAISER ALUMINUM CORPORATION, a** | : | **Bankruptcy Case No. 02-10429 (JKF)** |
| Delaware corporation, <u>et al.</u> | : | **Chapter 11** |
| | : | |
| | : | |
| **KAISER ALUMINUM CORPORATION, <u>et al.</u>** | : | **Case No. 06-mc-41 (JJF)** |
| | : | |
| | : | |
| **TIG INSURANCE COMPANY,** | : | |
| | : | |
| Appellants, | : | |
| | : | |
| vs. | : | **Case No. 06-cv-171 (UNA)** |
| | : | |
| **KAISER ALUMINUM CORPORATION, <u>et al.</u>,** | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION, REORGANIZING** | : | |
| **DEBTORS, OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS CLAIMANTS,** | : | |
| **RETIREES' COMMITTEE, MARTIN J.** | : | |
| **MURPHY, and ANNE M. FERAZZI,** | : | |
| | : | |
| Appellees. | : | |
| | : | |
| **COLUMBIA CASUALTY INSURANCE** | : | |
| **COMPANY, TRANSCONTINENTAL** | : | |
| **INSURANCE COMPANY, HARBOR** | : | |
| **INSURANCE COMPANY and** | : | |
| **CONTINENTAL INSURANCE COMPANY,** | : | |
| | : | |
| Appellants, | : | |
| vs. | : | |
| | : | **Case No. 06-cv-172 (UNA)** |
| **KAISER ALUMINUM CORPORATION, <u>et al.</u>,** | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION, REORGANIZING** | : | |
| **DEBTORS, OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS CLAIMANTS,** | : | |
| **RETIREES' COMMITTEE, MARTIN J.** | : | |
| **MURPHY, and ANNE M. FERAZZI,** | : | |
| | : | |
| Appellees. | : | |

REPUBLIC INDEMNITY COMPANY,                    :
                                               :
      Appellant,                            :
                                               :
vs.                                            :        Case No. 06-cv-173 (UNA)
                                               :
KAISER ALUMINUM CORPORATION, et al.,          :
KAISER ALUMINUM & CHEMICAL                      :
CORPORATION, OFFICIAL COMMITTEE                 :
OF UNSECURED CREDITORS, OFFICIAL                :
COMMITTEE OF ASBESTOS CLAIMANTS,                :
MARTIN J. MURPHY, FUTURE SILICA                 :
CLAIMANTS REPRESENTATIVE and                    :
OFFICIAL COMMITTEE OF RETIRED                   :
EMPLOYEES,                                      :
                                               :
      Appellees.                            :

---

ACE PROPERTY & CASUALTY COMPANY                 :
(formerly known as Cigna Property & Casualty    :
Company formerly known as Aetna Insurance       :
Company), CENTRAL NATIONAL                      :
INSURANCE COMPANY OF OMAHA,                      :
CENTURY INDEMNITY COMPANY,                       :
INDUSTRIAL INDEMNITY COMPANY,                    :
INDUSTRIAL UNDERWRITERS                          :
INSURANCE COMPANY and PACIFIC                    :
EMPLOYERS INSURANCE COMPANY,                     :
                                               :
      Appellants,                           :
vs.                                            :        Case No. 06-cv-174 (UNA)
                                               :
KAISER ALUMINUM CORPORATION, et al.,          :
KAISER ALUMINUM & CHEMICAL                      :
CORPORATION, OFFICIAL COMMITTEE                 :
OF UNSECURED CREDITORS, OFFICIAL                :
COMMITTEE OF ASBESTOS CLAIMANTS,                :
MARTIN J. MURPHY, ANNE M. FERAZZI               :
and OFFICIAL COMMITTEE OF RETIRED               :
EMPLOYEES,                                      :
                                               :
      Appellees.                            :

---

DLI-5986360v2

|  |  |  |
|---|---|---|
| **TRANSPORT INSURANCE COMPANY (f/k/a Transport Indemnity Company),** | : | |
| | : | |
| | : | |
| Appellant, | : | |
| vs. | : | |
| | : | **Case No. 06-cv-175 (UNA)** |
| **KAISER ALUMINUM CORPORATION, et al., KAISER ALUMINUM & CHEMICAL CORPORATION, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS, MARTIN J. MURPHY, ANNE M. FERAZZI and OFFICIAL COMMITTEE OF RETIRED EMPLOYEES,** | : | |
| Appellees. | : | |

