## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KAISER ALUMINUM CORP., et al., | ) | Bankruptcy Case No. 02-10429 (JKF) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| KAISER ALUMINUM CORP., et al., | ) | Misc. Case No. 06-041 (JJF) |
| | ) | |
| Debtors. | ) | |

**OPENING MEMORANDUM OF COLUMBIA CASUALTY COMPANY, TRANSCONTINENTAL INSURANCE COMPANY, HARBOR INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, AND TIG INSURANCE COMPANY, AS SUCCESSOR BY MERGERS WITH INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, REGARDING APPEAL AND REQUEST FOR *DE NOVO* REVIEW OF ALLEGED STATUTORY PREEMPTION OF INSURERS' RIGHTS AND DEBTORS' OBLIGATIONS UNDER INSURANCE POLICIES**

Columbia Casualty Company, Transcontinental Insurance Company, Harbor Insurance Company, and Continental Insurance Company (collectively, "CNA"), and TIG Insurance Company, as successor by mergers with International Surplus Lines Insurance Company ("TIG," and together with CNA, "Certain Insurers"), by and through their respective undersigned counsel, hereby submit this opening memorandum in accordance with this Court's Memorandum Order dated April 3, 2006 [Docket No. 11][1] concerning Certain Insurers' appeal from and request for *de novo* review of the alleged statutory preemption of Certain Insurers' rights and the Debtors' obligations under insurance policies referenced in (i) the Order Confirming the Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, as Modified [Docket No. 2, Ex. A;

---

[1] References to "Docket No. __" shall refer to docket entries in Misc. Case No. 06-041 (JJF) pending in this Court. References to "Bankr. Docket No. __" shall refer to docket entries in jointly administered Bankruptcy Case No. 02-10429 (JKF) pending before the Bankruptcy Court.

Bankr. Docket No. 8225] (the "Confirmation Order") entered by the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court") on February 6, 2006, and (ii) the

accompanying Findings of Fact and Conclusions of Law Regarding Confirmation of the Second

Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum &

Chemical Corporation and Certain of Their Debtor Affiliates, as Modified [Docket No. 1; Bankr.

Docket No. 8226] (the "Findings and Conclusions") also entered by the Bankruptcy Court on

February 6, 2006.  In support thereof, Certain Insurers respectfully state as follows:

### Summary of Argument

Certain Insurers appeal and request *de novo* review of the alleged statutory preemption of

Certain Insurers' rights and Debtors' obligations under insurance policies because the

Bankruptcy Court's Confirmation Order and Findings and Conclusions:  (a) attempt to override

Certain Insurers' insurance contracts with the Debtors in violation of the fundamental principle

of bankruptcy law that rights and obligations in bankruptcy are generally determined by

applicable nonbankruptcy law unless Congress has expressly provided otherwise in the

Bankruptcy Code; (b) ignore canons of statutory construction in reading new powers for the

debtor-in-possession and the Bankruptcy Court into Section 1123(a)(5) of Title 11, United States

Code (the "Bankruptcy Code") not intended by Congress; and (c) ignore the constitutional and

statutory limits on the Bankruptcy Court's Article I power.  Thus, the Bankruptcy Court's

conclusion that Section 1123(a)(5) expressly preempts Certain Insurers' contractual rights

recognized by California law violates the Bankruptcy Code and ignores the limitations on the

Bankruptcy Court's power.  Accordingly, the Bankruptcy Court's determination of federal

preemption should be reversed, and the balance of the Bankruptcy Court's rulings can be

affirmed.  Certain Insurers' disputes with the Debtors should be resolved as part of the Coverage

Litigation (as defined below) initiated by the Debtors in the State Court (as defined below)
pursuant to Section 7 of the Stipulation and Agreed Order approved by the bankruptcy court on
November 14, 2005 (the "Stipulation") [Bankr. Docket No. 7718].

### Factual Summary

Certain Insurers issued insurance policies to one or more Debtors at various times prior to
the commencement of the Debtors' bankruptcy cases on February 12, 2002, March 15, 2002, or
January 14, 2003 (as the case may be, the "Petition Date"). Each of those policies contain a "No
Assignment" clause prohibiting the assignment of rights under such policies without Certain
Insurers' consent. As set forth in the Stipulation, the parties agree as follows with respect to the
No Assignment clauses contained in the insurance policies issued to the Debtors by Certain
Insurers:

- The No Assignment provisions are among the material provisions of Certain
  Insurers' policies;

- There is a material dispute between the Debtors and Certain Insurers as to
  whether assignment of the policies pursuant to the Plan is valid under the No
  Assignment provisions of the policies and applicable state law; and

- Certain Insurers have not given their consent to such assignment.

*See* Stipulation, ¶ 8(a-c).

Prior to the Petition Date, one of the Debtors initiated civil proceedings against certain of
its insurers in cases captioned *Kaiser Aluminum & Chemical Corp. v. London Market Insurers,
et al.*, No. 312415, and *Kaiser Aluminum & Chemical Corp. v. Ins. Company of North America,
et al.*, No. 322710 (collectively, the "Coverage Litigation") in the Superior Court of San
Francisco, California (the "State Court"). The parties, including the Debtors and Certain
Insurers, are actively litigating the Coverage Litigation in the State Court.

