IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Jointly Administered Under |
| KAISER ALUMINUM CORPORATION, | : | Bankruptcy Case No. 02-10429 (JKF) |
| a Delaware corporation, *et al.* | : | Chapter 11 |
| | : | |
| | : | |
| KAISER ALUMINUM CORPORATION, *et al.* | : | Case No. 06-mc-41 (JJF) |
| | : | |

**OPENING MEMORANDUM OF APPELLANTS, CENTURY INDEMNITY
COMPANY (SUCCESSOR TO CIGNA SPECIALTY INSURANCE COMPANY,
FORMERLY KNOWN AS CALIFORNIA UNION INSURANCE COMPANY,
AND SUCCESSOR TO CCI INSURANCE COMPANY, SUCCESSOR
TO INSURANCE COMPANY OF NORTH AMERICA, AND AS
ADMINISTRATIVE AGENT OF FORMER MEMBERS OF AFIA, INCLUDING
ST. PAUL MERCURY INSURANCE COMPANY); ACE PROPERTY &
CASUALTY COMPANY (FORMERLY KNOWN AS CIGNA PROPERTY &
CASUALTY COMPANY, FORMERLY KNOWN AS AETNA INSURANCE
COMPANY); INDUSTRIAL INDEMNITY COMPANY; INDUSTRIAL
UNDERWRITERS INSURANCE COMPANY; PACIFIC EMPLOYERS
INSURANCE COMPANY; AND CENTRAL NATIONAL INSURANCE
COMPANY OF OMAHA, BY AND THROUGH CRAVENS, DARGEN
AND COMPANY, MANAGING GENERAL AGENT**

Dated: April 17, 2006

STEVENS & LEE, P.C.

Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3304
Telecopier: (610) 371-8512
E-mail: tgw@stevenslee.com

and

Leonard P. Goldberger
PA I.D. No. 23118
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-2864
Telecopier: (610) 371-7376
E-mail: lpg@stevenslee.com

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II.  SUMMARY OF ARGUMENT .............................................................................2

III. ARGUMENT ..........................................................................................................3

    A. The Bankruptcy Court Lacked Subject Matter Jurisdiction To
       Determine Whether Rights To Receive Insurance Proceeds
       Could Be Assigned ............................................................................................3

      1. The Structure Of The Plan Separates The Policyholder
         From The Entity Liable For Claims ...........................................................3

      2. Under California Law, There Are No Rights To Receive
         Insurance Proceeds If The Policyholder Is Not Liable For
         Claims.........................................................................................................4

         (a) The Purported Rights to Receive Insurance Proceeds
            Do Not Exist Under California Law ...............................................5

         (b) Bankruptcy Cannot Create New Rights That Do Not
            Exist Under California Law ............................................................6

      3. Non-Existent Rights Cannot Constitute Property Of The
         Estate ..........................................................................................................7

      4. A Bankruptcy Court Can Only Exercise In Rem
         Jurisdiction Over Property Of The Estate ..................................................8

      5. The Improper Assignment Of Non-Existent Rights
         Creates A Direct And Adverse Impact on Insurers'
         Pecuniary Interests ....................................................................................9

    B. The Bankruptcy Court Lacked Jurisdiction To Summarily
       Adjudicate State Law Rights In The Context Of The
       Confirmation Hearing.......................................................................................11

IV. CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................12

# TABLE OF AUTHORITIES

## CASES

*1819, Ltd. v. Florida Dept. of Revenue (In re Inn on the Bay)*,
    154 B.R. 364 (Bankr. S.D. Fla. 1993) .................................................................9

*Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*,
    97 B.R. 220 (Bankr. E.D. Pa. 1989) ...............................................................7

*In re Ames Dept. Stores, Inc.*,
    1995 WL 311764 (S.D.N.Y. May 18, 1995) ...................................................7

*Baker Dev. Corp. v. Mulder (In re Mulder)*,
    307 B.R. 637 (Bankr. N.D. Ill. 2004) ...............................................................9

*Beard v. Braunstein*,
    914 F.2d 434 (3d Cir. 1990).............................................................................11

*Butner v. U.S.*,
    440 U.S. 48 (1979)...........................................................................................5

