**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| KAISER ALUMINUM CORP., et al., | ) Bankruptcy Case No. 02-10429 (JKF) |
| | ) |
| _____Debtors._____ | ) |
| | ) |
| In re: | ) |
| | ) |
| KAISER ALUMINUM CORP., et al., | ) Misc. Case No. 06-041 (JJF) |
| | ) |
| _____Debtors._____ | ) |

**REPLY MEMORANDUM OF COLUMBIA CASUALTY COMPANY,
TRANSCONTINENTAL INSURANCE COMPANY, HARBOR INSURANCE
COMPANY, CONTINENTAL INSURANCE COMPANY, AND TIG INSURANCE
COMPANY, AS SUCCESSOR BY MERGERS WITH INTERNATIONAL SURPLUS
LINES INSURANCE COMPANY, REGARDING APPEAL AND REQUEST FOR _DE
NOVO_ REVIEW OF ALLEGED STATUTORY PREEMPTION OF INSURERS' RIGHTS
AND DEBTORS' OBLIGATIONS UNDER INSURANCE POLICIES**

Columbia Casualty Company, Transcontinental Insurance Company, Harbor Insurance

Company, and Continental Insurance Company (collectively, "CNA"), and TIG Insurance

Company, as successor by mergers with International Surplus Lines Insurance Company ("TIG,"

and together with CNA, "Certain Insurers"), by and through their respective undersigned

counsel, hereby submit this reply memorandum in accordance with this Court's Memorandum

Order dated April 3, 2006 [Docket No. 11] concerning Certain Insurers' appeal from and request

for _de novo_ review of the alleged statutory preemption of Certain Insurers' rights and the

Debtors' obligations under insurance policies referenced in the Confirmation Order and the

Findings and Conclusions.[1]  In support thereof, Certain Insurers respectfully state as follows:

---

[1] Capitalized terms shall have the meanings assigned to them in the Opening Memorandum filed by Certain
Insurers on April 17, 2006 [Docket No. 17], unless otherwise indicated.

## **Summary of Reply**

Certain Insurers will not burden this Court with a restatement of the arguments and

authorities relied upon in their Opening Memorandum. Instead, Certain Insurers wish to focus

on the following points:

- Contrary to the assertions in the Answering Memoranda filed by the Plan
  Supporters [Docket Nos. 32 and 33], Certain Insurers are clearly harmed by the
  purported preemption of their contractual rights to consent to any assignment of
  their insurance policies. Simply put, the Plan Supporters seek to take away an
  argument that would otherwise be available to Certain Insurers in the on-going
  Coverage Litigation.

- The question before this Court is not which side is correct under California law
  about the permissibility of the purported assignment, but whether Certain Insurers
  will be permitted to even argue that the purported assignment is not effective
  without their consent under California law.

- In contrast to the Plan Proponents' arguments, Certain Insurers approach to
  construction of the Bankruptcy Code is consistent with the Bankruptcy Code's
  overall structure and principles:  The scope of preemption in Section 1123
  (concerning items to be included in a proposed plan of reorganization) should
  match the preemptive scope of Section 1142 (concerning implementation of a
  plan of reorganization after it is confirmed), *i.e.*, laws relating to the "financial
  condition" of the debtor.  *See Pacific Gas & Electric Co. v. California*, 350 F.3d
  932, 947-48 (9th Cir. 2003).  At the same, the fundamental bankruptcy principle
  that "[p]roperty rights are created and defined by state law" should be respected,
  unless Congress has clearly stated otherwise.  *See Butner v. United States*, 440
  U.S. 48, 55 (1979).

- The Third Circuit did not address or decide the scope of preemption under Section
  1123(a)(5) in *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004).  By its
  plain language, footnote 27 of the *Combustion Engineering* opinion refers to a
  restriction on assignment of a property interest "to the bankruptcy estate" of a
  debtor.  *Id.* at 218.  "[O]nce a property interest has passed to the estate, [however],
  it is subject to the same limitations imposed upon the debtor by applicable
  nonbankruptcy law."  *Integrated Solutions, Inc. v. Service Support Specialties,
  Inc.*, 124 F.3d 487, 492 (3d Cir. 1997) (quoting *In re American Freight Sys., Inc.*,
  179 B.R. 952, 960 (Bankr. D. Kan. 1995).