|  |  |  |
|---|---|---|
| **DUNCAN J. McNEIL, III,** Pro Se, | : | |
| | : | |
| Appellant, | : | |
| vs. | : | **Case No. 06-cv-178 (UNA)** |
| **KAISER ALUMINUM CORPORATION, et al.,** | : | |
| Appellees. | : | |

|  |  |  |
|---|---|---|
| **FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT & INDEMNITY COMPANY, NEW ENGLAND REINSURANCE CORPORATION and NUTMEG INSURANCE COMPANY,** | : | |
| | : | |
| Appellants, | : | |
| vs. | : | **Case No. 06-cv-179 (UNA)** |
| **KAISER ALUMINUM CORPORATION, et al., KAISER ALUMINUM & CHEMICAL CORPORATION, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS, MARTIN J. MURPHY, FUTURE SILICA CLAIMANTS REPRESENTATIVE and OFFICIAL COMMITTEE OF RETIRED EMPLOYEES,** | : | |
| Appellees. | : | |

AIU INSURANCE COMPANY, GRANITE    :
STATE INSURANCE COMPANY,       :
INSURANCE COMPANY OF THE STATE OF  :
PENNSYLVANIA, LANDMARK INSURANCE  :
COMPANY, LEXINGTON INSURANCE    :
COMPANY, NATIONAL UNION FIRE    :
INSURANCE COMPANY and NEW      :
HAMPSHIRE INSURANCE COMPANY,   :
                 :
   **Appellants,**        :
                 :
vs.                 :
                 : **Case No. 06-cv-182 (UNA)**
KAISER ALUMINUM CORPORATION, <u>et al.</u>,  :
KAISER ALUMINUM & CHEMICAL    :
CORPORATION, OFFICIAL COMMITTEE  :
OF UNSECURED CREDITORS, OFFICIAL  :
COMMITTEE OF ASBESTOS CLAIMANTS,  :
MARTIN J. MURPHY, FUTURE SILICA   :
CLAIMANTS REPRESENTATIVE AND   :
OFFICIAL COMMITTEE OF RETIRED   :
EMPLOYEES,          :
                 :
   **Appellees.**        :

### DECLARATION OF EDWARD F. HOUFF IN SUPPORT OF JOINT MOTION OF DEBTORS AND DEBTORS IN POSSESSION AND THEIR PRINCIPAL CREDITOR CONSTITUENCIES FOR CONSOLIDATION OF APPEALS, FOR WAIVER OF MEDIATION REQUIREMENT AND FOR AN EXPEDITED HEARING ON CONFIRMATION FINDINGS AND CONFIRMATION ORDER

EDWARD F. HOUFF declares and states, on personal knowledge:

1. I am the Chief Restructuring Officer for Kaiser Aluminum Corporation

("KAC"), Kaiser Aluminum & Chemical Corporation ("KACC") and the other above-captioned

debtors and debtors in possession (collectively, the "Debtors").

2. I submit this declaration in support of the Joint Motion of Debtors and

Debtors in Possession and Their Principal Creditor Constituencies for Consolidation of Appeals,

for Waiver of Mediation Requirement and for an Expedited Hearing on Confirmation Findings

and Confirmation Order.

3.    I have been employed by KACC since October 2001. During my period of employment with KACC, I served as Deputy General Counsel for Litigation from October 2001 through February 11, 2002, and I became Acting General Counsel on February 12, 2002, the date on which KACC and several other Debtors filed for bankruptcy protection under chapter 11. I served in this position through April 2002, when I became Vice President and General Counsel. I assumed the position of Secretary of KACC in October 2002, and continued to hold this position, as well as that of Vice President and General Counsel through December 31, 2004. On January 1, 2003, I assumed the additional role of Chief Restructuring Officer and, on January 1, 2005, I assumed the position of Senior Vice President and Chief Restructuring Officer. On August 16, 2005, I left the direct employ of KACC, but remain the Chief Restructuring Officer for KACC and the other Debtors under a consulting agreement with a delegation of authority from the Debtors.

4.    I have been intimately involved in the Debtors' restructuring efforts, including the negotiation and formulation of the plan of reorganization. Therefore, except as otherwise indicated, I have personal knowledge of the facts contained in this Declaration.