On September 7, 2005, the Debtors filed their Second Amended Joint Plan of

Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation

and Certain of Their Debtor Affiliates (the "Plan"). Pursuant to the Plan, the Debtors to seek to

assign their rights under insurance policies issued to the Debtors by Certain Insurers as follows:

- Section 6.7(a) of the Plan purports to assign any and all of the Debtors' rights
  under the insurance policies to the Funding Vehicle Trust, without Certain
  Insurers' consent, while purporting to bind Certain Insurers to all of their
  obligations under the insurance policies; and

- Section 10.1(a)(xv) of the Plan provides that the Bankruptcy Court and this Court
  shall declare that the purported assignment of the insurance policies issued by
  Certain Insurers is "valid and enforceable."

Certain Insurers believe that the foregoing Plan provisions run counter to binding

California law and impermissibly prejudge the No Assignment clauses that should be addressed

by the State Court in the Coverage Litigation. *See, e.g., Henkel Corp. v. Hartford Accident and

Indemnity Co.*, 29 Cal.4th 934 (2003). In *Henkel*, the Supreme Court of California enforced no

assignment clauses like those contained in Certain Insurers' policies against a successor

corporation. *Id.* at 938; *see also General Accident Ins. Co. v. Superior Court*, 55 Cal.App.4th

1444 (1997) (holding that a corporate successor is not entitled to seek coverage from policies

issued to its predecessor simply because the successor is held liable in tort); *Quemetco Inc. v.

Pacific Auto Ins.*, 24 Cal.App.4th 494 (1994) (enforcing no assignment provisions following the

transfer of a predecessor's insurance rights to its successor).

In the event that this Court reverses the Bankruptcy Court's preemption rulings with

respect to the No Assignment clauses, the Stipulation provides that "the Parties shall present to

the State Court for adjudication the issue of whether the Assignment is valid under the terms of

the Policies and applicable state law." Stipulation, ¶ 7. Thus, this Court can and should reverse

the Bankruptcy Court's determination that the Bankruptcy Code preempts Certain Insurers No

- 4 -

Assignment clauses contained in their insurance policies, and the balance of the Bankruptcy

Court's rulings can be affirmed. As contemplated by the Stipulation, Certain Insurers' disputes

with the Debtors can and should be resolved as part of the on-going Coverage Litigation

initiated by the Debtors in the State Court prior to the Petition Date.

## Argument

## I.    AS A FUNDAMENTAL PRINCIPLE OF BANKRUPTCY LAW, RIGHTS AND OBLIGATIONS IN BANKRUPTCY ARE GENERALLY DETERMINED BY STATE LAW UNLESS CONGRESS EXPRESSLY PROVIDES OTHERWISE.

Since enactment of the Bankruptcy Code in 1978, the Supreme Court of the United States

has been clear that "Congress has generally left the determination of property rights in the assets

of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979) (holding that

question of whether a security interest in real property extends to rents and profits should be

resolved by reference to state law, not some federal rule of equity). As the Supreme Court went

on to explain in *Butner*:

> Property interests are created and defined by state law. Unless
> some federal interest requires a different result, there is no reason
> why such interests should be analyzed differently because an
> interested party is involved in a bankruptcy proceeding. Uniform
> treatment of property interests by both state and federal courts
> within a State serves to reduce uncertainty, to discourage forum
> shopping, and to prevent a party from receiving "a windfall merely
> by reason of the happenstance of bankruptcy."

*Id.* at 55 (quoting *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 608 (1961)) (underlining

added). This fundamental principle of bankruptcy law has been repeatedly affirmed by the

Supreme Court in subsequent years.[2] The United States Court of Appeals for the Third Circuit

regularly applies the Supreme Court's *Butner* analysis.[3]

---

[2] *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 764 (1992) ("[O]ur decision today ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status [which] minimizes the

(continued...)

Thus, there can be no doubt that, unless Congress has specifically provided otherwise in the Bankruptcy Code, the rights and obligations of Certain Insurers and the Debtors under insurance policies in which the Debtors' bankruptcy estates may have an interest must be determined by state law. Because, as discussed in Section II below, Congress did not provide for modification of the rights and obligations under insurance policies issued by Certain Insurers to the Debtors, the Bankruptcy Court's conclusion that Certain Insurers' rights were preempted by Section 1123(a)(5) must be reversed. The respective rights and obligations of the parties under such insurance policies can then be determined by the California state court presiding over the insurance coverage litigation instituted by the Debtors, as intended by Congress and mandated by the Bankruptcy Code, and as anticipated by the parties pursuant to the Stipulation.

## II.  CONGRESS DID NOT PROVIDE FOR AN ALTERATION OF RIGHTS AND OBLIGATIONS IN SECTION 1123(a)(5), EXCEPT FOR MATTERS RELATING TO A DEBTOR'S FINANCIAL CONDITION.

Section 1123(a)(5) of the Bankruptcy Code does not provide the Debtors or the Bankruptcy Court with new powers to override the rights and obligations contained in the Debtors' insurance contracts with Certain Insurers. Section 1123(a)(5) provides as follows:

> Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall –
>
> . . .

---

possibility that creditors will engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds."); *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.").

[3] *See, e.g., Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492-93 (3d Cir. 1997) ("Courts applying the *Butner* analysis have relied on its holding to conclude that 'once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law.'"); *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) ("A federal court in bankruptcy is not allowed to upend the property law of the state in which it sits, for to do so would encourage forum shopping and allow a party to receive 'a windfall merely by reason of the happenstance of bankruptcy.'"); *In re Roach*, 824 F.3d 1370, 1373-74 (3d Cir. 1987), *rehrg. en banc denied* ("We begin with 'the basic assumption that Congress did not intend to displace state law.'").