*Certain Underwriters at Lloyd's, London v. McDermott Int'l Inc.*,
    2002 U.S. Dist. LEXIS 874 (E.D. La. 2002) ...............................................6, 7

*Conxus Fin. Corp. v. Motorola, Inc. (In re Conxus Comms. Inc.)*,
    262 B.R. 893 (D. Del. 2001)............................................................................11

*In re Coupon Clearing Serv., Inc.*,
    113 F.3d 1091 (9th Cir. 1997) ..........................................................................6

*First Fidelity Bank v. McAteer*,
    985 F.2d 114 (3d Cir. 1993)..............................................................................6

*Gantman v. United Pacific Ins. Co.*,
    232 Cal. App. 3d 1560 (Cal. App. 6 Dist. 1991) ..............................................5

*Henkel Corp. v. Hartford Accident & Indem. Co.*,
    29 Cal. 4th 934 (2003) ...............................................................................10, 11

*Integrated Solutions, Inc. v. Service Support Specialties, Inc.*,
    124 F.3d 487 (3d Cir. 1997)..............................................................................6

*J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.*,
    743 F. Supp. 1157 (E.D. Pa. 1990) ..................................................................6

SL1 627197v1/026447.00002

*Javorek v. Superior Court,*
    17 Cal. 3d 629 (Cal. 1976) ..................................................................... 5

*Maxwell v. Megliola (In re march FIRST, Inc.),*
    288 B.R. 526 (Bankr. N.D. Ill. 2002) *aff'd* 293 B.R. 443 (N.D. Ill. 2003) ........................ 8

*Montrose Chemical Corp. v. Admiral Ins. Co.,*
    10 Cal. 4th 645 (1995) ........................................................................ 8

*Moody v. Amoco Oil Co.,*
    734 F.2d 1200 (7th Cir. 1984), *cert. denied,* 469 U.S. 982 (1984) ....................................... 6

*Murray v. John Hancock Mut. Life Ins. Co.,*
    165 Pa. Super. 514, 69 A.2d 182 (1949) .......................................................... 6

*In re Orion Ref. Corp.,*
    2004 Bankr. LEXIS 188 (Bankr. D. Del. 2004) ................................................... 9

*Saul Ewing Remick & Saul v. Provident Sav. Bank,*
    190 B.R. 771 (D. Del. 1996) ................................................................. 8, 9

*Tennessee Student Assistance Corp. v. Hood,*
    541 U.S. 440 (2004) .......................................................................... 8

## STATUTES

11 U.S.C. § 361(3) ................................................................................. 11

11 U.S.C. § 363(c) ................................................................................. 11

11 U.S.C. § 541 ................................................................................... 8

11 U.S.C. § 541(a)(1) .............................................................................. 8

11 U.S.C. § 541(a)(7) .............................................................................. 8

11 U.S.C. § 1123(a)(5) ........................................................................... 3, 12

28 U.S.C. § 1334(e) ............................................................................... 8

## BANKRUPTCY RULES

Fed. R. Bankr. P. 7001(2) ....................................................................... 2, 11

Fed. R. Bankr. P. 7001(9) ....................................................................... 2, 11

Fed. R. Bankr. P. 8002(n) ......................................................................... 1

SL1 627197v1/026447.00002

Fed. R. Bankr. P. 9014 ..................................................................................................................2, 11

# I. **INTRODUCTION**

Century Indemnity Company (successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company, and successor to CCI Insurance Company, successor to Insurance Company of North America, and as administrative agent of former members of AFIA, including St. Paul Mercury Insurance Company); ACE Property & Casualty Company (formerly known as CIGNA Property & Casualty Company, formerly known as Aetna Insurance Company); Industrial Indemnity Company; Industrial Underwriters Insurance Company; Pacific Employers Insurance Company; and Central National Insurance Company of Omaha, by and through Cravens, Dargen and Company, Managing General Agent (collectively, "**Insurers**"), submits this opening memorandum in support of its timely filed appeal pursuant to this Court's Memorandum Order dated April 3, 2006.

Insurers, along with other appellant insurance companies, filed their joint notice of appeal from the Confirmation Order on February 15, 2006 (Bankr. Dkt. No. 8341), within the time allowed by Rule 8002(a) of the Federal Rules of Bankruptcy Procedure, and their requests for *de novo* renew of the Confirmation Findings.