- Certain Insurers approach is the only workable approach under the Bankruptcy
  Code and applicable nonbankruptcy law.  A debtor can obtain its insurers'
  consent to an assignment in accordance with the debtor's contractual obligations
  where the assignment will result in reasonable procedures for the defense and
  indemnity of claims, just as is the case outside of bankruptcy.  Where the

assignment is made in a way that materially alters an insurer's risk, however, the
debtor's assignee cannot receive "a windfall merely by reason of the
happenstance of bankruptcy." *Butner*, 440 U.S. at 55 (quoting *Lewis v.
Manufacturers Nat'l Bank*, 364 U.S. 603, 608 (1961)). In this case, this issue can
and should be decided under California law in the on-going Coverage Litigation
pending in the State Court.

Based on the foregoing points, the arguments raised by the Plan Supporters in their

Answering Memoranda should be rejected. This Court can and should reverse the Bankruptcy

Court's determination that the Bankruptcy Code preempts Certain Insurers No Assignment

clauses contained in their insurance policies, and the balance of the Bankruptcy Court's rulings

can be affirmed. As contemplated by the Stipulation agreed to among the parties and approved

by the Bankruptcy Court, Certain Insurers' disputes with the Debtors can and should be resolved

as part of the on-going Coverage Litigation initiated by the Debtors in the State Court prior to the

Petition Date.

## **Argument**

## I.    CERTAIN INSURERS ARE HARMED BY THE PURPORTED PREEMPTION
OF THEIR CONTRACTUAL RIGHTS TO CONSENT TO ANY ASSIGNMENT
OF THEIR INSURANCE POLICIES.

The Plan Supporters misguidedly argue that affirmance of the Bankruptcy Court's

preemption ruling "will result in no harm to the Insurers." [Docket No. 33 at p.4] Each of

Certain Insurers' policies issued to the Debtors contain contractual "No Assignment" provisions

enforceable under state law. The issue before this Court is whether the Plan Proponents may

preempt Certain Insurers' contractual rights to consent to any assignment of their insurance

policies. Preemption of their contractual rights would clearly harm the Certain Insurers.

The Plan Proponents' argument in this regard ignores the Stipulation among the parties

and common sense. According to the Stipulation, the No Assignment provisions are material

parts of the contracts between the Debtors and Certain Insurers. *See* Stipulation, ¶ 8(a).

- 3 -

Moreover, a material dispute exists between the Debtors and Certain Insurers as to whether assignment of the policies pursuant to the Plan is effective under the No Assignment provisions of the policies and applicable state law. *See id.* at ¶ 8(b). The Plan Proponents' argument, in essence, is that they will win assignment question in the Coverage Litigation. Affirmance of the Bankruptcy Court's preemption ruling will short circuit this material dispute, which should be resolved as part of the on-going Coverage Litigation in the State Court. Thus, it is indisputable that this Court's affirmance of the Bankruptcy Court's preemption ruling will harm Certain Insurers by precluding Certain Insurers from seeking to enforce their contractual rights in the State Court.

## II.    THE QUESTION BEFORE THIS COURT IS NOT THE PERMISSIBILITY OF THE PURPORTED ASSIGNMENT, BUT WHETHER CERTAIN INSURERS WILL BE PERMITTED TO ARGUE THAT THE PURPORTED ASSIGNMENT IS NOT EFFECTIVE WITHOUT THEIR CONSENT UNDER CALIFORNIA LAW.

This Court need not decide the validity of the Debtors' purported assignment of Certain Insurers' policies to the Funding Vehicle Trust under the Plan. If this Court reverses the Bankruptcy Court's preemption rulings with respect to the No Assignment clauses, the Stipulation provides that "the Parties shall present to the State Court for adjudication the issue of whether the Assignment is valid under the terms of the Policies and applicable state law." Stipulation, ¶ 7. Thus, no matter the outcome on the legal question presented in these appeals, the Debtors can substantially consummate their Plan and successfully reorganize according to its terms.

- 4 -

The only question for this Court is whether the Plan Supporters can ignore the

requirements of applicable nonbankruptcy law[2] based on an expansive view of federal

preemption in Section 1123(a)(5), thereby providing them with "a windfall merely by reason of

the happenstance of bankruptcy." *Butner*, 440 U.S. at 55 (quoting *Lewis*, 364 U.S. at 608).