### The Debtors' Chapter 11 Cases

5.    On February 12, 2002 (the "Petition Date"), KACC and fourteen of its Debtor affiliates commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"). Two additional Debtors commenced their voluntary chapter 11 cases on March 15, 2002. On January 14, 2003, the remaining nine Debtors filed their chapter 11 petitions. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

6.     Prior to the Petition Date, the Debtors and their nondebtor subsidiaries had worldwide operations in all principal aspects of the aluminum industry: (a) the mining of bauxite, (b) the refining of bauxite into alumina, (c) the production of primary aluminum from alumina and (d) the manufacture of both fabricated and semi-fabricated aluminum products. Pursuant to the Debtors' strategic plan, which envisioned a reorganization around the Debtors' fabricated products business, the Debtors sold most of their commodities assets during the course of the Debtors' chapter 11 cases. Certain of the Debtors that held those assets were dissolved pursuant to separate plans of liquidation that went effective on December 22, 2005. The remaining Debtors (the "Reorganizing Debtors") are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### Formulation of the Plan of Reorganization

7.     At the inception of their chapter 11 cases, the Debtors faced numerous financial and economic problems including, among other things, an excessive debt burden, unusually weak aluminum industry business conditions, significant retiree medical and pension obligations, environmental liabilities, the pendency of more than 100,000 asbestos claims, and other tort liabilities. In addition, before the Debtors could formulate any plan or plans of reorganization or liquidation, the Debtors had to address a myriad of complex issues relating to the treatment of prepetition and postpetition intercompany claims among the Debtors, which in many cases involved individual claims approaching or exceeding $1 billion.

8.     For more than three years, the Debtors, the official committee of unsecured creditors, the statutory committee of asbestos claimants (the "Asbestos Committee"), the legal representative for future asbestos claimants (the "Asbestos Representative"), the legal representative for future silica and coal tar pitch volatiles claimants (the "Silica Representative

and collectively with the Asbestos Representative, the "Legal Representatives"), the official

committee of retired employees, the Pension Benefit Guaranty Corporation (the "PBGC"), the

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service

Workers International Union and other unions representing the Debtors' current or former

employees and other creditor constituencies worked diligently to address these key liabilities and

other issues that had to be resolved in order for the Reorganizing Debtors to formulate and

proceed with a plan of reorganization. The efforts of all of these parties led to numerous

agreements that ultimately formed the building blocks for a consensual plan of reorganization,

and on September 7, 2005, the Reorganizing Debtors filed their Second Amended Plan of

Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation

and Certain of Their Debtor Affiliates (as subsequently modified, the "Plan") and a

corresponding disclosure statement (the "Disclosure Statement"). On September 8, 2005, the

Bankruptcy Court entered an order approving the Disclosure Statement and procedures for the

solicitation and tabulation of votes to accept or reject the Plan.

9.    The Plan, which is supported by all of the Debtors' principal creditor

constituencies, is founded upon, and implements, agreements regarding the treatment of

prepetition and postpetition intercompany claims; agreements regarding the resolution of retiree

medical and pension obligations; the settlement of issues with the PBGC relating to the

termination of pension plans, the implementation of replacement plans and the PBGC's claims

for unfunded pension liabilities; agreements relating to the resolution of asbestos, silica, coal tar

pitch volatiles and noise-induced hearing loss personal injury claims; and agreements regarding

environmental liabilities. Consistent with these agreements, the Plan proposes to establish

certain trusts (collectively, the "PI Trusts"), including a trust pursuant to section 524(g) of the

Bankruptcy Code, that will be used to satisfy asbestos, silica and coal tar pitch volatiles claims and future demands and noise-induced hearing loss claims (collectively, the "Tort Claims"). The PI Trusts will be funded by, among other things, the transfer to a funding vehicle trust (the "Funding Vehicle Trust") of rights to proceeds under third-party liability insurance policies issued to the Debtors and/or settlements reached with the Debtors' third-party liability insurers regarding insurance coverage related to the Tort Claims (collectively, the "PI Insurance Assets"). The Funding Vehicle Trust will handle insurance coverage litigation and settlements and preserve, hold, manage and maximize the assets of the Funding Vehicle Trust, including the PI Insurance Assets, for the benefit of the PI Trusts. The PI Insurance Assets constitute the most significant source of potential recovery for the holders of Tort Claims. The Plan provides that the PI Insurance Assets will be transferred to the Funding Vehicle Trust on the effective date of the Plan. In exchange for the treatment of the Tort Claims provided for in the Plan, the Plan proposes channeling injunctions that will protect the Reorganizing Debtors and certain other entities from any further liability with respect to the Tort Claims and permanently channel those claims to the applicable PI Trust.