> (5) provide adequate means for the plan's implementation, such as
>
> . . .
>
> (B) transfer of all or any part of property of the estate to one or
> more entities, whether organized before or after the confirmation
> of such plan.

11 U.S.C. § 1123(a)(5). The Plan Supporters[4] read this subsection to grant sweeping authority to

obviate existing state law and re-write insurance polices to their liking. The Plan Supporters are

wrong. Their interpretation ignores the legislative history, ignores the only court of appeals

decision to address this question, and ignores the limited scope of preemption contained

elsewhere in the Bankruptcy Code.

## A. Preemption of State Law by the Bankruptcy Code is the Exception, Not the Rule, and Must be Explicit or Compelled by an Unavoidable Conflict.

As the Third Circuit explained in *Integrated Solutions, Inc. v. Service Support*

*Specialties, Inc.*, "the usual rule is that congressional intent to pre-empt will not be inferred

lightly. Pre-emption must be either explicit, or compelled due to an unavoidable conflict

between state law." 124 F.3d 487, 491 (3d Cir. 1997) (quoting *In re Roach*, 824 F.2d 1370, 1373

(3d Cir. 1987), *rehrg. en banc denied*). The Third Circuit begins any preemption analysis in the

bankruptcy context with "the basic assumption that Congress did not intend to displace state

law." *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 272-73 (3d

Cir. 1984); *see also Integrated Solutions*, 124 F.3d at 491; *Roach*, 824 F.2d at 1373. In *Roach*,

the Third Circuit explained the goal of these rules as follows:

> Our task is to ascertain and give effect to congressional intent.
> However, we must approach that task with the realization that the
> Bankruptcy Code was written with the expectation that it would be

---

[4] The Plan Supporters are the Debtors, the Official Committee of Unsecured Creditors, the Statutory
Committee of Asbestos Claimants, the Official Committee of Retired Employees, Martin J. Murphy, as Legal
Representative of Future Asbestos Claimants, and Anne M. Farrazi, as Legal Representative of Silica and Coal Tar
Pitch Volatiles Claimants.

> applied in the context of state law and that federal courts are not
> licensed to disregard interests created by state law when that
> course is not clearly required to effectuate federal interests.

824 F.2d at 1374. "Thus," the Third Circuit has held, "under *Roach*, we adopted a <u>restrained</u>

<u>approach</u> to concluding that Congress has intended to preempt state law in the bankruptcy

context." *Integrated Solutions*, 124 F.3d at 492 (underlining added). This restrained approach

can lead to no other conclusion except that Congress has not called for preemption of anti-

assignment provisions in insurance contracts in Section 1123(a)(5).[5]

**B.     The Phrase "Notwithstanding Any Otherwise Applicable Nonbankruptcy
         Law" in Section 1123(a) is Limited to Laws "Relating to Financial
         Condition".**

The United States Court of Appeals for the Ninth Circuit has already held that Section

1123(a)(5) does not preempt applicable nonbankruptcy law, except to the extent such

nonbankruptcy law relates to the "financial condition" of the debtor. *See Pacific Gas & Electric*

*Co. v. California*, 350 F.3d 932, 934-35 (9th Cir. 2003) (hereinafter, "*PG&E*"). To reach that

conclusion, the Ninth Circuit considered the interaction of Section 1123(a) with Section 1142(a)

of the Bankruptcy Code. *See id.* While Section 1123(a) sets forth the items to be included in a

proposed plan of reorganization, Section 1142(a) governs how such a plan is to be implemented

after it is approved. *See id.* Reading these two related sections together, the Ninth Circuit

concluded the following:

> We hold that a reorganization plan proposed under § 1123(a)(5)
> expressly preempts otherwise applicable non-bankruptcy law only
> to the extent that such laws were already preempted before the
> addition of the "notwithstanding" clause to § 1123(a) by
> amendment in 1984. That is, we hold that the addition of the

---

[5] To the extent implicated by the Bankruptcy Court's Confirmation Order or Findings and Conclusions, Certain Insurers join in the arguments of other insurers that there is no "conflict" preemption of the insurers' anti-assignment rights. *See Brief of Appellants, Republic Indemnity Company and Transport Insurance Company (f/k/a Transport Indemnity Company)*, § III.

> "notwithstanding" clause to § 1123(a) was merely a clarification
> and confirmation of the preemptive effect of a reorganization plan
> that already existed under the 1978 Bankruptcy Code.   That
> preemptive effect, expressly stated in the "notwithstanding" clause
> of § 1142(a), was limited to otherwise applicable nonbankruptcy
> laws "relating to financial condition."

*Id.* at 934-35 (underlining added).

The legislative history and structure of the Bankruptcy Code provide overwhelming

evidence to support the Ninth Circuit's conclusion. Sections 1123(a) and 1142(a), two

Bankruptcy Code sections with "deep roots," were enacted at the same time as part of the

Bankruptcy Code in 1978. *See id.* at 938, 940. At the time of its enactment in 1978, Section

1142(a) provided for limited preemption by providing as follows:

> Notwithstanding any otherwise applicable nonbankruptcy law,
> rule, or regulation relating to financial condition, the debtor and
> any entity organized or to be organized for the purpose of carrying
> out the plan shall carry out the plan and shall comply with any
> orders of the court.

11 U.S.C. § 1142(a) (underlining added). In 1978, when Section 1123(a) was enacted by

Congress, that section contained no such "notwithstanding" language. *PG&E*, 350 F.3d at 940.