Insurers join in the Introductions, Statements of Appellate Jurisdiction, Statements of Issues Presented on Appeal, Statements of the Standard of Review, Statements of the Case, Summaries of the Argument, Arguments, Conclusions and Statements of Relief Sought sections and any other sections presented in the other appellant's opening Memoranda filed concurrently herewith in Case No. 06-mc-41 (JJF). Insurers also submit the following argument as detailed below.

## II. <u>SUMMARY OF ARGUMENT</u>[1]

The bankruptcy court erred in permitting the assignment of unspecified rights to receive insurance proceeds (as part of PI Insurance Assets) to the Funding Vehicle Trust because it lacked subject matter jurisdiction to do so.  This is based on the rather unremarkable proposition that property rights that do not exist under state law cannot rightly constitute "property of the estate," which is the predicate for the bankruptcy court's exercise of *in rem* jurisdiction.  Because the bankruptcy court erroneously recognized such non-existent property interests, it could not have exercised subject matter jurisdiction as a basis for approving the assignment.

Assuming, *arguendo*, that the bankruptcy court had jurisdiction to determine whether such purported rights to receive insurance proceeds existed in the first instance, it improperly exercised that limited jurisdiction by approving the assignment in such a summary matter.  At best, the bankruptcy court had non-core jurisdiction over a matter that entirely involves an interpretation of California insurance contract law.  Any determination of the extent of Reorganized Debtors' state law property rights required a declaratory judgment; however, declaratory judgments may only be rendered by a separate adversary proceeding pursuant to Bankruptcy Rules 7001(2) and (9). Accordingly, the bankruptcy court lacked jurisdiction to summarily decide the existence of such state law rights in the context of a confirmation hearing, which is a contested matter pursuant to Bankruptcy Rule 9014.

---

[1]    All capitalized terms not otherwise defined have the meanings as defined in the Plan.

### III. ARGUMENT

**A. The Bankruptcy Court Lacked Subject Matter Jurisdiction To Determine Whether Rights To Receive Insurance Proceeds Could Be Assigned**

The bankruptcy court's approval of the assignment of rights to receive insurance proceeds was based on a fundamentally-flawed premise: That Reorganized Debtors have rights to receive insurance proceeds with respect to Channeled Personal Injury Claims that can *only* be asserted against the Funding Vehicle Trust. They do not. Because there are no such rights to receive insurance proceeds under applicable California law, they can not become "property of the estate" that can be transferred under section 1123(a)(5) of the Bankruptcy Code. If such rights cannot exist as a matter of applicable state law, then they cannot be assigned. Accordingly, the bankruptcy court lacked subject matter jurisdiction to adjudicate whether state law-based restrictions on their assignability were pre-empted by federal law.

**1. The Structure Of The Plan Separates The Policyholder From The Entity Liable For Claims**

Fundamentally, the bankruptcy court erred in holding that, notwithstanding the structure of the Plan, Reorganized Debtors had *any* rights to receive insurance proceeds with respect to Channeled Personal Injury Claims that could *only* be asserted against the Funding Vehicle Trust.

The Plan effects the cleavage between the entity that owns the underlying insurance policies (*i.e.*, Reorganized Debtors) from the entity that may ultimately be liable for any otherwise covered claims (*i.e.*, the Funding Vehicle Trust). Outside of bankruptcy, an insurance policy provides coverage (subject to the policy terms and conditions) only for claims that can be asserted against the policyholder. This unity is the

3

basis upon which the economics of insurance coverage is predicated. Stated another way, an insurance policy does not provide the policyholder with coverage against claims for which it can never be held liable. In order for rights to receive insurance proceeds to exist at all, the policyholder must be liable for the claims.