Accordingly, the Plan Supporters' various arguments on the merits of the purported assignment,

the construction of California law under *Henkel* and other cases, and the effect of the purported

assignment on Certain Insurers should be ignored. Those issues are properly the subject of a trial

in the State Court as part of the on-going Coverage Litigation.

## III.    CERTAIN INSURERS' CONSTRUCTION OF THE BANKRUPTCY CODE MAKES SENSE OF ALL OF ITS PROVISIONS AND RESPECTS THE FUNDAMENTAL BANKRUPTCY PRINCIPLE THAT PROPERTY INTERESTS ARE GOVERNED BY STATE LAW.

The representative of future silica and CTPV claimants urges a "holistic" approach to

construction of the Bankruptcy Code in this case. [Docket No. 32 at p.7 (citing *United States*

*Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988))] That

is exactly what Certain Insurers' construction set forth in the Opening Memorandum provides.

[Docket No. 17] In particular, as set forth in Certain Insurers' Opening Memorandum, Certain

Insurers agree there is some level of federal preemption in Section 1123(a)(5). The question is

whether the scope of that preemption is unlimited.

As the Ninth Circuit concluded in *PG&E*,

> We hold that a reorganization plan proposed under § 1123(a)(5)
> expressly preempts otherwise applicable non-bankruptcy law only

---

[2] *See, e.g., Henkel Corp. v. Hartford Accident and Indemnity Co.*, 29 Cal.4th 934, 938 (2003) (enforcing no assignment clauses like those contained in Certain Insurers' policies against a successor corporation); *General Accident Ins. Co. v. Superior Court*, 55 Cal.App.4th 1444 (1997) (holding that a corporate successor is not entitled to seek coverage from policies issued to its predecessor simply because the successor is held liable in tort); *Quemetco Inc. v. Pacific Auto Ins.*, 24 Cal.App.4th 494 (1994) (enforcing no assignment provisions following the transfer of a predecessor's insurance rights to its successor).

> to the extent that such laws were already preempted before the
> addition of the "notwithstanding" clause to § 1123(a) by
> amendment in 1984. That is, we hold that the addition of the
> "notwithstanding" clause to § 1123(a) was merely a clarification
> and confirmation of the preemptive effect of a reorganization plan
> that already existed under the 1978 Bankruptcy Code. <u>That
> preemptive effect, expressly stated in the "notwithstanding" clause
> of § 1142(a), was limited to otherwise applicable nonbankruptcy
> laws "relating to financial condition."</u>

*PG&E*, 350 F.3d at 934-35 (underlining added).

This construction of the statute gives effect to the interaction of Sections 1123 and 1142.[3]

It also respects legislative history and congressional purpose,[4] the touchstone of any preemption

analysis.[5] Moreover, a preemptive scope limited to the debtor's financial condition – something

of direct concern to Congress in crafting the Bankruptcy Code – does not require this Court to

ignore the constant commands of the Supreme Court and the Third Circuit to respect the nature

and extent of property interests created by state law. *See, e.g., Butner*, 440 U.S. at 54 ("Congress

---

[3] "It makes perfect sense that the express preemptive scope of what must be included in a confirmable plan, specified in § 1123(a), would be the same as the express preemptive scope of what is actually included in a confirmed plan, specified in § 1142(a). It also makes perfect sense that the express preemptive scope of what must be in a confirmable and confirmed plan would be laws 'relating to financial condition.'" *PG&E*, 350 F.3d at 947-48.

[4] As Senator DeConcini reported to the Senate as it voted on the amendments to Section 1123,

> Section 1123 is also intended to indicate that <u>a plan may provide for any action
> specified in section 1123 in the case of a corporation without a resolution of the
> board of directors</u>. If the plan is confirmed, then any action proposed in the plan
> may be taken notwithstanding any otherwise applicable nonbankruptcy law <u>in
> accordance with Section 1142(a)</u> of title 11.

*See id.* at 941-42 (quoting floor speech of Sen. DeConcini in his capacity as the Chair of the Subcommittee on Improvements in Judicial Machinery of the Senate Judiciary Committee) (underlining added). "In each case the change proposed is consistent with policies adopted by Congress in its enactment of the Bankruptcy Reform Act" in 1978. H.R. Rep. No. 96-1195, at 1 (quoted by *PG&E*, 350 F.3d at 939).