### The Insurance Coverage Litigation and the Reorganizing Debtors' Stipulation with the Insurers

10.    Following the refusal of certain insurance companies to provide liability coverage, in May 2000, KACC instituted companion insurance coverage actions against certain liability insurers in the Superior Court of California for the County of San Francisco (the "Coverage Action"), seeking a declaratory judgment that the insurers are obligated to cover the asbestos-related bodily injury products and premises liability claims that have been asserted against the Debtors. When KACC filed its chapter 11 case, the Coverage Action was expanded

to include virtually all of KACC's insurers with products or premises liability coverage obligations. The Coverage Action has proceeded during the Debtors' chapter 11 cases.

11.    Recognizing that insurance coverage disputes were being adjudicated in the California state court, and to attempt to avoid any disputes with the insurers in the Bankruptcy Court, the Reorganizing Debtors included certain insurance neutrality provisions in the Plan filed on September 7, 2005. In particular, the Plan as proposed at that time preserved every defense to coverage that any of the applicable insurance companies possessed with the limited exception that the insurers could not seek relief from liability under their policies based solely on: (a) the transfer of the Reorganizing Debtors' rights to proceeds from the insurance policies to the Funding Vehicle Trust pursuant to the Plan; or (b) the drafting, proposing, confirmation or consummation of the Plan (as opposed to the terms, operation, effect or unreasonableness of the Plan or plan exhibits) or the discharge or release of the Reorganizing Debtors from liability for the Tort Claims pursuant to the Plan. In other words, the insurance neutrality provisions in the Plan left the insurers free to advance against the Funding Vehicle Trust any argument or defense that they could have advanced against the Reorganizing Debtors if the Reorganizing Debtors had (a) retained, rather than transferred, their rights to insurance proceeds and (b) not filed a chapter 11 reorganization.

12.    Notwithstanding the retention of all usual defenses to coverage, following the Bankruptcy Court's approval of the Disclosure Statement, certain insurers (collectively, the "Insurers")[1] served extensive discovery on each of the Reorganizing Debtors, the Asbestos

---

[1]    The Insurers include: Columbia Casualty Insurance Company, Transcontinental Insurance Company, Harbor Insurance Company, Continental Insurance Company, AIU Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company, New Hampshire Insurance Company, ACE

Committee and the Legal Representatives covering a broad spectrum of topics that were

allegedly related to confirmation of the Plan. Additionally, through a series of motions the

Insurers raised a number of concerns regarding the meaning and effect of the insurance neutrality

and related provisions of the Plan, and, absent clarification of such provisions, expressed an

intent to pursue extensive litigation.

13.    Although the Reorganizing Debtors and their principal tort constituencies

believed that these pleadings and the Insurers' requested discovery were insupportable and

grossly overreaching in light of the Plan's broad preservation of the Insurers' coverage defenses,

to resolve the issues raised in all of the Insurers' various pleadings, the Reorganizing Debtors, the

Asbestos Committee and the Legal Representatives negotiated with the Insurers over several

weeks and ultimately entered into a stipulation and agreed order (the "Stipulation"), pursuant to

which the Reorganizing Debtors made modifications to the Plan that unequivocally preserve all

defenses at law or in equity that any Insurer may have under applicable non-bankruptcy law and

clarified that nothing in the Plan or any related document would limit the right of any Insurer to

assert such defense in any insurance coverage action.

14.    Additionally, the Plan modifications made pursuant to the Stipulation

provided that the order confirming the Plan will not constitute a trial or hearing on the merits, an

adjudication or judgment, or be used as evidence to prove, among other things, (a) any liability

---

(continued...)

       Property & Casualty Company, Central National Insurance Company of Omaha, Century
Indemnity Company, Industrial Indemnity Company, Industrial Underwriters Insurance
Company, Pacific Employers Insurance Company, Republic Indemnity Company,
Transport Insurance Company (f/k/a Transport Indemnity Company), First State
Insurance Company, Hartford Accident & Indemnity Company, New England
Reinsurance Corporation, Nutmeg Insurance Company, and TIG Insurance Company (as
successor by merger to International Insurance Company).

of the Debtors, the PI Trusts or any applicable insurance company for any individual Tort Claim, (b) the reasonableness of the distribution procedures for the PI Trusts or the settlement of, or value assigned to, any individual Tort Claim pursuant to those distribution procedures, (c) that any applicable insurance company participated in or consented to the negotiation of the Plan or the distribution procedures for the PI Trusts, (d) that any of the Debtors or the PI Trusts have suffered an insured loss with respect to any Tort Claim, or (e) the liability, in an aggregate or individual basis, of the Debtors or any of the PI Trusts for Tort Claims.