Shortly thereafter, Congress recognized the need "to correct technical errors, clarify and

make minor substantive changes" to the Bankruptcy Code "because of the last-minute process of

change through which the bill went when considered at the closing sessions of the 95th

Congress." H.R. Rep. No. 96-1195, at 1 (1980) (quoted by *PG&E*, 350 F.3d at 939).

Ultimately, the changes adopted by Congress in 1984 included adding the phrase

"[n]otwithstanding any otherwise applicable nonbankruptcy law" to the introduction of Section

1123(a), and changing the word "execution" to "implementation" of the plan in both Sections

1123(a) and 1142(a). 350 F.3d at 940, 942. Thus, Senator DeConcini could report to the Senate

as it voted on these amendments as follows:

> Section 1123 is also intended to indicate that <u>a plan may provide</u>
> <u>for any action specified in section 1123 in the case of a corporation</u>
> <u>without a resolution of the board of directors.</u>  If the plan is
> confirmed, then any action proposed in the plan may be taken
> notwithstanding any otherwise applicable nonbankruptcy law <u>in</u>
> <u>accordance with Section 1142(a)</u> of title 11.

*See id.* at 941-42 (quoting floor speech of Sen. DeConcini in his capacity as the Chair of the

Subcommittee on Improvements in Judicial Machinery of the Senate Judiciary Committee)

(underlining added).  Moreover, "[i]n each case the change proposed is consistent with policies

adopted by Congress in its enactment of the Bankruptcy Reform Act" in 1978.  H.R. Rep. No.

96-1195, at 1 (quoted by *PG&E*, 350 F.3d at 939).  Based on this and other evidence, the Ninth

Circuit concluded in *PG&E* that Sections 1123(a) and 1142(a) "must be read together, and that

the express preemption of § 1123(a)(5) is limited to otherwise applicable nonbankruptcy laws

"relating to financial condition," as specified in § 1142(a)."  350 F.3d at 942.

The Ninth Circuit found support for its conclusion in fundamental principles of statutory

construction.  "The centerpiece of any preemption analysis is congressional purpose."  *Id.*  "To

determine congressional purpose, 'we look to the statute's language, structure, subject matter,

context, and history – factors that typically help courts determine a statute's objectives and

thereby illuminate its text.'"  *Id.* at 943 (quoting *Almendarex-Torres v. United States*, 523 U.S.

224 (1998)).

In searching for the congressional purpose, "we presume that Congress does not

undertake lightly to preempt state law, particularly in areas of traditional state regulation."  *Id.* at

943.  This presumption "is just as strong in bankruptcy as in other areas of federal legislative

power."  *Id.*

In *PG&E*, the debtor attempted to transfer assets subject to state regulation to an entity

that would not be regulated by state authorities after reorganization.  *See id.* at 935.  The Ninth

Circuit, like the bankruptcy court below it, rejected this "across-the-board, take-no-prisoners preemption strategy" adopted by the debtor. *See id.* at 937 (quoting the bankruptcy court's rejection of the debtor's position on the scope of Section 1123(a)(5) preemption).

Likewise, in this case, the state law sought to be preempted involves an area of long-standing and pervasive state regulation. *See* 15 U.S.C. § 1012 (the "McCarran-Ferguson Act"); *see also United States v. Fabe*, 508 U.S. 491 (1993) (concluding that the automatic stay in bankruptcy did not apply to bankruptcy proceedings involving regulation of an insurance company based on the McCarran-Ferguson Act).[6]

We must also "presume, absent clear indications to the contrary, that Congress did not intend to change preexisting bankruptcy law or practice in adopting the Bankruptcy Code in 1978 or amending it in 1984" based on "a remarkably consistent series of cases" from the Supreme Court of the United States. 350 F.3d at 943. In this case, all of the evidence indicates that Congress intended to make only technical changes for the sake of consistency when it added the "notwithstanding" clause to Section 1123(a) so that it matched its companion provisions in Section 1142(a). *See id.* at 947. Simply put, "[i]t makes perfect sense that the express preemptive scope of what must be included in a confirmable plan, specified in § 1123(a), would be the same as the express preemptive scope of what is actually included in a confirmed plan, specified in § 1142(a). It also makes perfect sense that the express preemptive scope of what

---

[6] The McCarran-Ferguson Act provides as follows:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . .

15 U.S.C. § 1012.

must be in a confirmable and confirmed plan would be laws 'relating to financial condition.'"
*Id.* at 947-48.

## C.    The Third Circuit Did Not Hold Otherwise in *Combustion Engineering*.

The Plan Supporters have already asserted in papers filed with this Court that this Court
should ignore the Ninth Circuit's rationale and holding in *PG&E* because, they erroneously
claim, the Third Circuit already decided that Section 1123(a)(5) preempts the anti-assignment
claim, the Third Circuit already decided that Section 1123(a)(5) preempts the anti-assignment
provisions of insurance policies in *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004)
(hereinafter, "*Combustion Engineering*"). This argument, plucked from the end of a footnote in
a 60-page opinion, is wrong.

In *Combustion Engineering*, the debtor attempted to channel claims against it and two
non-debtor affiliates, Lummus and Basic, to a Section 524(g) trust. The London Market Insurers
that issued policies to Lummus and Basic objected that the bankruptcy court did not have the
jurisdiction to channel non-derivative claims against non-debtors to the trust because Lummus
and Basic's interest in insurance policies was not property of the Combustion Engineering
bankruptcy estate pursuant to Section 541 of the Bankruptcy Code. 391 F.3d at 218-19.