That is exactly what is *not* happening under the Plan. While Reorganized Debtors are retaining the insurance policies, the Funding Vehicle Trust has assumed liability for all Channeled Personal Injury Claims that purportedly would trigger rights to receive insurance proceeds. However, because the Plan provides that Reorganized Debtors will have no further liability for such claims, there can *never* be rights to insurance proceeds for claims that will *never* be asserted against them. It is this Plan-created cleavage, and the resulting insulation of Reorganized Debtors from further liability for any such Channeled Personal Injury Claims, that precludes any rights to receive insurance proceeds.[2]

### 2. Under California Law, There Are No Rights To Receive Insurance Proceeds If The Policyholder Is Not Liable For Claims

While recognizing that the insurance policies remained with Reorganized Debtors, but that all further liability for Channeled Personal Injury Claims was transferred entirely to the Funding Vehicle Trust, the bankruptcy court erred because it recognized rights to receive insurance proceeds on account of claims for which Reorganized Debtors would never be liable by either judgment or settlement. Transcript of Confirmation Hearing, January 9, 2006 ("Tr.") at 65. Under California law, without

---

[2]    By voting overwhelmingly to approve the Plan, the claimant-beneficiaries of the Funding Vehicle Trust voluntarily accepted the clearly disclosed risk that the Plan will vitiate any insurance coverage that might otherwise be available from non-settling insurers. *See* Disclosure Statement at 111-12.

4

the possibility of liability for any such claims, Reorganized Debtors could never have any rights to receive insurance proceeds.

### (a) The Purported Rights to Receive Insurance Proceeds Do Not Exist Under California Law

Property interests are created and defined by state law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). Under California law, Reorganized Debtors would *never* be entitled to receive insurance proceeds because they would never become "legally obligated to pay." *See Javorek v. Superior Court*, 17 Cal. 3d 629, 641 (Cal. 1976) ("The insurer has no duty to pay until the insured becomes 'legally obligated to pay as damages' a sum of money . . . . If it is determined that [the insured] has no liability, the insurer's liability never accrues."). The structure of the Plan guarantees this result as all liability for Channeled Personal Injury Claims that might otherwise conceivably trigger rights to receive insurance proceeds has now been channeled to the Funding Vehicle Trust.

This result is further guaranteed by the "real party in interest" rule under California law. Reorganized Debtors are not eligible to file a claim under their policies for claims that can only be asserted against the Funding Vehicle Trust. Moreover, because the Funding Vehicle Trust is not an insured under the policies (in that the policies themselves have been retained by Reorganized Debtors and not assigned to the Funding Vehicle Trust), the Funding Vehicle Trust could not make a claim under the policies. *See Gantman v. United Pacific Ins. Co.*, 232 Cal. App. 3d 1560 (Cal. App. 6 Dist. 1991). Reorganized Debtors are simply not the "real party in interest" for Channeled Personal Injury Claims that can only be asserted against the Funding Vehicle Trust.

SL1 627197v1/026447.00002

### (b) Bankruptcy Cannot Create New Rights That Do Not Exist Under California Law

By recognizing a right to receive insurance proceeds that does not otherwise exist under state law, the bankruptcy court improperly purports to create new rights by re-writing the terms of the insurance policies and imposing liability against insurers even though their policyholder could never be "legally obligated to pay."[3]

Bankruptcy can not be used to expand pre-petition property rights. *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997); *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993). Notwithstanding what the Plan purports to do, a bankruptcy court cannot alter or enlarge an insurer's contractual obligations. *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997) ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied*, 469 U.S. 982 (1984) (the Bankruptcy Code is not intended to expand debtor's rights against others more than they exist at the commencement of the case).

Moreover, a contract of insurance cannot be modified without the consent of all parties. *J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.*, 743 F. Supp. 1157, 1170 (E.D. Pa. 1990); *Murray v. John Hancock Mut. Life Ins. Co.*, 165 Pa. Super. 514, 516, 69 A. 2d 182, 183 (1949). Nor can a debtor "unilaterally impose coverage terms on [the insurers] ..." *Certain Underwriters at Lloyd's, London v. McDermott Int'l Inc.*, 2002 U.S. Dist.

---

[3]  The bankruptcy court's fundamental misconception about this point is illuminated by its statement that, "... I just don't see how a contract right isn't a contract right, just because it has not become finite in that the proceeds are not in an account doesn't mean that the right to receive those proceeds doesn't exist on the date of filing." Tr. at 57. This erroneous view fails to recognize that California law requires that an insured must first become "legally obligated to pay" before such rights to receive insurance proceeds ever comes into existence. Even for claims that were known on the date of filing, until the insured become "legally obligated to pay," no right to receive insurance proceeds yet existed. Certainly with respect to unknown, unasserted, future claims, no such right existed on the date of filing.