[5] "Our task is to ascertain and give effect to congressional intent. However, we must approach that task with the realization that the Bankruptcy Code was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests." *In re Roach*, 824 F.2d 1730, 1374 (3d Cir. 1987), *rehrg. en banc denied*. "Thus," the Third Circuit has held, "under *Roach*, we adopted a <u>restrained approach</u> to concluding that Congress has intended to preempt state law in the bankruptcy context." *Integrated Solutions*, 124 F.3d at 492 (underlining added).

has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). In contrast, the Plan Proponents' construction would require this Court to ignore such commands.

## IV.    THE THIRD CIRCUIT DID NOT DECIDE THE SCOPE OF PREEMPTION UNDER SECTION 1123(a)(5) IN *COMBUSTION ENGINEERING*.

In an effort to escape the Ninth Circuit's cogent analysis of the issue in *PG&E*, the Plan Supporters repeatedly and mistakenly insist that the Third Circuit decided the scope of Section 1123's preemptive effect in *Combustion Engineering*. The Plan Supporters insist too much in claiming that a lone citation to Section 1123(a)(5), without explanation, in a footnote tacked onto a 60-page opinion decides this important issue for all time in this Circuit. Indeed, by its plain language, the *Combustion Engineering* opinion goes no farther than to state that "even if the subject insurance policies purported to prohibit assignment of Combustion Engineering's insurance proceeds, these provisions would not prevent the assignment of proceeds to the bankruptcy estate," 391 F.3d at 218 (underlining added), because Section 541 effectively preempts any contractual provision that purports to limit or restrict the rights of a debtor to transfer or assigns [*sic*] its interests in bankruptcy." *Id.* at 218-19 n.27 (underlining added). As the Court of Appeals had already held in *Integrated Solutions*, "numerous courts have concluded that '[s]ection 541 eliminated the requirement that property must be transferable or subject to process in order to become initially part of the estate,'" 124 F.3d at 491 (quoting *In re Geise*, 992 F.2d 651, 655 (7th Cir. 1993) (underlining added), but "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." *Id.* at 492 (underlining added).

Indeed, in *Integrated Solutions*, the Third Circuit forbade assignment of an interest from the bankruptcy estate that was contrary to applicable state law. *Id.* at 495-96. "Because both

Code provisions relied upon by Integrated fail to explicitly express Congress's intent to supersede state law restrictions on the transfer of estate property, Integrated's preemption claim is rendered wholly unconvincing, especially in light of our strong presumption against inferring Congressional preemption in the bankruptcy context." *Id.* at 493 (citing *Roach*, 824 F.2d at 1373-74).

The Plan Supporters attempt to distinguish *Integrated Solutions* by asserting that the debtor in that case relied on Sections 363 and 704 for preemption, while in this case the Plan Supporters rely on Section 1123(a)(5). [Docket No. 33 at p.18] The Plan Supporters argue that the Third Circuit pointed in that case to Section 1123(a), among other sections of the Bankruptcy Code, as an example of explicit preemption.

Of course, the *Integrated Solutions* opinion does not discuss the nature and scope of Section 1123(a)'s preemptive effect, which is the issue presented in this case. Section 1123(a) clearly preempts laws relating to a debtor's "financial condition," *see PG&E*, 350 F.3d at 934-35, which is "in accordance with Section 1142(a)." *See id.* at 941-42 (quoting Sen. DeConcini). The issue in this appeal is whether Section 1123(a) preempts all applicable nonbankruptcy law, providing debtors in bankruptcy and bankruptcy courts with a roving commission to rewrite contracts at will, removing provisions bargained for by the parties that a debtor or its assignee may prefer to omit.