15.    Of particular significance, the Insurers agreed pursuant to the Stipulation that the Insurers' objections, if any, to the Plan would be strictly limited to (a) whether, under the Bankruptcy Code as a matter of law, the proposed transfer of the rights to insurance proceeds to the Funding Vehicle Trust under the applicable provisions of the Plan is valid and enforceable against the Insurers notwithstanding the anti-assignment provisions of the Policies and applicable state law and (b) whether the Plan complies with the trust funding requirements of section 524(g) of the Bankruptcy Code, specifically sections 524(g)(2)(B)(i)(II) and (III).

### The Plan Confirmation Process and the
### Bankruptcy Court's Confirmation Hearing

16.    Given the substantial input of the Reorganizing Debtors' principal creditor constituencies into the development of the Plan, the Reorganizing Debtors' creditors, not surprisingly, overwhelmingly accepted the Plan. In fact, the Plan received a greater than 92% acceptance rate in all classes, and 99% in most classes, of those voting in both number and amount. Moreover, despite total estimated claims aggregating billions of dollars and the distribution of Plan solicitation materials to more than 102,000 parties, only sixteen objections to confirmation of the Plan were filed and seven of those objections were resolved or withdrawn at

or prior to the confirmation hearing. Of the ten unresolved objections, seven were filed by the Insurers and were limited to the two narrow, purely legal issues delineated in the Stipulation.

17.    On January 9, 2006, the Bankruptcy Court conducted a hearing to consider confirmation of the Plan. The Insurers were afforded the opportunity to, but did not present any witnesses or evidence at the confirmation hearing, nor did the Insurers cross-examine the Plan Proponents' witnesses or otherwise challenge any of the Plan Proponents' evidence. The Insurers did not even present argument on all of the issues on which argument would have been permissible under the stipulation.

18.    At the confirmation hearing, the Bankruptcy Court overruled the Insurers' objections. Having overruled the Insurers' objections, which were in essence the only remaining objections to the Plan, on February 6, 2006, the Bankruptcy Court entered its findings of fact and conclusions of law regarding confirmation of the Plan and an order confirming the Plan.

### The Need for an Expedited Hearing on
### Bankruptcy Court's Confirmation Order

19.    The Plan represents the culmination of almost four years of work by the Debtors and their primary creditor constituencies to reach a fair, equitable and expeditious resolution of a myriad of complex issues presented in the Debtors' chapter 11 cases. Other than the narrow, and meritless, objections raised by the Insurers, the Plan is fully consensual. The Court's affirmance of the Confirmation Order is the only remaining step in the Reorganizing Debtors' emergence from bankruptcy. While the Insurers could attempt to appeal any ruling by this Court, they have demonstrated no grounds for a stay pending appeal, and upon information and belief, all of the requisite creditor constituencies are prepared to proceed with consummation of the Plan, including by waiving the final order condition under the Plan, despite any appeals. Any further delay in obtaining affirmance from this Court, however, may have adverse effects on

the Reorganizing Debtors and will create unnecessary risks for the Reorganizing Debtors'
businesses.

20.    The Reorganizing Debtors' postpetition financing facility and commitment
for exit financing expire on May 11, 2006. To ensure that Bankruptcy Court approval of any
extension can be timely obtained, the Reorganizing Debtors will be required to file a motion with
the Bankruptcy Court no later than April 10, 2006 seeking an extension of the maturity date of
their postpetition financing and an extension of the commitment for their exit financing. The
filing of that motion itself could have an adverse effect on the Reorganizing Debtors. Currently,
the Reorganizing Debtors in most instances have less than optimal credit terms with major
suppliers because of the uncertainty surrounding their emergence from bankruptcy. Even the
perception of a potentially protracted delay in the confirmation process caused by the filing of an
extension motion may substantially contribute to a loss of confidence by customers and
suppliers. While such confidence was temporarily enhanced by the Bankruptcy Court's recent
approval of the Plan, given the careful monitoring by customers and suppliers of the
Reorganizing Debtors' emergence from bankruptcy, the filing of a motion indicating a need to
extend the financing for some further period beyond May 11, 2006 may cause the Reorganizing
Debtors' customers and suppliers to develop mistaken impressions about when emergence will
occur, adversely affecting their levels of confidence in the Reorganizing Debtors' business and
reorganization prospects. Moreover, if the Reorganizing Debtors are unable to emerge before
May 11, 2006, they will be forced to negotiate another extension of their postpetition financing
and exit financing commitment with their lenders. Not only is there a risk that the lenders'
confidence in the Reorganizing Debtors will also be undermined as a result, the Reorganizing
Debtors may be required to pay substantial fees associated with any resulting amendment to their

postpetition facility and, depending on the economic climate, the lenders may seek, to the detriment of the Reorganizing Debtors' estates, to modify the current terms of these financing facilities.