In the context of concluding that the London Market Insurers had appellate standing to
raise this issue, the Third Circuit noted that "even if the subject insurance policies purported to
prohibit assignment of Combustion Engineering's insurance proceeds, these provisions would
not prevent the assignment of proceeds <u>to the bankruptcy estate</u>." *Id.* at 218 (underlining added).
In a footnote attached to this statement, the Third Circuit explains that "<u>Section 541</u> effectively
<u>preempts</u> any contractual provision that purports to limit or restrict the rights of a debtor to
transfer or assigns [*sic*] its interests in bankruptcy." *Id.* at 218-19 n.27 (underlining added).
Section 541(c)(1), the subsection quoted in *Combustion Engineering*, provides that "an interest
of the debtor becomes <u>property of the estate</u> . . . notwithstanding any provision in an agreement,

- 12-

transfer instrument, or applicable nonbankruptcy law . . . that restricts or conditions transfer of such interest by the debtor." *Id.* at 219 (underlining added; italics removed). The reference to Section 1123(a)(5) in the same footnote, relied upon so heavily by the Plan Supporters in this case, is merely offered as a citation for the proposition that the "Bankruptcy Code expressly contemplates inclusion of debtor insurance policies in the bankruptcy estate." *Id.* (underlining added). Thus, all the Third Circuit did in *Combustion Engineering* was to acknowledge the non-controversial point that "the estate is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case." *Id.* (quoting legislative history and 11 U.S.C. § 541(a)(1)).

Of course, this does not say anything about what a debtor-in-possession can do with that property interest after it becomes part of the estate. "To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal to the debtor are not effective against the estate." *Id.* (quoting legislative history).

The Third Circuit has already explained this distinction between what comes into the bankruptcy estate, on the one hand, and what the bankruptcy estate may do with that interest thereafter, on the other hand. In *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, the Court of Appeals observed that "numerous courts have concluded that '[s]ection 541 eliminated the requirement that property must be transferable or subject to process in order to become initially part of the estate.'" 124 F.3d 487, 491 (3d Cir. 1997) (quoting *In re Geise*, 992 F.2d 651, 655 (7th Cir. 1993) and collecting cases) (underlining added). "These courts have clearly found that state laws restricting the transfer or assignment of property, including causes of action and personal injury claims, do not preclude the property from passing to the bankrupt's

estate under § 541." *Id.* Thus, the Third Circuit was able to hold "that state laws prohibiting the assignment or transfer of property, including causes of action and tort claims, do not prevent the inclusion of such property in the bankruptcy estate." *Id.*

This conclusion, however, did not mean that the bankruptcy estate in *Integrated Solutions* was then free to assign such estate property as part of its reorganization in contravention of applicable nonbankruptcy law. "Courts applying the *Butner* analysis [440 U.S. 48, 54-55] have relied on its holding to conclude that 'once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." *Id.* at 492 (quoting *In re American Freight Sys., Inc.*, 179 B.R. 952, 960 (Bankr. D. Kan. 1995) and collecting cases) (underlining added). "In other words, without explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy." *Id.* at 493 (citing *Collier on Bankruptcy* noting that "[a]lthough [section 541(a)(1)] includes choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case" (underlining added)).

Tellingly, in *Integrated Solutions*, even though the Third Circuit concluded that a non-assignable interest could come into the estate based on federal preemption by Section 541 of the Bankruptcy Code (as in *Combustion Engineering*), the Court of Appeals forbade assignment of that interest from the bankruptcy estate. *Id.* at 495-96. "Because both Code provisions relied upon by Integrated fail to explicitly express Congress's intent to supersede state law restrictions on the transfer of estate property, Integrated's preemption claim is rendered wholly unconvincing, especially in light of our strong presumption against inferring Congressional preemption in the bankruptcy context." *Id.* at 493 (citing *Roach*, 824 F.2d at 1373-74).

As explained by the Court of Appeals, its holding in *Integrated Solutions* upholds the

fundamental bankruptcy principle set down by the Supreme Court in *Butner* and its progeny, as

follows:

> [B]y refusing to find preemption of state law restrictions on the
> transferability of estate property, we are giving effect to an equally
> important purpose of the Bankruptcy Code: namely, upholding the
> fundamental principle that the estate succeeds only to the nature
> and the rights of the property interest that the debtor possessed pre-
> petition. Indeed, <u>were we to find federal preemption of the state
> law restrictions at issue here, the trustee would possess *greater*
> rights in the property interest than the debtor</u>. Clearly, unless the
> Code expressly indicates an intention to augment the rights and
> nature of the property interest in bankruptcy, <u>the trustee only
> succeeds to the same rights the debtor possessed in the property
> prepetition</u>.

124 F.3d at 495 (underlining added).

Based on the foregoing, it cannot be said that the Third Circuit – in *Combustion*

*Engineering, Integrated Solutions*, or elsewhere – has adopted the kind of "across-the-board,

take-no-prisoners preemption strategy" already rejected by the Ninth Circuit. *See PG&E*, 350

F.3d at 937. Such a rule would be inconsistent with the fundamental bankruptcy principle

articulated by the Supreme Court in *Butner* and its progeny. *See, e.g.,* 440 U.S. at 55.

### D.     Other Specific Provisions of the Bankruptcy Code Limit the Circumstances When Preemption Occurs.

When Congress provides for preemption in the Bankruptcy Code, it does so explicitly.