6

Lexis 874* 32 (E.D. La. 2002); *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 97 B.R. 220, 221 (Bankr. E.D. Pa. 1989), *aff'd sub. nom., Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R. 411 (E.D. Pa. 1989) ("[W]e do not believe that our equitable powers under [11 U.S.C.] sec. 105(a) or otherwise, can stretch so far as to alter contractual rights established under state law in a manner not expressly authorized by the Bankruptcy Code..."); *In re Ames Dept. Stores, Inc.*, 1995 WL 311764 (S.D.N.Y. May 18, 1995) (bankruptcy court does not have the authority to rewrite the terms of an insurance policy and impose requirements upon the insurer which were not part of the parties' bargains).

The bankruptcy court improperly attempts to modify the insurance policies by conflating an insured's right to file a claim under the policy when it is first notified of the claim with an insurer's obligation to pay that claim. Tr. at 65. In doing so, the bankruptcy court improperly expands insurers' obligations by eliminating the requirement for an insured's "legal obligation to pay" and triggering the insurer's obligation to pay soley upon receipt of notice of the claim. There is simply no support for this proposition under California law. Accordingly, the bankruptcy court erred by attempting to unilaterally modify insurance policies in order to create rights to receive insurance proceeds that did not – and could not – exist under California law.

### 3. Non-Existent Rights Cannot Constitute Property Of The Estate

Non-existent property rights could never constitute "property of the estate" because they neither existed on the date of filing for bankruptcy nor could they have arisen since.

Section 541 of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property *as of the commencement of the case*." 11 U.S.C. § 541(a)(1) (emphasis added).  As of the commencement of the case, Debtors had no rights to receive insurance proceeds because they had not become legally obligated to pay any of such unliquidated claims -- and certainly not any unasserted future claims. *See Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 663 (1995) (holding that insurers only have contractual duty to pay judgments that insured becomes legally obligated to pay on account of bodily injury or property damages caused by insured); *Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526, 530 (Bankr. N.D. Ill. 2002) *aff'd* 293 B.R. 443 (N.D. Ill. 2003) ("No one has a property interest in the proceeds of the insurance policies unless and until there is a judgment requiring that the insurers issue payment.").  Nor, under California law, could purported rights to receive insurance proceeds for Channeled Personal Injury Claims – that can now *only* be asserted against the Funding Vehicle Trust – ever become "property of the estate" under section 541(a)(7) of the Bankruptcy Code.

Because such purported rights never existed as of the commencement of the case, nor could they have arisen during the case, they could never become "property of the estate" under section 541(a) of the Bankruptcy Code.

### 4. A Bankruptcy Court Can Only Exercise *In Rem* Jurisdiction Over Property Of The Estate

A bankruptcy court has *in rem* jurisdiction over property of the estate. 28 U.S.C. § 1334(e); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004).  Its jurisdiction does not extend to purported rights that neither exist under state law nor could ever become "property of the estate." *See Saul Ewing Remick & Saul v. Provident*

8

*Sav. Bank*, 190 B.R. 771, 776 (D. Del. 1996) ("[A] court has related to jurisdiction over property only when the property is part of the bankruptcy estate."); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 645 (Bankr. N.D. Ill. 2004) ("Disputes between third parties over property that is not part of the estate are not related to the bankruptcy.") (citations omitted).

To even attempt to determine whether such non-existent rights could hypothetically be assigned if they existed in the first instance would surely render any such adjudication an impermissible advisory opinion. *See 1819, Ltd. v. Florida Dept. of Revenue (In re Inn on the Bay)*, 154 B.R. 364, 367 (Bankr. S.D. Fla. 1993) ("bankruptcy courts are not authorized to issue **advisory opinions**"); *In re Orion Ref. Corp.*, 2004 Bankr. LEXIS 188 *3-4 (Bankr. D. Del. 2004).

In attempting to adjudicate aspects of non-existent rights that could never be "property of the estate," the bankruptcy court improperly attempted to exercise jurisdiction that it never had.