Such broad preemptive powers would render the more specific powers contained in the Bankruptcy Code irrelevant (such as the restrictions on assumption and assignment of executory contracts contained in Section 363). The broad scope of preemption urged by the Plan Supporters would also make a mockery of fundamental bankruptcy principles and principles of federalism that respect the importance and role of state law in our bankruptcy system. Moreover,

if debtors and bankruptcy courts had the kind of power sought by the Plan Supporters in this case, the freedom to rewrite contracts at will would unfairly and unjustifiably prejudice the rights of contract counterparties.[6]

The Plan Supporters also attempt to read an implication into *Combustion Engineering* that the Third Circuit approved of a broad scope for preemption in Section 1123(a)(5) because the plan in that case involved an assignment to a Section 524(g) trust, just as in this case. [Docket No. 33 at p.15] The Third Circuit's opinion in *Combustion Engineering* implies no such thing. In the first place, confirmation of the Plan in Combustion Engineering was reversed, albeit on an issue different from the one presented in this case. *See* 391 F.3d at 248-49. Second, the scope of the preemptive power provided by Section 1123(a) was simply not discussed or decided in that case, notwithstanding the isolated cite to that section in a footnote discussing another topic. *See id.* at 218-19 n.27. Third, even if this Court were interested in reading implications into that reference to Section 1123(a), it is worth noting that the bankruptcy court in that case made a finding that the trust would handle claims no differently than the debtor had handled claims prior to bankruptcy, such that the insurers were not prejudiced. *See id.* at 207 and n.12. Regardless of the accuracy of that finding in *Combustion Engineering*, no such finding has been or could be made in this case, and any such finding must come from the State Court in the pending Coverage Litigation.

---

[6] *Cf. Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (citing *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 594 (1935), where the Court invalidated the Frazier-Lemke Act under the Takings Clause) ("[T]o attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims . . . without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.").

V.    **CERTAIN INSURERS' CONSTRUCTION OF THE BANKRUPTCY CODE IS WORKABLE.**

The representative of future silica and CTPV claimants fears "some kind of bankruptcy black hole" that would result if Certain Insurers' construction of the Bankruptcy Code were adopted. [Docket No. 32 at p. 7] Notwithstanding this rhetoric, Certain Insurers' construction of the statute not only respects congressional intent, but also provides a workable system that respects state law and contract rights. Just as is the case for an insured outside of bankruptcy, a debtor seeking to assign its insurance policies can seek and obtain the consent of its insurers to the proposed assignment. If the assignment does not materially increase the risk undertaken by the insurer when the policies were issued, such consent can be obtained. In the context of mass torts, if the assignee can accommodate a reasonable system for the defense and indemnity of claims, the insurer will consent. If the assignee will materially increase the insurer's risk by not reasonably providing for the defense and indemnity of claims, then the insurer's contractual right to withhold its consent must be respected. Otherwise, debtors will have no incentive to behave reasonably with respect to their insurers, and the result will be "a windfall merely by reason of the happenstance of bankruptcy" for the debtor and its assignee. *Butner*, 440 U.S. at 55 (quoting *Lewis*, 364 U.S. at 608).

This case illustrates the problem. The plaintiffs – whose incentive is to maximize claims and their values – insisted on assignment of insurance policies to a trust controlled by them and governed by procedures acceptable to them. The Debtors did not obtain Certain Insurers' consent to the assignment or the proposed procedures for resolving claims that the plaintiffs assert should be indemnified by Certain Insurers. *See* Stipulation, ¶ 8(c). Whether this is reasonable should not be decided by fiat based on federal preemption, but rather should be

- 10 -

decided under applicable nonbankruptcy law by the State Court in the pending Coverage Litigation. *See id.* at ¶ 7.

## Conclusion

The Bankruptcy Court's rulings on preemption of Certain Insurers' contract rights pursuant to Section 1123(a)(5) of the Bankruptcy Code (a) attempt to override Certain Insurers' insurance contracts with the Debtors in violation of the fundamental bankruptcy principles; (b) ignore canons of statutory construction in reading new powers for the debtor-in-possession and the Bankruptcy Court into Section 1123(a)(5) not intended by Congress; and (c) ignore the constitutional and statutory limits on the Bankruptcy Court's Article I power. Therefore, the Bankruptcy Court's determination of federal preemption should be reversed, and the balance of the Bankruptcy Court's rulings can be affirmed. The question of the enforceability of Certain Insurers' No Assignment clauses in this context should be resolved after Plan confirmation as part of the Coverage Litigation initiated by the Debtors in the State Court pursuant to the Stipulation.