      21.    Furthermore, in addition to preventing the implementation of the Reorganizing Debtors' post-emergence strategic plans and programs for 2006, delays in the Reorganizing Debtors' emergence could adversely affect the Reorganizing Debtors' ability to compete in the marketplace. For instance, the Reorganizing Debtors are currently at a significant disadvantage in competing for contracts with foreign automakers that have operations in the United States because such foreign companies are reluctant to enter into contracts with companies in bankruptcy due to a general unfamiliarity with United States bankruptcy laws. A delay in the Reorganizing Debtors' emergence will also cause the Reorganizing Debtors to continue incurring substantial operating costs and administrative expenses related to these cases. In fact, the restructuring costs related to these cases, including the fees and expenses of retained professionals, have recently ranged between $2 million and $3 million per month.

      22.    Finally, a delay in the Debtors' emergence will prevent the Debtors from making distributions to creditors, the PI Trusts from making payments to tort claimants, and the voluntary employees beneficiary associations under the Plan from making payments to hourly and salaried retirees. The Reorganizing Debtors' creditors have already been waiting a number of years for recoveries in respect of their claims, including claims for lost medical coverage and pensions as well as personal injuries.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 17, 2006

Edward F. Houff

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KAISER ALUMINUM CORPORATION,    :    **Case No. 06-mc-41 (JJF)**
**et al.**                                              :
                                                            :    **Consolidated appeals from**
                                                            :    **Jointly Administered**
                                                            :    **Bankruptcy Case No. 02-10429 (JKF)**
                                                            :    **Chapter 11**

## ORDER AFFIRMING CONFIRMATION OF SECOND AMENDED JOINT PLAN OF REORGANIZATION OF KAISER ALUMINUM CORPORATION, KAISER ALUMINUM & CHEMICAL CORPORATION AND CERTAIN OF THEIR DEBTOR AFFILIATES, AS MODIFIED

This matter coming before this Court on (a) the request of the bankruptcy court in

the above-referenced bankruptcy cases (the "Bankruptcy Court") to have its Order Confirming

the Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser

Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, as Modified (the

"Confirmation Order"), affirmed by this Court pursuant to section 524(g)(3)(A) of the

Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); (b) the requests

(collectively, the "Insurer Requests") of various insurance companies (collectively, the

"Insurers")[1] for *de novo* review of the Bankruptcy Court's Findings of Fact and Conclusions of

Law Regarding Confirmation of the Second Amended Joint Plan of Reorganization of Kaiser

---

[1]    The Insurers include: Columbia Casualty Insurance Company; Transcontinental Insurance Company; Harbor Insurance Company; Continental Insurance Company; AIU Insurance Company; Granite State Insurance Company; Insurance Company of the State of Pennsylvania; Landmark Insurance Company; Lexington Insurance Company; National Union Fire Insurance Company; New Hampshire Insurance Company; ACE Property & Casualty Company; Central National Insurance Company of Omaha; Century Indemnity Company; Industrial Indemnity Company; Industrial Underwriters Insurance Company; Pacific Employers Insurance Company; Republic Indemnity Company; Transport Insurance Company (f/k/a Transport Indemnity Company); First State Insurance Company; Hartford Accident & Indemnity Company; New England Reinsurance Corporation; Nutmeg Insurance Company; TIG Insurance Company (as successor by merger to International Insurance Company).

Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, as Modified (the "Confirmation Findings"); and (c) the appeals of the Confirmation Order (collectively, the "Appeals"), which were all consolidated in the above-referenced case; the Court having considered and reviewed the Confirmation Findings, the Confirmation Order, the confirmation briefs filed in the Bankruptcy Court by the above-referenced debtors and debtors in possession (collectively, the "Debtors"), the official committee of unsecured creditors, the official committee of retired employees, the statutory committee of asbestos claimants, Martin J. Murphy as legal representative for future asbestos claimants, Anne M. Ferazzi as legal representative for future silica and coal tar pitch volatiles claimants, and the Insurers, the record of the confirmation hearing, and all pleadings and proceedings related thereto;

THE COURT HEREBY FINDS THAT:

A.    It has jurisdiction over the Debtors' bankruptcy cases pursuant to 28 U.S.C. §§ 157 and 1334.

B.    Confirmation of the Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, as Modified (the "Plan"), should be affirmed for all purposes, including pursuant to section 524(g)(3)(A) of the Bankruptcy Code.