For example, Congress has provided that an <u>executory</u> contract may be assumed and assigned to

a third party by the debtor in possession, except in certain circumstances. *See* 11 U.S.C. §

365(c). If the insurance policies are executory – an issue not ruled upon by the Bankruptcy

Court – then the Debtors must comply with Section 365. If the policies are non-executory, the

Plan Supporters would have this Court rule that a non-executory contract may be freely assigned

to a third party, despite the absence of any specific provision of the statute overriding applicable

nonbankruptcy law. *Cf. Dewsnup v. Timm*, 502 U.S. 410, 417, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.' Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."). The Plan Supporters approach flies in the face of basic rules of statutory construction and the Supreme Court's approach to interpretation of the Bankruptcy Code.

Congress was also explicit and narrow in the preemptive effect of a debtor-in-possession's right to use, sell, or lease property of the bankruptcy estate during the pendency of the case. In Section 363(l) of the Bankruptcy Code, Congress provided that a debtor-in-possession could use, sell, or lease property, or a plan could provide for the use, sale, or lease of property, "notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in such property." 11 U.S.C. § 363(l).

In each instance, Congress is explicit and narrow in the scope of its preemption. Additionally, the nature and extent of any preemption makes sense when "the overall structure of the Code" is considered. *Cf. PG&E*, 350 F.3d at 947. Like the preemptive scope of Section 1142(a), preemption under Sections 365 and 363 relates to the debtor's financial condition or the fact of bankruptcy. Precluding a counterparty from escaping its obligations just because of bankruptcy furthers the remedial purposes of the Bankruptcy Code. Neither the debtor's

bankruptcy estate, nor its counterparties, should receive "'windfall merely by reason of the happenstance of bankruptcy.'" *Butner,* 440 U.S. at 55 (quoting *Lewis*, 364 U.S. at 608). The typical insurance policy is consistent with this rule by providing that the insured's insolvency does not relieve the insurer from its obligations. But what the Plan Supporters seek in this case is sweeping preemption, broader than anything provided by Section 1142(a) or elsewhere in the Bankruptcy Code, that permits them to re-write the insurance policies and ignore the restrictions imposed by California state insurance law. Such a rule would turn fundamental bankruptcy principles, *see id.*, and principles of federalism on their head. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1973) (noting that the presumption against preemption "provides assurance that 'the federal-state balance,' [citation omitted] will not be disturbed unintentionally by Congress or unnecessarily by the courts").

## III.   EVEN IF THE PREEMPTIVE SCOPE OF SECTION 1123(a) IS BROADER THAN UNDER SECTION 1142(a), THE SCOPE OF PREEMPTION SOUGHT HERE VIOLATES THE CONSTITUTION.

Even if this Court concludes that the preemptive scope of Section 1123(a)'s language is broader than matters "relating to financial condition" covered by the parallel provisions of Section 1142(a) (which it is not), the scope of preemption sought by the Plan Supporters in this case far exceeds the constitutional scope of the Bankruptcy Court's power. "Proper respect . . . for the independent sovereignty of the several States requires that federal supremacy be invoked only where it is clear that Congress so intended. Statutes should therefore be construed to avoid pre-emption, absent an unmistakable indication to the contrary." *Roach*, 824 F.2d at 1373 (quoting *Penn Terra*, 733 F.2d at 273).

In this case, the Plan Supporters wish this Court to conclude that Section 1123(a) grants the Debtors and the Bankruptcy Court a roving commission to re-write contracts and excise applicable nonbankruptcy law from the books. In the Plan Supporters' view, the anti-assignment

provisions of Certain Insurers' insurance contracts have been removed and the decisions of the

California courts such as *Henkel*, 29 Cal.4th 934, no longer exist. Such limitless power far

exceeds the mandate of an Article I court like the Bankruptcy Court. *Cf. Integrated Solutions*,

124 F.3d at 492 n.3 ("[S]ince bankruptcy is a field traditionally occupied by the states, there

must be a 'sharp' conflict between state law and federal policy before we may conclude that

federal law preempts state law in the bankruptcy context."). Indeed, wrenching away Certain

Insurers' contract rights in this fashion constitutes an unconstitutional "taking" under the Fifth

Amendment. *Cf. Dewsnup*, 502 U.S. at 419 (1992) (citing *Louisville Joint Stock Land Bank v.*

*Radford*, 295 U.S. 555, 594 (1935), where the Court invalidated the Frazier-Lemke Act under the

Takings Clause) ("[T]o attribute to Congress the intention to grant a debtor the broad new

remedy against allowed claims . . . without the new remedy's being mentioned somewhere in the

Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic

bankruptcy principles."). At the very least, broad preemption of contracts in the insurance

context – long an area of particular concern and regulation by the States, *cf.* 15 U.S.C. § 1012 –

flies in the face of federalism principles and should be rejected. *Cf. Consolidated Rail Corp. v.*

*Reading Co.*, 654 F.Supp. 1318, 1326 (Sp. Ct. R.R.R.A. 1987) (citing *Penn Dairies v. Milk*

*Control Comm'n*, 318 U.S. 261, 275 (1943)) ("Considerations of federalism dictate that where a

court is uncertain about Congress' intent it should hesitate to find preemption.").

.