### 5. The Improper Assignment Of Non-Existent Rights Creates A Direct And Adverse Impact on Insurers' Pecuniary Interests

By permitting the assignment of non-existent property rights, the Plan burdens insurers with the certainty of being sued by the Funding Vehicle Trust to seek payment of hundreds of millions of dollars on account of Channeled Personal Injury Claims that it assumed under the Plan. The bankruptcy court clearly understood the distinction between (i) an obligation of Reorganized Debtors to pay over to the Funding Vehicle Trust any post-confirmation collections of insurance proceeds for claims it was still legally obligated to pay, and (ii) an assignment to the Funding Vehicle Trust of rights to

9

collect insurance proceeds for unliquidated claims, enforceable by the ability to sue the insurers directly. Tr. at 82-84.

Yet, in the face of this, the bankruptcy court erroneously endorsed the assignment of non-existent rights and, in doing so, exposed insurers to direct suits by the Funding Vehicle Trust. By stating that insurers had reserved their coverage defenses to any such future suits by the Funding Vehicle Trust, the bankruptcy court offered an ineffective palliative for the substantial prejudice that will result by placing its imprimatur on an inappropriate assignment in the first instance. Tr. at 83-84.

Moreover, the assignment of rights to receive insurance proceeds to the Funding Vehicle Trust further burdens insurers by subjecting them to competing claims against the policies. By retaining the policies, Reorganized Debtors expect insurance coverage for any retained claims for which there may be coverage, such as the millions of dollars of claims under Environmental Laws, as well as the Tort Claims, for which they remain liable. *See* Disclosure Statement at 187-89. Yet, if the assignment is permitted, Reorganized Debtors and the Funding Vehicle Trust will have competing claims for the same remaining policy limits. This imposes upon insurers the substantial burden of having to reconcile and satisfy conflicting sets of claims. This is exactly why California law prohibits such non-consensual assignments when the original policyholder retains an expectation of continuing coverage. *See Henkel Corp. v. Hartford Accident & Indem. Co.,* 29 Cal. 4th 934, 945 (2003) ( "An additional burden may arise whenever the predecessor corporation still exists or can be revived (citation omitted) because of the ubiquitous potential for disputes over the existence and scope of the assignment. If both assignor and assignee were to claim the right to defense, the insurer might effectively be

10

forced to undertake the burden of defending both parties. In view of the potential for such increased burdens, it is reasonable to uphold the insurer's contractual right to accept or reject an assignment").

By authorizing the Funding Vehicle Trust to bring direct suits against insurers to enforce non-existent rights, the bankruptcy court improperly imposed additional burdens and obligations on insurers. Indeed, creating a right in the Funding Vehicle Trust to sue insurers directly to enforce rights that do not otherwise exist under state law deprives insurers of adequate protection required by sections 361(3) and 363(c) of the Bankruptcy Code.

### B. The Bankruptcy Court Lacked Jurisdiction To Summarily Adjudicate State Law Rights In The Context Of The Confirmation Hearing

The bankruptcy court's error was compounded because, by permitting assignment of rights to receive insurance proceeds, it summarily adjudicated that these rights existed in the first instance. Tr. at 65; 109; 111; Confirmation Findings at 45-46. Because a determination of the existence of insurance contract rights is purely a matter of state law, the bankruptcy court's jurisdiction is, at best, non-core. *See Beard v. Braunstein*, 914 F.2d. 434, 445 (3d Cir. 1990) (holding that actions to determine rights to insurance coverage are non-core). As a matter of procedural due process, any determination of the extent of Reorganized Debtors' state law rights in such property requires a declaratory judgment. Declaratory judgments may only be rendered by a separate adversary proceeding. Bankruptcy Rules 7001(2) and (9); *Conxus Fin. Corp. v. Motorola, Inc.* (*In re Conxus Comms. Inc.*), 262 B.R. 893, 899 (D. Del. 2001). The confirmation hearing, however, was not an adversary proceeding; it was a contested matter under Bankruptcy Rule 9014. By having the existence of these state law rights summarily decided in the

11

context of a confirmation hearing, insurers were denied their procedural due process rights to have this non-core matter decided in an adversary proceeding. As such, the bankruptcy court lacked jurisdiction to summarily adjudicate whether these rights existed in the context of a confirmation hearing.