Dated: May 8, 2006
      Wilmington, Delaware

                           Respectfully submitted,

                                /s/ Norman Monhait
                           Norman Monhait (DSBA No. 1040)
                           Carmella P. Keener (DSBA No. 2810)
                           ROSENTHAL, MONHAIT & GODDESS, P.A.
                           919 Market Street, Suite 1401
                           Citizens Bank Center
                           Wilmington, Delaware 19801
                           ckeener@rmgglaw.com
                           Telephone:  302-656-4433

                           Rodney L. Eshelman
                           Alison V. Lippa
                           Raymond J. Tittmann
                           CARROLL, BURDICK & McDONOUGH LLP
                           44 Montgomery Street
                           San Francisco, California 94101
                           Telephone:  415-989-5900
                           Facsimile:  415-989-0932

                           Lewis S. Rosenbloom
                           David C. Christian II
                           Mohsin N. Khambati
                           McDERMOTT WILL & EMERY LLP
                           227 West Monroe Street
                           Chicago, Illinois 60606-5096
                           Telephone:  312-372-2000
                           Facsimile:  312-984-7700

                           ATTORNEYS FOR COLUMBIA CASUALTY
                           COMPANY, TRANSCONTINENTAL
                           INSURANCE COMPANY, HARBOR
                           INSURANCE COMPANY, AND CONTINENTAL
                           INSURANCE COMPANY

-and-

Michael G. Gallerizzo (DSBA No. 4550)
Gebhardt & Smith LLP
901 Market Street, Suite 451
Wilmington, Delaware 19801
Telephone: 302-656-9002

Harry Lee
John O'Connor
George R. Calhoun, V
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: 202-429-6226
Facsimile: 202-261-0610

ATTORNEYS FOR TIG INSURANCE
COMPANY, AS SUCCESSOR BY MERGERS TO
INTERNATIONAL SURPLUS LINES
INSURANCE COMPANY

# CERTIFICATE OF SERVICE

I, Norman M. Monhait, Esquire, hereby certify that on May 8, 2006, I caused to be electronically filed with the Clerk of the Court **REPLY MEMORANDUM OF COLUMBIA CASUALTY COMPANY, TRANSCONTINENTAL INSURANCE COMPANY, HARBOR INSURANCE COMPANY, AND CONTINENTAL INSURANCE COMPANY, AND TIG INSURANCE COMPANY, AS SUCCESSOR BY MERGERS WITH INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, REGARDING APPEAL AND REQUEST FOR *DE NOVO* REVIEW OF ALLEGED STATUTORY PREEMPTION OF INSURERS' RIGHTS AND DEBTORS' OBLIGATIONS UNDER INSURANCE POLICIES** using CM/ECF, which will send notification of such filing to the following:

Daniel J. DeFrancheschi, Esquire
Jason Michael Madron, Esquire
Kimberly D. Newmarch, Esquire
Richards, Layton &Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

William P. Bowden, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

Mark Thomas Hurford, Esquire
Campbell & Levine
800 N. King Street
Suite 300
Wilmington, DE 19801

Laurie Schenker Polleck, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE 19801

Paul J. Doherty, III, Esquire
Gebhardt & Smith, LLP
901 Market Street
Suite 451
Wilmington, DE 19806

Richard William Riley, Esquire
Duane Morris LLP
1100 N. Market Street
Suite 1200
Wilmington, DE 19801

Thomas Gerard Whalen, Jr., Esquire
Stevens & Lee
1105 N. Market Street
7th Floor
Wilmington, DE  19801

Jennifer L. Scoliard, Esquire
Klehr, Harrison, Harvey, Branzburg
  & Ellers
919 Market Street
Suite 1000
Wilmington, DE  19801

Sharon Matava Zieg, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Daniel K. Hogan, Esquire
The Hogan Firm
1311 Delaware Avenue
Wilmington, DE  19806

In addition, the foregoing document was also served via electronic mail upon all counsel listed on the attached Core Group List dated February 7, 2006 at the electronic mail addresses listed thereon.

/s/ Norman M. Monhait
Norman M. Monhait (DSBA No. 1040)
Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Citizens Bank Center
Wilmington, DE 19801
(302) 656-4433
nmonhait@rmgglaw.com
ckeener@rmgglaw.com
*Attorneys for Columbia Casualty Insurance Company, Transcontinental Insurance Company, Harbor Insurance Company and Continental Insurance Company*

2