IT IS HEREBY ORDERED THAT:

1.    The Confirmation Findings and the Confirmation Order are hereby affirmed for all purposes, including to the full extent required by section 524(g)(3)(A) of the Bankruptcy Code.

2.      The Clerk of this Court is directed to promptly enter this Order on the docket of this Court and to transmit a copy of this Order to the Clerk of the Bankruptcy Court for prompt entry on the docket of the Debtors' bankruptcy cases.

3.      Pursuant to section 524(g)(2)(A) of the Bankruptcy Code, the Court shall maintain jurisdiction over any proceeding that involves the application, construction or modification of this Order or the asbestos channeling injunction under the Plan.

Dated: _____, 2006

_____
UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Jointly Administered Under** |
| **KAISER ALUMINUM CORPORATION, a** | : | **Bankruptcy Case No. 02-10429 (JKF)** |
| Delaware corporation, <u>et al.</u> | : | **Chapter 11** |
| | : | |

| | | |
|---|---|---|
| **KAISER ALUMINUM CORPORATION,** <u>et al.</u> | : | **Case No. 06-mc-41 (JJF)** |
| | : | |

| | | |
|---|---|---|
| **TIG INSURANCE COMPANY,** | : | |
| | : | |
| **Appellants,** | : | |
| | : | |
| | : | **Case No. 06-cv-171 (UNA)** |
| vs. | : | |
| | : | |
| **KAISER ALUMINUM CORPORATION,** <u>et al.</u>, | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION, REORGANIZING** | : | |
| **DEBTORS, OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS CLAIMANTS,** | : | |
| **RETIREES' COMMITTEE, MARTIN J.** | : | |
| **MURPHY, and ANNE M. FERAZZI,** | : | |
| **Appellees.** | : | |

| | | |
|---|---|---|
| **COLUMBIA CASUALTY INSURANCE** | : | |
| **COMPANY, TRANSCONTINENTAL** | : | |
| **INSURANCE COMPANY, HARBOR** | : | |
| **INSURANCE COMPANY and** | : | |
| **CONTINENTAL INSURANCE COMPANY,** | : | |
| | : | |
| | : | |
| **Appellants,** | : | **Case No. 06-cv-172 (UNA)** |
| vs. | : | |
| | : | |
| **KAISER ALUMINUM CORPORATION,** <u>et al.</u>, | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION, REORGANIZING** | : | |
| **DEBTORS, OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS CLAIMANTS,** | : | |
| **RETIREES' COMMITTEE, MARTIN J.** | : | |
| **MURPHY, and ANNE M. FERAZZI,** | : | |
| **Appellees.** | | |

DLI-5986534v1

REPUBLIC INDEMNITY COMPANY,

     Appellant,

vs.

                                           **Case No. 06-cv-173 (UNA)**

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, FUTURE SILICA
CLAIMANTS REPRESENTATIVE and
OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

     Appellees.

---

ACE PROPERTY & CASUALTY COMPANY
(formerly known as Cigna Property & Casualty
Company formerly known as Aetna Insurance
Company), CENTRAL NATIONAL
INSURANCE COMPANY OF OMAHA,
CENTURY INDEMNITY COMPANY,
INDUSTRIAL INDEMNITY COMPANY,
INDUSTRIAL UNDERWRITERS
INSURANCE COMPANY and PACIFIC
EMPLOYERS INSURANCE COMPANY,

     Appellants,

vs.                                  **Case No. 06-cv-174 (UNA)**

KAISER ALUMINUM CORPORATION, et al.,
KAISER ALUMINUM & CHEMICAL
CORPORATION, OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS,
MARTIN J. MURPHY, ANNE M. FERAZZI
and OFFICIAL COMMITTEE OF RETIRED
EMPLOYEES,

     Appellees.