## CONCLUSION

The Bankruptcy Court's rulings on preemption of Certain Insurers' contract rights

pursuant to Section 1123(a)(5) of the Bankruptcy Code (a) attempt to override Certain Insurers'

insurance contracts with the Debtors in violation of the fundamental bankruptcy principles; (b)

ignore canons of statutory construction in reading new powers for the debtor-in-possession and

the Bankruptcy Court into Section 1123(a)(5) not intended by Congress; and (c) ignore the

constitutional and statutory limits on the Bankruptcy Court's Article I power.  Therefore, the

Bankruptcy Court's determination of federal preemption should be reversed, and the balance of

the Bankruptcy Court's rulings can be affirmed.  The question of the enforceability of Certain

Insurers' No Assignment clauses in this context should be resolved after Plan confirmation as

part of the Coverage Litigation initiated by the Debtors in the State Court pursuant to the

Stipulation.

Dated: April 17, 2006
      Wilmington, Delaware

                          Respectfully submitted,

                             /s/ Carmella P. Keener
                          Carmella P. Keener (DSBA No. 2810)
                          ROSENTHAL, MONHAIT & GODDESS, P.A.
                          919 Market Street, Suite 1401
                          Citizens Bank Center
                          Wilmington, Delaware 19801
                          ckeener@rmgglaw.com
                          Telephone:  302-656-4433

                          Rodney L. Eshelman
                          Alison V. Lippa
                          Raymond J. Tittmann
                          CARROLL, BURDICK & McDONOUGH LLP
                          44 Montgomery Street
                          San Francisco, California 94101
                          Telephone:  415-989-5900
                          Facsimile:  415-989-0932

Lewis S. Rosenbloom
David C. Christian II
Mohsin N. Khambati
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606-5096
Telephone:  312-372-2000
Facsimile:  312-984-7700

ATTORNEYS FOR COLUMBIA CASUALTY
COMPANY, TRANSCONTINENTAL
INSURANCE COMPANY, HARBOR
INSURANCE COMPANY, AND CONTINENTAL
INSURANCE COMPANY

-and-

Michael G. Gallerizzo (DSBA No. 4550)
Gebhardt & Smith LLP
901 Market Street, Suite 451
Wilmington, Delaware 19801
Telephone:  302-656-9002

Harry Lee
John O'Connor
George R. Calhoun, V
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  202-429-6226
Facsimile:  202-261-0610

ATTORNEYS FOR TIG INSURANCE
COMPANY, AS SUCCESSOR BY MERGERS TO
INTERNATIONAL SURPLUS LINES
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006, I electronically filed with the Clerk of the Court **OPENING MEMORANDUM OF COLUMBIA CASUALTY COMPANY, TRANSCONTINENTAL INSURANCE COMPANY, HARBOR INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, AND TIG INSURANCE COMPANY, AS SUCCESSOR BY MERGERS WITH INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, REGARDING APPEAL AND REQUEST FOR *DE NOVO* REVIEW OF ALLEGED STATUTORY PREEMPTION OF INSURERS' RIGHTS AND DEBTORS' OBLIGATIONS UNDER INSURANCE POLICIES** using CM/ECF which will send notification of such filing to the following:

Daniel J. DeFrancheschi, Esquire
Jason Michael Madron, Esquire
Kimberly D. Newmarch, Esquire
Richards, Layton &Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

William P. Bowden, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899

Mark Thomas Hurford, Esquire
Campbell & Levine
800 N. King Street
Suite 300
Wilmington, DE  19801

Laurie Schenker Polleck, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE  19801

Paul J. Doherty, III, Esquire
Gebhardt & Smith, LLP
901 Market Street
Suite 451
Wilmington, DE  19806

Richard William Riley, Esquire
Duane Morris LLP
1100 N. Market Street
Suite 1200
Wilmington, DE  19801

Thomas Gerard Whalen, Jr., Esquire
Stevens & Lee
1105 N. Market Street
7th Floor
Wilmington, DE  19801

Jennifer L. Scoliard, Esquire
Klehr, Harrison, Harvey, Branzburg
  & Ellers
919 Market Street
Suite 1000
Wilmington, DE  19801

Sharon Matava Zieg, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Daniel K. Hogan, Esquire
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE  19806


        In addition, the foregoing document was also served via electronic mail upon all counsel listed on the attached Core Group List dated February 7, 2006 at the electronic mail addresses listed thereon.


                              s/ Carmella P. Keener (DSBA No. 2810)
                              ROSENTHAL, MONHAIT & GODDESS, P.A.
                              919 N. Market Street, Suite 1401
                              Citizens Bank Center
                              Wilmington, Delaware 19801
                              Telephone:  302-656-4433
                              ckeener@rmgglaw.com
                              ATTORNEYS FOR COLUMBIA CASUALTY
                              COMPANY, TRANSCONTINENTAL INSURANCE
                              COMPANY, HARBOR INSURANCE COMPANY, AND
                              CONTINENTAL INSURANCE COMPANY


CHI99 4618303-4.059218.0062

**In Re: Kaiser Aluminum Corporation, et al.**
**Core Group List Dated: February 7, 2006**

### Office of the United States Trustee

David M. Klauder
Richard Schepecarter
Office of the United States Trustee
844 King Street, Room 2311
Wilmington, DE 19801
Facsimile No.: 302-573-6497
E-mail: david.klauder@usdoj.gov
E-mail: Richard.Schepacarter@usdoj.gov

### Outside Counsel to the Debtors

Gregory M. Gordon
Jones Day
2727 North Harwood St.
Dallas, TX 75201
E-mail: gmgordon@jonesday.com

Daniel P. Winikka
Jones Day
2727 North Harwood St.
Dallas, TX 75201
E-mail: dpwinikka@jonesday.com