### IV. <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

Rights to receive insurance proceeds for Channeled Personal Injury Claims that can only be asserted against the Funding Vehicle Trust are not "property of the estate" because, under the structure of the Plan, they can never exist under applicable California law. As such, they are not property that can be dealt with under section 1123(a)(5) of the Bankruptcy Code. Because the bankruptcy court's subject matter jurisdiction is limited to "property of the estate", it did not have jurisdiction to make Confirmation Findings that permitted the assignment of rights to receive insurance proceeds for claims that can only be asserted against the Funding Vehicle Trust. Accordingly, appellants respectfully request that this Court reverse that portion of the

12

Confirmation Order permitting assignment of rights to receive insurance proceeds, notwithstanding anti-assignment provisions in the policies and otherwise applicable state law.

Dated: April 17, 2006

STEVENS & LEE, P.C.

/s/ Thomas G. Whalen, Jr.
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3304
Telecopier: (610) 371-8512
E-mail: tgw@stevenslee.com

and

Leonard P. Goldberger, Esquire
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-2864
Telecopier: (610) 371-7376
E-mail: lpg@stevenslee.com

*Attorneys for Insurers*

13

## CERTIFICATE OF SERVICE

I, Thomas G. Whalen, Jr., hereby certify that, on April 17, 2006, I caused a copy of the foregoing *OPENING BRIEF OF APPELLANTS, CENTURY INDEMNITY COMPANY (SUCCESSOR TO CIGNA SPECIALTY INSURANCE COMPANY, FORMERLY KNOWN AS CALIFORNIA UNION INSURANCE COMPANY, AND SUCCESSOR TO CCI INSURANCE COMPANY, SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA, AND AS ADMINISTRATIVE AGENT OF FORMER MEMBERS OF AFIA, INCLUDING ST. PAUL MECURY INSURANCE COMPANY); ACE PROPERTY & CASUALTY COMPANY (FORMERLY KNOWN AS CIGNA PROPERTY & CASUALTY COMPANY, FORMERLY KNOWN AS AETNA INSURANCE COMPANY); INDUSTRIAL INDEMNITY COMPANY; INDUSTRIAL UNDERWRITERS INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; AND CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, BY AND THROUGH CRAVENS, DARGEN AND COMPANY, MANAGING GENERAL AGENT* to be served on the parties set forth on the attached service list by regular mail.

/s/ Thomas G. Whalen, Jr.
Thomas G. Whalen, Jr.

## SERVICE LIST

Richard W. Riley (DE I.D. 4052)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801

Mitchell L. Lathrop, Esquire
Bridget K. Moorhead, Esquire
DUANE MORRIS LLP
101 West Broadway Street, 9th Floor
San Diego, CA  92101

Russell W. Roten, Esquire
Jeff D. Kahane, Esquire
DUANE MORRIS LLP
333 South Hope Street
Los Angeles, CA  90071

William P. Bowden, Esquire
ASHBY & GEDDES
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899

Lisa Beckerman, Esquire
Brian A. Kilmer, Esquire
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
590 Madison Avenue
New York, NY  10022

Peter Van N. Lockwood, Esquire
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC  20005

Edward F. Houff, Esquire
c/o Lynn Stewart & Tammy Nero
KAISER ALUMINUM CORPORATION
5847 San Felipe, Suite 2400
Houston, TX  77057

Daniel J. DeFranceschi, Esquire
Kimberly D. Newmarch, Esquire
RICHARD, LAYTON & FINGER, PA
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

Gregory M. Gordon, Esquire
Daniel P. Winikka, Esquire
Daniel B. Prieto, Esquire
JONES DAY
2727 North Harwood Street
Dallas, TX  75201

Marla R. Eskin, Esquire
Mark T. Hurford, Esquire
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE  19801

Elihu Inselbuch, Esquire
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue
New York, NY  10022

James L. Patton, Jr., Esquire
Edwin J. Harron, Esquire
Sharon M. Zieg, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Bldg., 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899

Daniel K. Hogan, Esquire
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, DE 19806


Steven A. Buxbaum, Esquire
HAYNES AND BOONE, LLP
One Houston Center
1221 McKinney, Suite 2100
Houston, TX 77010

Rodney L. Eshelman, Esquire
Alison V. Lippa, Esquire
Raymond J. Tittman, Esquire
CARROLL, BURDICK & McDONOUGH LLP
44 Montgomery Street
San Francisco, CA 94101