---

| | | |
|---|---|---|
| **TRANSPORT INSURANCE COMPANY (f/k/a Transport Indemnity Company),** | : | |
| | : | |
| | : | |
| | : | |
| **Appellant,** | : | **Case No. 06-cv-175 (UNA)** |
| | : | |
| vs. | : | |
| | : | |
| **KAISER ALUMINUM CORPORATION, et al., KAISER ALUMINUM & CHEMICAL CORPORATION, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS, MARTIN J. MURPHY, ANNE M. FERAZZI and OFFICIAL COMMITTEE OF RETIRED EMPLOYEES,** | : | |
| | : | |
| **Appellees.** | : | |

| | | |
|---|---|---|
| **DUNCAN J. McNEIL, III, Pro Se,** | : | |
| | : | |
| | : | |
| **Appellant,** | : | |
| | : | **Case No. 06-cv-178 (UNA)** |
| vs. | : | |
| | : | |
| **KAISER ALUMINUM CORPORATION, et al.,** | : | |
| **Appellees.** | : | |

FIRST STATE INSURANCE COMPANY,  
HARTFORD ACCIDENT & INDEMNITY  
COMPANY, NEW ENGLAND  
REINSURANCE CORPORATION and  
NUTMEG INSURANCE COMPANY,

       Appellants,

vs.

KAISER ALUMINUM CORPORATION, et al.,  
KAISER ALUMINUM & CHEMICAL  
CORPORATION, OFFICIAL COMMITTEE  
OF UNSECURED CREDITORS, OFFICIAL  
COMMITTEE OF ASBESTOS CLAIMANTS,  
MARTIN J. MURPHY, FUTURE SILICA  
CLAIMANTS REPRESENTATIVE and  
OFFICIAL COMMITTEE OF RETIRED  
EMPLOYEES,

       Appellees.

:  
:  
:  
:  
:  
:  
:  
:  
:  
:     Case No. 06-cv-179 (UNA)  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  

AIU INSURANCE COMPANY, GRANITE  
STATE INSURANCE COMPANY,  
INSURANCE COMPANY OF THE STATE OF  
PENNSYLVANIA, LANDMARK INSURANCE  
COMPANY, LEXINGTON INSURANCE  
COMPANY, NATIONAL UNION FIRE  
INSURANCE COMPANY and NEW  
HAMPSHIRE INSURANCE COMPANY,

       Appellants,

vs.

KAISER ALUMINUM CORPORATION, et al.,  
KAISER ALUMINUM & CHEMICAL  
CORPORATION, OFFICIAL COMMITTEE  
OF UNSECURED CREDITORS, OFFICIAL  
COMMITTEE OF ASBESTOS CLAIMANTS,  
MARTIN J. MURPHY, FUTURE SILICA  
CLAIMANTS REPRESENTATIVE AND  
OFFICIAL COMMITTEE OF RETIRED  
EMPLOYEES,

       Appellees.

:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:     Case No. 06-cv-182 (UNA)  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:

## ORDER CONSOLIDATING APPEALS, WAIVING MEDIATION
## REQUIREMENT AND SCHEDULING AN EXPEDITED HEARING ON APPEALS

This matter coming before this Court on the joint motion (the "Joint Motion") of

Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and certain of their

debtor affiliates, twenty-two of the above-captioned debtors and debtors in possession

(collectively, the Debtors"), the official committee of unsecured creditors, the statutory

committee of asbestos claimants, the official committee of retired employees, and Martin J.

Murphy as legal representative for future asbestos claimants for entry of an order

(i) consolidating the above-captioned appeals (the "Appeals"), (ii) waiving the mediation

ordinarily required pursuant to this Court's Standing Order dated July 23, 2004 and

(iii) scheduling an expedited hearing on the Appeals, with no further briefing of the issues; the

Court having considered and reviewed the Joint Motion, and all pleadings and proceedings

related thereto;

THE COURT HEREBY FINDS THAT:

A.    It has jurisdiction over the Debtors' bankruptcy cases pursuant to

28 U.S.C. §§ 157 and 1334.

B.    Sufficient cause exists to consolidate and expedite the Appeals.

C.    Given the narrow legal issue involved and the full briefing and argument

in the Bankruptcy Court, no further briefing is necessary to resolve the Appeals.

IT IS HEREBY ORDERED THAT:

1.    All capitalized terms not otherwise defined herein shall have the meanings

given to them in the Joint Motion.

2.    The above-captioned appeals are consolidated into Case No.

06-mc-41 (JJF).

3.    The mediation ordinarily required pursuant to this Court's Standing Order dated July 23, 2004 is waived.

4.    A hearing shall be set for April ___, 2006, for this Court to consider the Confirmation Order and the Confirmation Findings, with no further briefing on the issues.

5.    The Clerk of this Court is directed to promptly enter this Order on the docket of this Court and to transmit a copy of this Order to the Clerk of the Bankruptcy Court for prompt entry on the docket of the Debtors' bankruptcy cases.

Dated: _____, 2006          _____

UNITED STATES DISTRICT COURT JUDGE