Nick Bowen
Jones Day
2727 North Harwood St.
Dallas, TX 75201
E-mail: nbowen@jonesday.com

### Delaware Counsel to the Debtors

Daniel J. DeFranceschi
Kimberly D. Newmarch
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
E-mail: defranceschi@rlf.com
E-mail: newmarch@rlf.com

### The Debtors

Edward F. Houff
Leigh Ann Clifford
Jennifer Kane
Emergence Strategies LLC
1200 Smith Street, Suite 1600
Houston, TX 77002
E-mail:
leighann.clifford@kaiseraluminum.com
E-mail: jj.kane@kaiseraluminum.com

John Donnan
Kaiser Aluminum Corporation
27422 Portola Parkway, Suite 350
Foothill Ranch, CA 92610-2831
E-mail: john.donnan@kaiseraluminum.com

### Outside Counsel to the Official
### Committee of Unsecured Creditors

Lisa Beckerman
Akin Gump Strauss Hauer & Feld LLP
590 Madison Ave.
New York, NY 10022
E-mail: lbeckerman@akingump.com

Brian Kilmer
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana, 44th Floor
Houston, TX 77002
E-mail: bkilmer@akingump.com

### Delaware Counsel to the Official
### Committee of Unsecured Creditors

William P. Bowden
Ashby & Geddes
222 Delaware Ave.
P.O. Box 1150
Wilmington, DE 19899
E-mail: wbowden@ashby-geddes.com

**Counsel to the DIP Lenders**

Timothy R. Pohl
Chris L. Dickerson
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Chicago, IL 60606
E-mail: tpohl@skadden.com
E-mail: cdickers@skadden.com

**Outside Counsel to the Official
Committee of Asbestos Claimants**

Elihu Inselbuch
Rita Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
E-Mail: ei@capdale.com

Peter Van N. Lockwood
Ronald R. Reinsel
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005-5802
E-Mail: pvnl@capdale.com
E-Mail: rer@capdale.com

**Delaware Counsel to the Official
Committee of Asbestos Claimants**

Marla R. Eskin
Mark T. Hurford
Campbell & Levine, LLC
800 King Street, Suite 300
Wilmington, DE 19801
E-mail: mre@camlev.com
E-Mail: mth@camlev.com

**Outside Counsel to the Official
Committee of Retired Salaried Employees**

Frederick D. Holden, Jr.
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
E-mail: fholden@orrick.com

**Delaware Counsel to the Official
Committee of Retired Salaried Employees**

Frederick B. Rosner
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE 19801
E-mail: frosner@jshllp-de.com

**Counsel to the Legal Representative for
Future Asbestos Claimants**

Sharon Zieg
Timothy P. Cairns
Erin D. Edwards
Young Conaway Stargatt & Taylor
P.O. Box 391
The Brandywine Building, 1000 West St.,
17th Floor
Wilmington, DE 19801-0391
E-mail: szieg@ycst.com
E-mail: tcairns@ycst.com
E-mail: eedwards@ycst.com

**Legal Representative for Future Asbestos
Claimants**

Martin J. Murphy
Davis & Young
1700 Midland Blvd 101 Prospect Ave.
Cleveland, OH 44115-1027
E-mail: mmurphy@davisyoung.com

RLF1-2985948-1

### Outside Counsel for MAXXAM Inc.

Alan Gover
Dewey Ballantine LLP
700 Louisiana, Suite 1900
Houston, TX 77002-2725
E-mail: agover@dbllp.com

Lisa Hill Fenning
Dewey Ballantine LLP
333 South Grand Ave., Suite 2600
Los Angeles, CA 90071
E-mail: lfenning@dbllp.com

### Delaware Counsel for MAXXAM Inc.

Eric D. Schwartz
Morris, Nichols, Arsht & Tunnell
1201 North Market St.
P.O. Box 1347
Wilmington, DE 19899-1347
E-mail: eschwartz@mnat.com

### The Debtors' Financial Advisors and Investment Bankers

Ari Lefkovits
Lazard Freres & Company LLC
30 Rockefeller Plaza, 61st Floor
New York, NY 10020
E-mail: ari.lefkovits@lazard.com

### The Debtors' Claims Agent

Kathleen M. Logan
Logan and Company
546 Valley Road
Upper Montclair, NJ 07043
E-mail: klogan@loganandco.com

### The Fee Auditor for all Professionals

Warren H. Smith
Steve Bossay
Warren H. Smith & Associates, P.C.
Republic Center
325 N. St. Paul, Suite 1275
Dallas, TX 75201
E-mail: feeaudit@whsmithlaw.com
E-mail: slbossay@whsmithlaw.com

### Legal Representative for Future Silica Claimants

Anne M. Ferazzi
Legal Representative for Future Silica Claimants
11923 Winwood
Houston, TX 77024
E-mail: ferazzi@mindspring.com

### Delaware Counsel to the Legal Representative for Future Silica Claimants

Daniel K. Hogan
1311 Delaware Avenue
Wilmington, DE 19806
E-mail: dkhogan@dkhogan.com

### Outside Counsel to the Legal Representative for Future Silica Claimants

Sander L. Esserman
Peter C. D'Apice
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, TX 75201
E-mail: esserman@sbep-law.com
E-mail: dapice@sbep-law.com

Steven A. Buxbaum, Esq.
Haynes & Boone, LLP
One Houston Center
1221 McKinney, Suite 2100
Houston TX 77010
E-mail: steven.buxbaum@haynesboone.com