Seth W. Wiener, Esquire
LEBOEUF, LAMB, GREENE & MACRAE LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

David M Ross, Esquire
LEBOEUF, LAMB, GREENE & MACRAE LLP
1875 Connecticut Avenue, N.W., Suite 1200
Washington, DC 20009


Anthony Callaghan, Esquire
Evans Wohlforth, Esquire
David N. Crapo, Esquire
GIBBONS, DEL DEO, DOLAN, GRIFFINGER &
VECCHIONE
One River Front Plaza
Newark, NJ 07102

Steven A. Felsenthal, Esquire
Peter C. D'Apice, Esquire
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689

Kevin Gross, Esquire
ROSENTHAL, MONHAIT, GROSS &
    GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, DE 19801

Lewis S. Rosenbloom, Esquire
David C. Christian, Esquire
Jason J. DeJonker, Esquire
McDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, IL 60606

Jared M. Katz, Esquire
LEBOEUF, LAMB, GREENE & MACRAE LLP
725 South Figueroa Street, Suite 3100
Los Angeles, CA 90017

David M. Klander, Esquire
Trial Attorney
OFFICE OF THE UNITED STATES TRUSTEE
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801

Elizabeth J. Futrell, Esquire
Aimee M. Quirk, Esquire
JONES, WALKER, WAECHTER, POTTEVENT
    CARRERE & DENEGRE, L.L.P.
201 St. Charles Ave.
New Orleans, LA 70170

Michael B. Joseph, Esquire
Theodore J. Tacconelli, Esquire
FERRY, JOSEPH & PEARCE, P.A.
824 Market St., Suite 904
Wilmington, DE 19899


Karen C. Bifferato, Esquire
Marc J. Phillips, Esquire
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801


Carl N. Kunz, III, Esquire
MORRIS, JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801


Harold L. Kaplan, Esquire
Mark F. Hebbeln, Esquire
GARDNER CARTON & DOUGLAS LLP
191 North Wacker Drive - Suite 3700
Chicago, IL 60606-1698


Joanne B. Wills, Esquire
JenniferL. Scoliard, Esquire
KLEHR, HARRISON, HARVEY, BRANZBURG &
    ELLERS I.LP
919 Market Street, Suite 1000
Wilmington, DE 19801


Laurie Schenker Polleck, Esquire
JASPAN SCHLESINGER HOFFMAN LLP
913 Market Street
12th Floor
Wilmington, DE 19801


Jason Michael Madron, Esquire
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


Clark T. Whitmore, Esquire
Alain M. Baudry, Esquire
Christina A. Smith, Esquire
MASLON, EDELMAN, BORMAN &
    BRAND, LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140


George A. Davis, Esquire
Diane Harvey, Esquire
WELL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153


Christine P. Hsu, Esquire
WELL, GOTSHAL & MANGES LLP
1501 K Street NW - Suite 100
Washington, DC 20005


Kristin K. Going, Esquire
GARDNER CARTON & DOUGLAS LLP
1301 K Street, N.W.
Suite 900, East Tower
Washington, DC 20005


Duane D. Morse, Esquire
James R Wrathall, Esquire
WILMER CUTLER PICKERING
HALE AND DORR LLP
2445 M. Street N.W.
Washington, DC 20037


Michael S. Davis, Esquire
Jantra Van Roy, Esquire
ZEICENER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, NY 10022


Duncan J. McNeil, III
2030 West Spofford
Spokane, WA 99205

Paul J. Dougherty, III, Esquire
GEBHARDT & SMITH LLP
901 Market Street, Suite 451
Wilmington, DE  19801


Carmella P. Keener, Esquire
ROSENTHAL MONHAIT & GODDESS P.A.
919 Market Street, Suite 1401
Wilmington, DE  19801


Frederick D. Holden, Esquire
ORRICK, HERRINOTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105

Harry Lee, Esquire
John F. O'Connor, Esquire
George R. Calhoun, V, Esquire
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC  20036


Brian A. Kilmer, Esquire
AXIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201


Richard W. Riley, Esquire
DUANE MORRIS LLP
1100 North Market Street
Suite 1200
Wilmington, DE  19801